# EXHIBIT A

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L-2309-17 |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | **SUMMONS** |
| K & E SERVICE CENTER | : | |
| | : | |
| Defendant(s) | : | |

RECEIVED
AUG 1 1 2017
LEGAL DEPT
RICHMOND VA

**From the State of New Jersey, to the Above Named Defendant:**

### CAPITAL ONE AUTO FINANCE, INC.

The Plaintiffs named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The Complaint attached to this Summons states the basis for this lawsuit.  If you dispute this Complaint, you or your attorney must file a written Answer or Motion and proof of service with the deputy clerk of the Superior Court in the County listed above within 35 days from the date you received this Summons, not counting the date you received it.  (The address of each deputy clerk of the Superior Court is provided).  If the Complaint is one in foreclosure, then you must file your written Answer or Motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625.  A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your Answer or

Motion when it is filed.  You must also send a copy of your Answer or Motion to Plaintiff's

attorney whose name and address appear above, or to Plaintiff, if not attorney is named

above.  A telephone call will not protect your rights: you must file and serve a written Answer

or Motion (with fee and completed Case Information Statement) if you want the Court to hear

your defense.

If you do not file and serve a written Answer or Motion within 35 days, the Court may enter

a judgment against you for the relief Plaintiff demands, plus interest and costs of suit.  If

judgment is entered against you, the Sheriff may seize your money, wages or property to pay

all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the County

where you live.  A list of these offices is provided.

If you do not have an attorney and are not eligible for free legal assistance, you may

obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these

numbers is also provided.

DATED:  August 3, 2017                         ***s/Michelle M. Smith***_____
                                               Michelle M. Smith
                                               Clerk of the Superior Court

Name of Defendant to be Served:               **CAPITAL ONE AUTO FINANCE, INC.**
Address of the Defendant to be Served:        **15000 Capital One Drive**
             `                                 **Richmond, VA 23238**

*$105.00 for CHANCERY DIVISION CASES OR $110.00 FOR LAW DIVISION CASES

DIRECTORY OF SUPERIOR COURT DEPUTY CLERK'S OFFICES
COUNTY LAWYER REFERRAL AND LEGAL SERVICES OFFICES

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769

LAWYER REFERRAL
(201) 448-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts., P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King, Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House – 1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862

LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad St., P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1262

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Courthouse Streets
P.O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 29
Salem, NJ 08079

LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
P.O. Box 3000
40 North Bridge Street
Somerville, NJ 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 475-2010

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L-2309-17 |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | **ORDER FOR REPLEVIN** |
| K & E SERVICE CENTER | : | |
| | : | |
| Defendant(s) | : | |

THIS MATTER being opened to the Court by Ronald L. Lueddeke, Esq. attorney for plaintiff, upon the application for the issuance of a Writ of Replevin against the defendant, Deluxe Auto Sales; and the Court having read and considered the Certification of the plaintiff annexed hereto, and plaintiff's Verified Complaint and it appearing from said Certification and Verified Complaint to the satisfaction of the Court, that the said defendant has no enforceable lien on the subject vehicle; and for good cause appearing;

IT IS ON this _____ day of _____, 2017

ORDERED, that a Writ of Replevin issue out of this Court directed to any Sheriff of the Superior Court to attach and repossess the said 2009 Mercedes ML63 automobile; and

IT IS FURTHER ORDERED, that defendant, Deluxe Auto Sales, located at 500 Commerce Road, Linden, County of Union, State of New Jersey turn said vehicle over to the plaintiff or the Union County Sheriff; and

IT IS FURTHER ORDERED, that the Union County Sheriff of the Superior Court take possession of said automobile and deliver same to the plaintiff; and

IT IS FURTHER ORDERED, that a copy of this Order be served upon the defendant(s) within seven (7) days of the within date.

_____

JSC

( ) opposed

( ) unopposed

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L-2309-17 |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | **ORDER TO SHOW CAUSE** |
| K & E SERVICE CENTER | : | |
| | : | |
| Defendant(s) | : | |

This matter having been opened to the Court by the Lueddeke Law Firm, attorney for the plaintiff, Jayanne A. Locke and Ronald L. Lueddeke, Esq. appearing; and the Court having reviewed the Verified Complaint, Certification of Jayann A. Locke, Brief in Support of Order to Show Cause, Order for Replevin and Order to Show Cause submitted herewith; and for good cause shown;

IT IS on this     day of          , 2017

      **ORDERED** that on this          day of          2017

at          or as soon thereafter as counsel may be heard, the defendants shall appear before the Honorable Mark P. Ciarrocca, J.S.C., at the Union County Superior Court, Law Division,  2 Broad Street, Elizabeth,  New Jersey and show cause why an Order should not be entered allowing the following:

(1)     Ordering that a Writ of Replevin issue out of this Court directed to any Sheriff of the Superior Court to attach and repossess the said 2009 Mercedes ML63 automobile; and

(2)     That defendant, Deluxe Auto Sales, located at 500 Commerce Road, Linden, County of Union, State of New Jersey turn said vehicle over to the plaintiff or the Union County Sheriff; and

(3)     That the Union County Sheriff of the Superior Court take possession of said automobile and deliver same to the plaintiff

IT IS FURTHER ORDERED:

1.      Copies of the Order to Show Cause (which serves in lieu of a summons pursuant to R. 4:52-1(b)) and the Verified Complaint with Exhibits and Brief support thereof shall be served upon the Defendants via certified mail, return receipt requested and regular mail within 5 days hereof, said service to be effected by Plaintiffs' counsel or their designee or any other manner permitted by court rule.

2.      Written opposition to the Order to Show Cause, by way of answer, memorandum of law, answering affidavit of motion and proof of service shall be filed and served so as to be received by the court and counsel no longer than      days before the return date.

3.      The original documents must be filed with the Clerk, Union County Superior Court, Law Division, 2 Broad Street, Elizabeth, New Jersey and a copy mailed directly to the Honorable Mark P. Ciarrocca, J.S.C., Union County Superior Court, Law Division, 2 Broad Street, Elizabeth, New Jersey  07207.

4.      You must also send a copy to the plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above.

5.      A telephone call will not protect your rights. You must file and serve your opposition (with the fee) if you want the Court to hear your opposition to the relief the plaintiff is seeking.

6.      If opposition is not received to the Order to Show Cause, the application may be decided as unopposed on the return date and relief may be granted by default

7.      Any reply submission on behalf of the application shall be filed and served so as to be received by the court and counsel no later than 7 days before the return date.

8.      No requests for adjournments _ absent such emergent circumstances _ will be considered unless made prior to 3:00 p.m. on the third day prior to the return date.

9.      A proof of mailing (with original return receipt cards when appropriate) must be submitted to the Court at least 7 days prior to the return date.

10.     If any opposing party cannot afford an attorney, said opposing party may call the Legal Service Office in the county of their residence. If they are not eligible for free legal assistance and they do not have an attorney, they may obtain a referral to an attorney by calling the Lawyer Referral Services.  The telephone number for the Union County Legal Services is (908) 354-4340; the telephone number for the Lawyer Referral Services is (908) 353-4715 and the telephone number for the Union Bar Association is (908) 353-4715.

11.     The appearance of all counsel or pro se parties is required unless you are otherwise advised in advance of the return date.

_____

Mark P. Ciarrocca, J.S.C.

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L-2309-17 |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | |
| K & E SERVICE CENTER | : | |
| | : | |
| Defendant(s) | : | |

## BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE
## FOR ISSUANCE OF WRIT OF REPLEVIN

### LEGAL ARGUMENT

Plaintiff by way the filing of this Order to Show Cause seeks a Writ of

Replevin for the subject vehicle.

Pertinent facts are as pled in Plaintiff's Verified Complaint

(1)     Plaintiff purchased used 2009 Mercedes ML 63 AMG from Deluxe on March 2,

2015;

(2)     The vehicle was covered by a used vehicle warranty or service contract

issued by Defendant, AmeriPlus, for which Plaintiff paid $3,650.00;

(3)     Plaintiff presented the vehicle to Defendant, Prestige Mercedes Benz,  for

service on multiple dates  The latest invoice is for $7,400.00 (Exhibit "G" to the Verified

Complaint), Additional work could bring the total to $18,000.00. The said repair order was not signed by Plaintiff and Plaintiff did not sign any repair invoice before work proceeded. Prestige still has the vehicle and will not release it unless 7,400.00 is paid.

The dealership clearly violated the Automotive Repair Regulations as alleged in the Verified Complaint at Paragraph 40. This violation renders the dealership's claim for $7,400.00 unenforceable and any garage keeper's lien void.

Plaintiff is therefore entitled to the return of her vehicle. Plaintiff is suffering hardship without the use of the vehicle as set forth in the Certification of Plaintiff. She is paying the bank (Capitol One) about $1,000 per month and is without a vehicle.

Plaintiff seeks a Writ of Replevin for the return of the vehicle.

The Plaintiff is also entitled to replevin.

4:61-1. Writ of Replevin

(a) Issuance of Writ on Notice. A writ of replevin shall issue only upon court order on motion of a party claiming the right to possession of chattels. Except as otherwise provided by paragraph (b) of this rule, the motion shall be heard on no less than three days' notice to the party in possession of the chattels, who shall file and serve any opposing affidavits or cross-motions at least one day prior to the hearing. The motion shall be granted only upon the court's finding, based on the moving papers, any opposing affidavits which may have been filed, and any testimony taken pursuant to R. 1:6-6, that there is a probability that final judgment will be rendered in favor of the movant. In lieu of ordering the issuance of the writ the court may order the party in possession of the chattels to give security for satisfaction of any judgment which may be rendered in the action, or order such other relief upon such terms as may be just in the circumstances.

The collateral must be returned if there is a high probability of success, i.e. probability that final judgment will be rendered in favor of movant. Thus if the plaintiff has met this burden she is entitled to replevin and return of the car. This is the current case. The dealership clearly violated the Automotive Repair Regulations by failing to obtain a

written repair authorization prior to the repair work being performed.   Huffmaster v. Robinson, 221 N.J. Super 315 (Law Div. 1986), Cox v. Sears, Roebuck  138 N.J. 2, 23 (1994). An Order of Replevin should issue do Plaintiff can get the vehicle back, repair and back on the road as soon as possible.

_____

Ronald L. Lueddeke, Esq.

**Appendix XII-B1**



| CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 **Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed** | PAYMENT TYPE: ☐CK ☐CG ☐CA<br>CHG/CK NO.<br>AMOUNT:<br>OVERPAYMENT:<br>BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Ronald L. Lueddeke, Esq. | TELEPHONE NUMBER<br>(732) 449-2884 | COUNTY OF VENUE<br>Union |
|---|---|---|
| FIRM NAME (if applicable)<br>Lueddeke Law Firm | | DOCKET NUMBER (when available)<br>UNN-L 2309-17 |
| OFFICE ADDRESS<br>215 Morris Avenue<br>Spring Lake, NJ 07762 | | DOCUMENT TYPE<br>Verified Class Action Complaint |
| | | JURY DEMAND ■ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Jayann A. Locke, Plaintiff | CAPTION<br>Locke v. Deluxe Auto Sales, Capital One Auto Finance, et. al. |
|---|---|
| CASE TYPE NUMBER<br>(See reverse side for listing)<br>508 | HURRICANE SANDY RELATED?<br>☐ YES ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ YES ■ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☐ UNKNOWN |

| THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE. |
|---|

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |
|---|

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ YES ■ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain)<br>☐ FAMILIAL ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ☐ No |
|---|

| USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION |
|---|
| |

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES ■ No | IF YES, FOR WHAT LANGUAGE? |

| I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b). |
|---|
| ATTORNEY SIGNATURE: *Ronald Lueddeke* |

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

### Track III - 450 days' discovery
005   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 292 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 289 | REGLAN | 601 | ASBESTOS |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**   ■ **Putative Class Action**   ☐ **Title 59**

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L- |
| v. | : | UNN-L 2309-17 |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | **VERIFIED CLASS ACTION COMPLAINT** |
| K & E SERVICE CENTER | : | **AND JURY DEMAND** |
| | : | |
| Defendant(s) | : | |

The Plaintiff, Jayann A. Locke, residing at 1020 Belmont Avenue, North Haledon, New Jersey, on her own behalf and on behalf of the putative class by way of Complaint against the defendants states:

## ALLEGATIONS COMMON TO ALL COUNTS

1.      On or about March 2, 2015, Plaintiff purchased a used 2009 Mercedes ML63 from Deluxe Auto Sales, Linden, NJ ("Deluxe"). A true copy of the Motor Vehicle Retail Order is attached as Exhibit "A".

2.      The purchase paid by way of a $9,500 deposit and financing provided by Capitol One. A true copy of the Retail Installment Sales Contract is attached as Exhibit "B".

3.      The Retail Buyer Order reveals that Deluxe engaged in unconscionable price gouging. Deluxe charged Plaintiff for the following:

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L- |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | **VERIFIED CLASS ACTION COMPLAINT** |
| K & E SERVICE CENTER | : | **AND JURY DEMAND** |
| | : | |
| Defendant(s) | : | |

The Plaintiff, Jayann A. Locke, residing at 1020 Belmont Avenue, North Haledon, New Jersey, on her own behalf and on behalf of the putative class by way of Complaint against the defendants states:

## ALLEGATIONS COMMON TO ALL COUNTS

1.     On or about March 2, 2015, Plaintiff purchased a used 2009 Mercedes ML63 from Deluxe Auto Sales, Linden, NJ ("Deluxe"). A true copy of the Motor Vehicle Retail Order is attached as Exhibit "A".

2.     The purchase paid by way of a $9,500 deposit and financing provided by Capitol One. A true copy of the Retail Installment Sales Contract is attached as Exhibit "B".

3.     The Retail Buyer Order reveals that Deluxe engaged in unconscionable price gouging. Deluxe charged Plaintiff for the following:

(1)  Three (3) year key replacement                $1,690.00

(2)  Three (3) year Tire and Wheel Coverage        $1,995.00

(3)  AmeriPlus Service Contract                     $3,650.00
                                                    $7,335.00

(a)  As to the key replacement, Plaintiff was actually told this was being
     provided for free.

(b)  None of the charges appearing on the Retail Order were explained to
     Plaintiff. The Retail Order was presented late at night after Plaintiff had
     been at Deluxe for several hours. Deluxe "fanned the paperwork" and
     said "sign here" to multiple documents.

(c)  Plaintiff was not given any paperwork for the key replacement or the
     tire/wheel coverage.

(d)  These charges are absolutely unconscionable and were charged in order
     to rip Plaintiff off for most of her cash deposit of $9,500.

4.    Plaintiff was induced in purchasing said vehicle by representations that the
vehicle was in excellent condition, and that Deluxe had performed a full tune up and
mechanical inspection before offering the vehicle for sale.

5.    Since taking possession, Plaintiff has experienced significant
problems/conditions with the vehicle.

6.    In October 2015, the vehicle overheated. Plaintiff caused the vehicle to be
towed to Prestige Motors, Inc., a Mercedes dealership; Plaintiff was advised that the radiator
was cracked and needed to be replaced.

7.    Plaintiff was further informed that her extended warranty would not cover the
repair. Plaintiff was shocked to hear this as she asked for the best warranty available and she
paid $3,650 for the warranty.

8.    In connection with the purchase, Plaintiff had purchased a service contract or

2

extended warranty from Deluxe

9.      Deluxe informed Plaintiff that the service contract would cover everything "bumper to bumper" and it was their best warranty.  This representation was false:  The service contract did no cover everything and it was not their best warranty.

10.     Deluxe also misrepresented to Plaintiff that by buying the extended warranty, her finance rate would be lowered; this representation was false.

11.     Deluxe charged Plaintiff $3,650 for the warranty which is an unconscionable amount.  Said charge appears on the Retail Order (Exhibit "A").

12.     The warranty was issued by AmeriPlus and the face page of the contract is attached as Exhibit "C".

13.     Said warranty was characterized as the "Supreme Plan".

14.     Despite a $3,650 purchase price, the warranty was only for a duration of two years or 24,000 miles.

15.     A review of the face page to the extended warranty indicates that it is not the best warranty as there is an "ultimate plan" and an "ultimate wrap" plan".

16.     Said warranty failed its essential purpose and it did not provide any coverage for the significant conditions Plaintiff encountered and suffered post-sale except for a valve gasket issue which is memorialized in Deluxe Retail Order #14000 dated, July 2, 2016 (Exhibit "D").

17.     Deluxe violated the Consumer Fraud Act in diverse respects including but not limited to conduct in connection with the sale of the warranty as hereinafter set forth

18.     Prestige allegedly performed repairs as memorialized in Invoice #174467

3

dated October 17, 2015 (Exhibit "E") for which Prestige charged $2,894.03.

19.     Prestige did not repair vehicle correctly, and when Plaintiff picked up the vehicle, the engine was revving and the check engine light was on.   Prestige acted unconscionably by trying to have Plaintiff pay $300 to check the vehicle; Plaintiff refused to pay.

20.     Plaintiff immediately returned the vehicle to Prestige and, after checking the vehicle, told Plaintiff the vehicle was okay (saying the vehicle's revving is because it is a powerful vehicle with a lot of horse power; this statement is false).

21.     Plaintiff contends that Deluxe knew of the multitude of issues with this vehicle prior to the sale to Plaintiff yet failed to disclose same to Plaintiff.

22.     Plaintiff would not have purchased the vehicle had these problems been disclosed to her.

23.     Plaintiff has a right to reject the vehicle based upon the defects that existed at the time possession was tendered and did so in a timely manner N.J.S.A. 12A:2-602.

24.     Plaintiff revoked her acceptance of the vehicle by filing this complaint for said relief.

25.     Plaintiff lost the use of vehicle and Defendants are legally liable for this loss of use.

26.     All warranties, including the AmeriPlus warranty, have failed their essential purpose and it operates to deprive Plaintiff of the substantial value of her bargain and Plaintiff is therefore entitled to all her consequential and incidental damages including attorney's fees and costs pursuant to N.J.S.A. 12A:2-715.

4

27.     Defendant Deluxe failed to disclose that it makes a substantial profit on said warranty sale. Defendant Deluxe represented that the entire warranty purchase price was paid to the warranty provider. This representation was false.

28.     Plaintiff has a right to cancel the contract and recover so much of the purchase price as has been paid. N.J.S.A. 12A:2-608(3); 12A2-711(1). *Ramirez v. Autosport* 88 N.J. 277, 288-289 (1982). Plaintiff properly exercised said right in a timely manner.

29.     Defendant, K & E Service Center ("K & E") also performed repairs to the vehicle as memorialized in Invoice #10148, dated May 19, 2016, for $950 (Exhibit "F").

30.     AmeriPlus did not cover the K & E repair.

31.     The K & E repairs did not resolve the revving condition Plaintiff was experiencing.

32.     Eventually, the revving condition grew worse and when Plaintiff turned the vehicle on it sounded like an airplane.

33.     Plaintiff took the vehicle to Prestige on or about November 5, 2016.  Her advisor told her that if she had come back within a year of October 22, 2015, they would have checked the vehicle for free; Plaintiff was unaware of this and also thought she had full coverage under the AmeriPlus warranty.

34.     Plaintiff's advisor, Andy, said the warranty company was going to send someone to look at the vehicle to figure out if they are going to fix it.  He said that she would have to give him the okay to pull the engine down and if the warranty company denied it, she would have to pay $2,700 to cover labor.  Plaintiff read the warranty and it stated that the Supreme Warranty covers engine mount and water pump, the two (2) things that Prestige

said were Plaintiff's problem. Plaintiff was happy that her warranty was finally going to fix it.

To Plaintiff's surprise, AmeriPlus denied the claim because they said that a gasket cracked when the car overheated and that is what caused the engine mount and water pump to break.

Prestige denied that they were responsible. Plaintiff told Prestige that she would pay the $2,700 for their labor and she would take her car elsewhere. Plaintiff's advisor told her that for that money she was going to get her engine in the trunk and she would have to tow her vehicle out of there. Plaintiff was highly upset that her advisor, Andy, did not tell her that she would have to pay to put the car back together. Plaintiff was stuck. Being that she was stuck, she asked for a discounted price. Andy said her discount was $7,400 even though she had told Plaintiff $6,000 was the price to fix it before the warranty company got involved.

35.     Subsequently AmeriPlus declined to pay the $7,400 Prestige invoice.

36.     Prestige's present bill is Invoice #220412, dated December 12, 2016 (Exhibit "G". The sum, if all the work is done, is $12,489.48. The sum allegedly due for work allegedly performed to date is $7,400.

37.     AmeriPlus refused to give Plaintiff the reasons for its claim denial in writing; this is unconscionable.

38.     Prestige refused to give the vehicle back to Plaintiff unless its invoice is paid.

39.     Prestige, in an email dated February 15, 2016, told Plaintiff that if all repairs were performed, the balance could be as much as $18,000.

40.     Defendants, Prestige, Deluxe and K & E, also violated the Automotive Repair regulations, N.J.A.C. 13:45A-7.1, et seq. in diverse respects including but not limited to

6

commencing work for compensation without securing written authorization from Plaintiff and making statements which were untrue or misleading

41.   Plaintiff is entitled to all of her money back from Deluxe together with incidental and consequential damages.

## COUNT ONE
## (CONSUMER FRAUD)

1.   The foregoing conduct constitutes consumer fraud by way of affirmative acts and acts of omission and regulatory violations.

2.   Defendant, Deluxe, violated the Used Car Lemon Law, N.J.S.A. 56:8-67 in diverse respects particularly committing unlawful practices set forth in N.J.S.A. 56:8-68.

3.   Plaintiff suffered an ascertainable loss as a proximate result of Defendants' conduct. N.J.S.A. 56:8-19.

**WHEREFORE**, Plaintiff, demands damages against defendants as follows:

(1)   Compensatory damages which should be trebled under the Consumer Fraud Act;

(2)   Punitive damages;

(3)    Rescission;

(4)   Attorney's fees;

(5)   Lawful interest;

(6)   Costs of suit;

(7)   For such other relief as the Court may deem equitable and just including rescission and replevin of the vehicle.

## SECOND COUNT

1.   Plaintiff, repeats each and every allegation of the First Count as though set forth

7

more fully at length herein.

2.     The foregoing conduct of defendants constitutes breach of contract and breach of the implied covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiff, demand damages against defendants as follows:

(1)     Compensatory damages which should be trebled under the Consumer Fraud Act;

(2)     Punitive damages;

(3)     Rescission;

(4)     Attorney's fees;

(5)     Lawful interest;

(6)     Costs of suit;

(7)     For such other relief as the Court may deem equitable and just.

### THIRD COUNT

1.     Plaintiff, repeats each and every allegation of the First and Second Count as though set forth more fully at length herein.

2.     Defendants, Deluxe and AmeriPlus, breached an express warranty and as a result Plaintiff has been damaged.

3.     All warranties failed their essential purpose.

4.     Plaintiff has rejected the vehicle pursuant to N.J.S.A. 12A:2-602 or alternatively, Plaintiff revoked acceptance of the vehicle pursuant to N.J.S.A. 12A:2-608.

**WHEREFORE**, Plaintiff, demands damages against defendants as follows:

(1)     All remedies available to Plaintiff under the Uniform Commercial Code including, but not limited to rejection, revocation,  rescission, breach of

8

warranty damages, including incidental and consequential damages pursuant to N.J.S.A. 12A:2-715, attorney's fees, costs of suit, interest and such other relief as the Court seems equitable and  appropriate. So much of the purchase price as has been paid pursuant to N.J.S.A. 12A:2-711.

## FOURTH COUNT

1.      Plaintiff, repeats each and every allegation of the First, Second and Third Counts as though set forth more fully at length herein.

2.      The aforesaid conduct of defendants, Deluxe and AmeriPlus, constitute a breach of implied warranties.

**WHEREFORE,** Plaintiff demands judgment against said defendants, for the following relief;

(1)      All remedies available to Plaintiff under the Uniform Commercial Code including, but not limited to, revocation, rescission, breach of warranty damages, including incidental and consequential damages, attorneys fees, costs of suit, interest and such other relief as the Court seems equitable and appropriate.

## FIFTH COUNT

1.      Plaintiff, repeats each and every allegation of the First, Second, Third and Fourth Counts as though set forth more fully at length herein.

2.      Defendants, Deluxe and AmeriPlus, violated the Magnuson-Moss Warranty Act 15 U.S.C.A. § 2301 et seq.

**WHEREFORE,** Plaintiff seeks all remedies available to Plaintiff under said statute.

## SIXTH COUNT

1. Plaintiff, repeats each and every allegation of the First, Second, Third, Fourth and Fifth Counts as though set forth more fully at length herein.

9

2. Defendant, Deluxe, committed fraud, legal and equitable.

**WHEREFORE,** Plaintiff seeks judgment against said Defendant for all relief and remedies to which she is legally and equitably entitled including punitive damages.

<u>**SEVENTH COUNT**</u>

1.     Defendants, Deluxe and AmeriPlus, engaged in unlawfully conspiracy in connection with the sale of the subject warranty and conduct in connection therewith.

**WHEREFORE,** Plaintiff, demands damages against defendants as follows:

    (1)     Compensatory damages which should be trebled under the Consumer Fraud Act;

    (2)     Punitive damages;

    (3)      Rescission;

    (4)     Attorney's fees;

    (5)     Lawful interest;

    (6)     Costs of suit;

    (7)     For such other relief as the Court may deem equitable and just including rescission and replevin of the vehicle.

<u>**EIGHT COUNT**</u>

1.     Plaintiff, repeats each and every allegation of the First, Second, Third, Fourth, Fifth, Sixth, and Seventh Counts as though set forth more fully at length herein.

2.     Capital One financed the subject vehicle.

3.     Capital One is the assignee of the subject Retail Installment Contract (Exhibit "B") ("RIC")

4.     Capital One is an indispensible and necessary party as Plaintiff may seek

10

rescission and cancellation of the transaction and RIC.

5.     In addition, Capital One is subject to the Federal and State Holder Rule and by terms of the RIC which, inter alia, provide that the holder is subject to all claims and defenses the buyer may have against the seller.

6.     In order to protect her credit, Plaintiff has made all her payments to Capitol One.  Given the extent of the fraud by Deluxe, Plaintiff's payment is approximately $1,000 per month.  Staying current on payments is creating a tremendous hardship as she does not have the vehicle.

**WHERFORE**, Plaintiff seeks all remedies available to her in law and equity together with attorney's fees, interest and costs of suit.

## CLASS ACTION CLAIMS
## NATURE OF THE ACTION

1.     This action is brought on behalf of Plaintiff and a class comprised of all individuals, who, during the class period, (a) purchased an extended warranty/service contract, or other similar extended maintenance or service agreement in connection with the purchase of a used motor vehicle from Defendant pursuant to a Retail Credit Installment Sales Contract or Buyer's Order ("contracts") from Defendant, Deluxe, or (b) purchased a key replacement product or (c) tire and wheel coverage from Deluxe, and who were damaged and/or suffered an ascertainable loss owing to misrepresentations, non-disclosures, unconscionable conduct, price gouging,  regulatory violations and omissions in the contract regarding the cost of the extended warranty, key replacement and the  wheel coverage and amounts paid to the issuer of said products on behalf of the consumer.

11

2.      Plaintiff alleges that Deluxe engages in a business practice and scheme the effect of which scheme is to conceal from consumers that they are paying substantial commissions, profits or finder's fees to the dealer, in connection with the dealer's sale of an extended warranty, key replacement and tire and wheel coverage.

3.      The finder's fee, profit or commission often amounts to 40% or 50% or more of the total amount paid by the consumer, such that the actual cost of the extended warranty, key replacement and tire and wheel coverage, the amount actually paid to the issuer of the extended warranty and other said products is grossly overstated, resulting in consumers paying an inflated price for the extended warranty in the form of an undisclosed commission. This deceptive and unfair practice inflates the amount financed by the consumer, which inures to the benefit of Defendant. Defendant is liable for these misrepresentations, unconscionable conduct, omissions and regulatory violations under the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1, et seq. ("CFA"). Deluxe is also liable for breach of contract and must disgorge all monies earned on account of its breaches.

4.      Plaintiff further claims that the amounts charged for said extended warranties, key replacement and tire and wheel coverage are grossly excessive and the price charged for said products is unconscionable, thereby violating the New Jersey Consumer Fraud Act and the Uniform Commercial Code, N.J.S.A. 12 A: 2-302. See also *Toker v. Westerman* 113 N.J. Super. 452, 455 (Union Cty. Ct. 1970) (flagrantly excessive price was within intendment of N.J.S.A. 12A:2-302).

5.      In the instant matter Plaintiff was charged $3,650.00 (plus tax thereon) for an extended warranty.

6.     Plaintiff was charged $1,690.00 for three (3) year key replacement.

7.     Plaintiff was charged $1,995.00 for three (3) year tire and wheel coverage.

8.     As to the alleged unconscionability and excessive price charged for such extended warranties in the Ocean County, Superior Court, Law Division case of *Serafin v. Weisleider, Inc.* Docket No. OCN-L-450-00 the Honorable Donald F. Campbell, J.S.C. ruled that a jury may conclude that Defendant's practice of retaining 45% of the stated purchase price for the extended warranty is unconscionable under the New Jersey Consumer Fraud Act (Exhibit "H").

(a)     As hereinafter alleged, Defendant, Deluxe, also violated the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") N.J.S.A. 56:12-15, in connection with its sale of the extended warranty, key replacement and tire and wheel coverage.

## FACTUAL ALLEGATIONS

9.     Plaintiff's Retail Installment Sales Contract (Exhibit "B" "RIC") contains a section entitled "Itemization of The Amount Financed" (the "Itemization"), which purports to disclose and itemize all amounts that are being financed by the consumer.  In those instances where the consumer purchases an extended warranty, the Itemization, in plaintiff's case in #8, sets out an amount that purportedly is paid to the issuer of the warranty, respectively, on the consumer's behalf. In Plaintiff case, it is represented that $3,650.00 was paid to "AmeriPlus."  This representation is false in that this specific sum of money was not paid to AmeriPlus.

(a)     Plaintiff's Retail Buyer's Order is attached as Exhibit "A" and this also

13

reflects a sale of a service contract, key replacement and tire and wheel coverage.

10.     In fact, unbeknownst to Plaintiff and the class members, the disclosures and representations regarding the cost of the extended warranty, key replacement and tire and wheel coverage are false, inaccurate, and misleading. The amounts stated for these products, was not paid to the issuer or provider of these products. Rather, only a portion of the amount stated was paid to the issuer or provider of these products. The balance was retained by or paid to the automobile dealership Deluxe as a commission, profit or finder's fee. A substantial percentage of the amount represented as having been paid to the issuer or provider these products is actually paid to Deluxe as a finder's fee, profit or commission. Thus, the amount stated as having been paid to the issuer or provider of these products on the consumer's behalf is grossly overstated in that only a portion of the stated amount is actually paid to the issuer with the remainder being paid to the dealership as a finder's fee, or undisclosed profit. Discovery will indicate the exact amount of the unconscionable profit made by Deluxe in connection with the sale of these products.

11.     In fact, in a report prepared by the New York Attorney General's office it was reported that dealers charge as much as six times the manufacturer's "MSRP" for the extended warranty, and this figure can be as high as twelve times the dealer's cost for the extended warranty (Exhibit "I", pgs. 1,2). The extended warranty in this case was not a manufacturer's warranty but a third party warranty replete with contractual exclusions which serve to defeat the coverage which the purchaser reasonably expects.

12.     The best evidence that this AmeriPlus product was not worth anything near what Plaintiff paid is that almost all of Plaintiff's repair claims were denied.

14

13.     By overstating the actual cost of the extended warranty and presenting the inflated cost as a non-negotiable charge passed on to the issuer of the extended warranty on the consumer's behalf, the cost of the warranty and the amount financed are thereby inflated without the customer's knowledge. Defendant, Deluxe, benefits from this deceptive practice by having a profit center at the consumer's expense.  This profit center is an integral part of the dealership's "after market" sales department. The consumer is totally unaware that only a portion of the purchase price is paid to the provider (AmeriPlus in Plaintiff's case) and the dealer retains a major portion of the purchase price for itself. In fact, the dealership purposely creates the impression and indeed represents that the entire purchase price is paid to provider.

(a)     The consumer is further misled and deceived into believing that the entire purchase of $3,650.00 is paid to the provider, "AmeriPlus" by a statement on the "AmeriPlus" contract that the service agreement price is $3,650.00. (Exhibit "C")(page 1 of 13 only).

(b)     These same allegations pertain to the key replacement and tire and wheel coverage products except that Plaintiff did not receive any documents pertaining to these products.

14.     The identical misrepresentation, except for variations in the dollar amount, is made in virtually every Buyer's Order (Exhibit "A") and motor vehicle retail installment sales contract (Exhibit "B") that is entered into by Deluxe where the retail customer purchased an extended warranty or service contract.  It is the standard practice and policy of Defendant, Deluxe, to make or adopt the previously described false and misleading

15

disclosures regarding extended warranties in the motor vehicle retail installment sales contracts assigned to financing institutions.

15.     Deluxe concealed from Plaintiff and the class members the true amounts paid to others for extended warranties, key replacement and tire and wheel coverage on their behalf.  Plaintiff and the class members could not, through reasonable diligence, have discovered the patent misrepresentations since the violation and the wrongdoing was self-concealing and the pertinent information was exclusively within the knowledge and possession of Defendant, Deluxe.

16.     It is recognized that on Plaintiff's RIC (Exhibit "B") it states that Seller may retain or receive a portion of this amount (which is not prominently displayed and only found by a discerning eye seeing a small asterisk) seemingly refers to the AmeriPlus extended warranty or service contract although the RIC states "Service Contract, paid to AmeriPlus $3,650.00".  Plaintiff claims this statement Seller may retain or receive a portion of this amount is false and misleading in that the truth is that seller <u>does</u> retain a portion (a very significant portion) of the amount. The law recognizes the following:

> Although a vendor may be under no obligation to speak concerning the thing he would sell, yet if he undertakes to do so he is bound not only to speak the truth in all he says but is equally obliged to tell every material fact within his knowledge which might materially qualify such statements as he may have made.  (citation omitted). ***Tobin v. Paparone Const. Co.*** 137 <u>N.J. Super.</u> 518 (524, 525) Law Div. 1975.

Accordingly, Defendant, Deluxe, was under an affirmative obligation to speak the whole truth in terms of exact monies paid to AmerPlus and exact monies retained by

Deluxe.

(a)    In addition, Plaintiff contend that this "we may retain" language is language promulgated by the FTC and is intended to make the Retail Installment Contract compliant with the Federal Truth in Lending statute (TILA). This, however, does not protect or insulate defendant from our state's consumer fraud legislation. In **Perry v. Rt. 22 Nissan** (Exhibit "J") the Honorable Mathia E. Rodriquez indicated that while a defendant dealership may be TILA compliant this does not mean that the dealership is CFA compliant in connection with the sale of extended warranty or service contracts.

(b)    The same allegations pertain to the key replacement and tire and wheel coverage.

## CLASS ACTION ALLEGATIONS

### (A) The Class

17.    **Class Period.** This action is brought as a class action pursuant to R. 4:32 of the New Jersey Civil Practice Rules.  The class period encompasses the following time period:

From the date of the filing of this action to the exact same date six years earlier.  This period is applicable to the class of persons who purchased extended warranties, key replacement and tire and wheel coverage from Deluxe in connection with the purchase of a vehicle which was documented in a form retail installment contract and/or Buyer's Order that did not reveal that Deluxe would retain a portion of the amounts paid for the service contract, key replacement and tire and wheel coverage.  This time period applies to the New Jersey Consumer Fraud Act violations alleged herein.  The statute of limitations for the

Consumer Fraud Act violations is six (6) years. *D'Angelo v. Miller Yacht Sales*, 261 N.J. Super. 683, 688 (App. Div. 1993).

18. **Class Definition.** Plaintiff brings this action on her own behalf and in a representative capacity on behalf of a class composed of all persons, who, during the class period (a) purchased an extended warranty/service contract, key replacement and tire and wheel coverage from Deluxe where the mark-up, profit, finder's fee or commission was not disclosed to the buyer by the Defendant, Deluxe.

19. **Numerosity.** The members of the proposed class, being geographically dispersed and numbering in the hundreds or thousands, are so numerous that jointer of all of them is impracticable.

20. **Typicality.** Plaintiff's claims are typical of class members' claims because the Plaintiff is a party who has purchased outright or financed the purchase of a motor vehicle and an extended warranty or service contract, key replacement and tire and wheel coverage through Deluxe, and, by proving her own claims, Plaintiff will presumptively prove the claims of all class members.

21. **Adequacy of Representation.** Plaintiff can and will adequately represent and protect the interests of the class and has no interests that conflict with or are antagonistic to the interests of the class members. Plaintiff has retained attorneys who are competent and experienced in consumer fraud litigation and consumer fraud class litigation. No conflict exists between Plaintiff and the other class members because;

    (a)    the claims of the named Plaintiff are typical of the absent class

           members' claims;

(b)     any claims which Plaintiff herein asserts against Deluxe which are solely related to her individual transaction, as hereinbefore alleged, can be resolved without any prejudice to the class members. Such claims can be effectively severed, tried separately or otherwise effectively and efficiently case managed by the trial court; such separate claims are set forth in separate counts to the Complaint, those counts being Count One through Seven; as amended.

(c)     all of the questions of law or fact regarding the liability of the Defendant, Deluxe, are common to the class and overwhelmingly predominate over any individual issues that may exist, such that by prevailing on her own extended warranty, key replacement and tire and wheel coverage claim.  Plaintiff necessarily will establish said Defendant's liability as to all class members;

(d)     without the class representation provided by Plaintiff virtually no class members will receive legal representation or redress for their injuries;

(e)     Plaintiff's counsel has the necessary financial resources to adequately and vigorously litigate this class action, and;

(f)     Plaintiff and class counsel are aware of their fiduciary responsibilities to class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible class recovery including monetary recoveries and injunctive belief to have defendant cease and desist from its illegal practices.

22.     **Common Questions of Law and Fact.**  Virtually all of the issues of law and

19

fact in this class action are issues that are common issues to the class that include at least the following:

(a)    Whether Defendant, Deluxe, is liable under the Uniform Commercial Code for charging a flagrantly excessive and unconscionable price for the extended warranty, key replacement and tire and wheel coverage and for misrepresentations and inaccurate disclosures in the sales contract regarding the sub products;

(b)    Whether Defendant, Deluxe, is liable to the Plaintiff and the class members under the New Jersey Consumer Fraud Act (for acts of commission, omission and regulatory violations) with respect to the sale of extended warranties key replacement and tire and wheel coverage;

(c)    Whether Defendant concealed from consumers the true cost of extended warranties and payment of a finder's fee or commission to the automobile dealership in connection with the sale of such products;

(d)    Whether Defendant, Deluxe, is liable to Plaintiff and class members for breach of contract and the implied covenant of good faith and fair dealing with respect to the sale of said products;

(e)    Whether Defendant, Deluxe, is liable to Plaintiff and class members for monies paid in connection with extended warranties, key replacement and tire and wheel coverage and are liable for a refund pursuant to N.J.S.A. 56:8-2.11;

(f)    Whether Defendant, Deluxe, is liable to Plaintiff and class members for

violating N.J.A.C. 13:45A26(b).1 of the Automotive Pre-Delivery Services regulations. See ***Bessie Smith v. Precision Chevrolet***, (Transcript annexed as Exhibit "K" hereto at pg. 14, line 9 through pg. 15, line 6) where the Honorable Michael Winklestein expressly found the identical practice relating to extended warranties violated these regulations for which there is strict CFA liability.

(g)     Whether Defendant, Deluxe, is liable to Plaintiff and class members for violating the Used Car Lemon Law, N.J.S.A. 56:8-68(g). See ***Cannon v. Cherry Hill Toyota, Inc.***, 161 F. Supp. 2d 362 (D. N.J. 2001) (Exhibit "L").

(h)     Whether a conspiracy exists between Deluxe and providers of the extended warranty, key replacement and tire/wheel coverage.

(i)     Whether Defendant is liable to Plaintiff and class members are liable for violating TCCWNA in as much as Plaintiff and the class members had a clearly established legal right under TCCWNA to know that Defendant, Deluxe, was making a profit on the sale of the extended warranty, key replacement and tire/wheel coverage and how much the mark-up was. This clearly established legal right is established under the CFA (Affirmative Acts and Acts of Omission), Used Car Lemon Law, Automobile Pre-Delivery Services regulations and Uniform Commercial Code.

(j)     Whether the Plaintiff and the proposed class are entitled to declaratory and injunctive relief to enjoin Defendant, Deluxe, from engaging in the conduct Plaintiff alleges violates the Consumer Fraud Act and TCCWNA. See <u>Laufer</u> v.

21

The United States Life Insurance Company 385 N.J. Super. 172 (App. Div. 2006). In Laufer the trial Court found that since the case involved form contracts and mass mailings it is particularly appropriate to use the class action procedure. Laufer at 179. The Appellate Division affirmed the trial Court's granting of class certification and found that class certification was appropriate even if only the Plaintiff claimed an ascertainable loss for herself (and did not allege that class members suffered a loss) and only sought declaratory and injunctive relief for the class.

23.    **Superiority.** A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that;

(a)    common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there should be enormous economies to the Court and the parties in litigating the common issues on a class wide instead of a repetitive individual basis;

(b)    the relatively small size of each class member's individual damage claim which is too small to make individual litigation an economically viable alternative, such that as a practical matter there is no "alternative" means of adjudication to a class action;

(c)    few class members have any interest in individually controlling the prosecution of separate actions (any who do may opt out);

(d)    class treatment is required for optimal deterrence, optimal compensation to class members, and for limiting the legal expenses incurred by the class

members and for injunctive relief;

(e)     despite the relatively small size of individual class members claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this class action to be litigated on a cost-effective basis, especially when compared to repetitive individual litigations, and

(f)     no unusual difficulties are likely to be encountered in the management of this class action (as demonstrated by the fact that other class actions involving the same alleged illegal practice have been resolved without any difficulties).

## COUNT IX
## CLASS CLAIM
**(Violation of the New Jersey Consumer Fraud Act, as it relates to the Extended Warranty, key replacement and tire/wheel coverage, N.J.S.A. 56:8-1 et seq. ; ("CFA"))**

24.     Plaintiff on behalf of herself and all others similarly situated, re-alleges each and every allegation contained in the preceding paragraphs, and further alleges that Plaintiff and the class members have unknowingly paid and financed monies for commissions, finder's fees, and up-charges in connection with their purchases of extended warranties, key replacement and tire/wheel coverage under the mistaken belief, purposely fostered by Defendant, Deluxe, that the cost of these products was a fixed, nonnegotiable charge and that all amounts paid for such products were passed on to and actually paid to the issuers/providers of said products on their behalf.

25.     Plaintiff and the class members were unconscionably overcharged for

23

extended warranties, key replacement and tire/wheel coverage in violation of the New Jersey Consumer Fraud Act. "Prize gouging" is unlawful, *Toker*, supra. In fact, in a case tried by Plaintiff's counsel (Ronald L. Lueddeke, Esq.) before a jury in Superior Court, Law Division, Ocean County (*Abrams v. Bob Ciasulli Auto Mall*, Docket No. L-812-95), the jury returned a verdict that a charge of $989.00 for an extended warranty that cost the dealership $298.00 was an unconscionable act in violation of the Consumer Fraud Act (Exhibit "M"). Here, the charge for the extended warranty is significantly higher than that present in the *Abrams* case. ($3,650.00).

26. Further, it is the law of this State that violation of a statute or regulation can serve as evidence of unconscionable practices under the Consumer Fraud Act. *Lemelledo v. Beneficial Management*, 289 N.J. Super. 489, 502 (App. Div. 1996), aff'd. 150 N.J 255, (1997). Therefore, if Plaintiff succeed in proving a violation of the Uniform Commercial Code, this finding can serve as evidence that an unconscionable practice was committed by Defendant under the Consumer Fraud Act. Similarly, if Plaintiff prove a violation of TCCWNA this can serve as evidence of an unconscionable practice under the CFA.

27. The concept of unconscionability is well entrenched in our Consumer Fraud law and it is generally defined as conduct which is not in good faith, honest in fact and observant of fair dealing. Actual deceit or fraudulent intent is <u>not</u> necessary. *Green v. Continental Rental* 292 N.J. Super. 241, 255 (Law Div. 1994). Further, the statutory and regulatory scheme of the Consumer Fraud Act is designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services. <u>Division of</u> *Consumer Affairs v. Gen. Elec. Co*, 244 N.J. Super.

24

349.353 (App. Div. 1990). Under the CFA it is the consumer's reasonable expectations that control. The consumer fraud statue is aimed at promoting truth and fair dealing in the marketplace. *Feinberg v. Red Bank Volvo* 331 N.J. Super. 506, 512 (App. Div. 2000). It is the "capacity to mislead" that "is the prime ingredient of all types of consumer fraud." *Cox v. Sears, Roebuck & Co. Inc.* 138 N.J. 2.15 (1994).

28.     Said Defendant's (Deluxe) conduct complained of herein constitutes acts, uses, or employment by Defendant of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including Plaintiff and the members of the Class would rely thereon, in connection with the defendant's commercial transactions with consumers.  Said Defendant's conduct herein is an unfair act or practice that has the capacity to and does in fact deceive consumers.

29.     Said Defendant's conduct occurred in the conduct of trade or commerce or the sale of services and is within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.

30.     As stated above, the case of *Perry v. Route 22 Nissan* Superior Court of N.J., Middlesex County – Docket No. 11558-99 the Honorable Mathias E. Rodriquez, J.S.C. found that practices similar to those existing herein with respect to extended warranties violated of the Consumer Fraud Act (Exhibit "J").

31.     The   conduct   alleged   herein   occurred   in   the   course   of Deluxe's business.  Its conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions.

25

32.     Plaintiff and the members of the class have been damaged as a result of the conduct complained of herein, and the harm or risk of harm is ongoing.  Said Defendant's conduct renders them liable for treble damages and costs under N.J.S.A. 56:8-19. In addition, Plaintiff and class members are entitled to injunctive relief to enjoin this ongoing illegal practice. N.J.S.A. 56 : 8-19 ; *Laufer v. U.S. Life Ins. Co. in N.Y.* 385 N.J. Super. 172 (App. Div. 2006). In addition, Plaintiff and the members of the class are entitled to a refund pursuant to N.J.S.A. 56:8-2.11 as interpreted in the case of *Artistic Lawn and Landscape Co.* v. *Smith* 381 N.J. Super. 75 (Law Div. 2005).

33.     Further, the class action rule (R.4:32) should be construed liberally in a case involving allegations of consumer fraud. *Strawn v. Canuso*, 140 N.J. 43, 68 (1995). *Riley v. New Rapids Carpet Center*, 61 N.J. 218, 294 (1972).  Indeed, a class action should be permitted unless there is a clear showing that it is inappropriate or improper.  *Lusky v. Capasso Bros.*, 118 N.J. Super. 369, 373 (App. Div.) cert denied, 60 N.J. 466 (1972).  In fact, in the case of *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540 (D.N.J. 1999), 161 F. Supp. 2d. 362, 373 (D.N.J.) (Exhibit "M") the United States District Court for the District of New Jersey granted class action certification on the virtually identical extended warranty Consumer Fraud claims herein and granted Summary Judgment to the class that the Consumer Fraud Act and Used Car Lemon Law was violated.  Furthermore, in the case of *Bessie Smith v. Precision Chevrolet Oldsmobile, et al.,* Superior Court of New Jersey, Law Division, Atlantic County, Docket No. ATL-L-3156-96 (Exhibit "K") the Court (then assignment Judge Michael Winklestein presiding) granted class action certification and summary judgment on the identical extended warranty Consumer Fraud claims as asserted

26

herein.

34.     In Bessie Smith, the defendant Percision Chevrolet Oldsmobile sold plaintiff

Smith an extended warranty for a price of $995 and retained a portion of that amount as an

undisclosed profit. Judge Winklestein found that Precision's conduct with respect to that

practice violated the Consumer Fraud Act in diverse respects:

(1)     Affirmative acts including misrepresentation (Precision represented on the

RIC that purchase price was paid to the provider; this was not true.  Transcript, Exhibit "K"

at 8,9,10).

(2)     Acts of Omission.  Precision committed a knowing omission with the intent

that the consumer rely upon it (Exhibit "K" at 10-8); "I find that Precision violated the

Consumer Fraud Act by not disclosing the amount retained" (Exhibit "K", 12-11)

(3)     Pre-Delivery Automotive Services Regulations.   N.J.A.C.  13:45A-26(b).2.

Monies retained on the extended warranty constitute pre-delivery services and Precision

did not tell the consumer that they were keeping certain amounts let alone tell them how

much they were keeping.  "I'm satisfied that the retention of the monies without itemizing

and not disclosing to Plaintiff amounts is a violation of the aforementioned regulation and

this would constitute a violation of the Consumer Fraud Act (Exhibit "K", 13, 1-25; 14, 15, 1-

2)

(4)     Whether the price charged for the warranty was excessive or unconscionable

was found to be a jury question (Exhibit "K", 19-22).

35.     In fact, in determining whether a class should be certified a Plaintiff's

chances of prevailing on the merits of the case are not relevant, and the determination

27

must be made with reference to R. 4:32 criteria for maintaining a class action. **Delgozzo v. Kenny**, 266 N.J. Super. 169, 180-181 (App. Div. 1993). Indeed, a class action should be permitted unless there is a clear showing that it is inappropriate or improper. In re Cadillac V8-6-4 Class Action, 93 N.J. 412 (1983). Here, plaintiff is demonstrating from previous cases that plaintiff's claim is very meritorious and well founded both factually and as a matter of law.

**COUNT X**

**CLASS CLAIM**

**(Breach of Contract, Fraud and Breach of Implied Covenant of Good Faith and Fair Dealing)**

36.    Plaintiff on behalf of herself and all others similarly situated, re-alleges each and every allegation contained in the preceding paragraphs, and further alleges that Deluxe, as seller of the vehicles are liable to Plaintiff and the class members for breach of contract owing to the misrepresentations and omissions in the contracts regarding the cost of the extended warranty, key replacement and tire/wheel coverage and payments made for the said products on the consumer's behalf and for the practices alleged herein.

37.    Implied in every New Jersey contract is an implied covenant of good faith and fair dealing. Plaintiff alleges on her behalf and on behalf of the class members that the conduct of the Defendant, Deluxe, violated this covenant.

38.    Plaintiff and the class members suffered actual damages proximately caused by said Defendant's breach of contract in that, contrary to it charged inflated amounts for extended warranties, key replacement and tire/wheel coverage and received undisclosed

28

commissions, finder's fees or up-charges in connection with the sale of said products.

<u>COUNT XI</u>
<u>CLASSCLAIM</u>
<u>(Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-15)</u>
<u>("TCCWNA")</u>

39.     Plaintiff repeats and re-alleges each and every preceding paragraph as

though set forth at length herein.

40.     In 1981, the Legislature enacted the TCCWNA. <u>L.</u> 1981, <u>c.</u> 454. The Act

provides:

> No seller ... shall in the course of his business offer to a consumer or
> prospective consumer or enter into any written consumer contract
> or give or display any written consumer warranty, notice or sign ...
> which includes any provision that violates any clearly established
> legal right of a consumer or responsibility of a seller, lessor, creditor,
> lender or bailee as established by State or Federal law at the time the
> offer is made or the consumer contract is signed or the warranty,
> notice or sign is given or displayed.

The rights, remedies and prohibitions conferred by the TCCWNA are "in addition to

a cumulative of any other right, remedy or prohibition accorded by common law, Federal

law or statues of this State." <u>N.J.S.A.</u> 56:12-18. As explained in <u>Kent Motor Cars, Inc. v.</u>

<u>Reynolds & Reynolds Co.,</u> 207 N.J. 428, 457 (2011).

> [t]he purpose of the TCCWNA is to prevent deceptive practices in
> consumer contracts by prohibiting the use of illegal terms or
> warranties in consumer contracts. By its terms, it encompasses a
> wider variety of transactions than do truth-in-lending and truth-in-
> leasing laws.

In <u>Kent Motor Cars</u>, a class action, the trial court granted partial summary judgment

to the class, in part, on the inadequate font size. 297 N.J. at 435. Accordingly, Freehold Kia's

inadequate font size in their advertisement is both a Consumer Fraud Act violation and a

29

TCCWNA violation.

The TCCWNA provides that any person who violates the provisions of the statue shall be liable to an aggrieved consumer for a civil penalty not less than $100, actual damages, or both at the election of the consumer, in addition to reasonable attorneys' fees and court costs. N.J.S.A. 56:12-17.

41.     TCCWNA is a remedial statute, entitled to a broad interpretation to fraudulent its stated purpose. Shelton v. Restaurant.com 214 N.J. 419, 442 (2013). Further, the Supreme Court in Shelton states:

> We conclude the purpose of the TCCWNA is facially remedial. The label or descriptor of the deterrent imposed by the Legislature to address the identified prohibited behavior does not negate its overall remedial nature. Moreover, the Governor's signing message identified the TCCWNA as a measure to strengthen the CFA, see Governor's Statement on Signing Assembly Bill No. 1660, supra, (January 11, 1982) a statute traditionally afforded a liberal construction, see Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011) ("The CFA is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud..."

It is recognized that the TCCWNA is remarkably well suited to class actions and one commentator has described the statute as "the new CFA".

42.     Plaintiff contends that the Defendant (Deluxe) dealership's conduct violated the TCCWNA in diverse respects.

43.     Defendant, Deluxe, did violate New Jersey's Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et seq. ("TCCWNA"). Said Act provides, inter alia, that no seller shall enter into any written contract that includes a provision that violates any clearly established legal right as established by state or federal law.

44.    Plaintiff and the proposed class have clearly established legal rights under the CFA and under the Automotive Pre-Delivery Services regulations, N.J.A.C. 13:45 A.26(b) 1. See *Bessie Smith v. Precision Chevrolet* (Exhibit "K" hereto).  See page 35 above (¶ 35) for specific findings made by Judge Winklestein (dealership's practice in connection with the sale of extended warranty violated the CFA in three separate ways (affirmative acts, acts of omission and regulatory; Exhibit "K" at 15-4).

(a)    Key replacement and tire/wheel coverage are pre-delivery services and stand on the same footing as the extended warranty.

45.    Plaintiff and the proposed class also had clearly established legal rights under the Uniform Commercial Code, N.J.S.A. 12A:2-302 (not to pay an excessive price).

46.    Plaintiff and the proposed class has clearly established legal rights under the CFA, as to affirmative acts, acts of omission, regulatory and used car lemon law.

## NOTICE TO ATTORNEY GENERAL OF AMENDED ACTION

47.    A copy of this Complaint, as amended, shall be mailed to the Attorney General of the State of New Jersey within ten days after the filing of this Complaint with the Court pursuant to N.J.S.A. 56:8-20.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that this Court enter judgment in her favor and in favor of the class as follows:

(a)    Certifying that the action may be maintained as a class action on behalf of the class described above;

31

(b)     Certifying Plaintiff as class representative and the undersigned as class counsel;

(c)     Awarding Plaintiff and all class members compensatory damages in an amount to be determined at trial;

(d)     Awarding Plaintiff and all class members a refund pursuant to N.J.S.A. 56:8-2.11 and/or treble damages under the New Jersey Consumer Fraud Act (N.J.S.A. 56: 8-19):

(e)     Awarding Plaintiff and all class members punitive damages in an amount to be determined at trial;

(f)     A declaration of the rights and obligations of the parties, including a declaration that Defendant's conduct violates the New Jersey Consumer Fraud Act, the Uniform Commercial Code, Used Car Lemon Law and the common law;

(g)     An injunction requiring Defendant, Deluxe and its co-conspirators including AmeriPlus, to discontinue their unlawful and unfair practices;

(h)     An accounting to determine the amounts Defendant, Deluxe, has illegally profited at Plaintiff's and the class members' expense, and disgorgement to the class of such funds;

(i)     An award to Plaintiff and the class members of the expenses of this suit, including costs, reasonable attorneys' fees, and expert's fees;

(j)     The imposition of civil penalties as provided for in the Consumer Fraud Act;

(k)     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff herein demands a trial by jury as to all triable issues of fact.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Ronald L. Lueddeke, Esquire is hereby designated as trial counsel on behalf of the plaintiff.

Dated: 6/14/17                           By: _____

Ronald L. Lueddeke, Esquire

## CERTIFICATION

The undersigned hereby certifies that the within controversy is not subject of any other action or proceeding either filed or anticipated. In addition, plaintiff is not aware of any other parties that should be joined to this action at this time except the providers of the key replacement product and tire/wheel coverage and individuals who committed or participated in the unlawful conduct herein alleged.

Dated: 6/14/17                           By: _____

Ronald L. Lueddeke, Esquire

**<u>VERIFICATION</u>**

I hereby verify that the factual allegations contained herein are true and correct to the best of my knowledge and belief and if willfully false I am subject to punishment.

Dated:   6-14-17            By:   *Jayann Locke*
                                       Jayann A. Locke

# EXHIBIT "A"

Motor Vehicle
Retail Order

781 E. Edgar Rd. (Routes 1 & 9 So.)
Linden, NJ 07036
(908) 474-5222
(908) 474-5223 Fax

800 Commerce Rd.
Linden, NJ 07036
(908) 862-0010
(908) 862-0093 Fax

| | | |
|---|---|---|
| CUSTOMER JAYANN A. LOCKE | DATE 03/02/2015 | STOCK NO. 8417 |
| ADDRESS 1020 BELMONT AVE | NORTH HALEDON   NJ | 07508 |
| PHONE (H) 973-380-4174   PHONE (W) | CELL | |
| E-MAIL | SALES REP. KEVIN GOINES | |

| | | | | |
|---|---|---|---|---|
| YEAR 2009 | MAKE Mercedes-B | | MODEL ML63 AMG | |
| BODY TYPE Multi | EXT. COLOR BLACK | INT. COLOR | | MILES 83435 |

Prior to Delivery of the vehicle listed above, customer shall elect one of the following and so advise dealership:
• Cash Purchase   • Finance Purchase   • Lease

IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS ORDER.

TO BE DELIVERED ON OR ABOUT 03/02/2015

| | |
|---|---|
| Price of Unit | 30000.00 |
| Additional Equipment (options) | N/A |
| | |
| | |
| 3 YR KEY REPLACEMENT | 1690.00 |
| 3 YR TIRE & WHEEL | 1995.00 |
| | |
| | N/A |
| AMERIPLUS | 3650.00 |
| 24 MONTHS   24000 MILES | |

IF A LEASE, THE FOLLOWING APPLY:

MONTHLY PAYMENT AMOUNT $
TERM:_____MONTHS
MILEAGE PER YEAR_____
CASH DUE AT DELIVERY $

IF A PURCHASE, THE FOLLOWING APPLY:

| | |
|---|---|
| TOTAL PRICE OF VEHICLE | 37335.00 |
| Less Trade-In | N/A |
| | |
| TOTAL TAXABLE AMOUNT | 37335.00 |
| State Sales Tax | 2613.45 |
| | N/A |
| Security Window Etch (Optional) | 555.00 |
| Registration/Title Fee (Estimated) (SEE PARAGRAPH 12 ON REVERSE SIDE) | 161.50 |
| Documentary Fee   Clerical Expense $149.50   Document Delivery Service $149.50 (SEE PARAGRAPH 13 ON REVERSE SIDE) | $299.00 |
| NET PAY-OFF ON TRADE-IN | N/A |
| TOTAL | 40408.95 |
| Deposit | N/A |
| | 9500.00 |

| |
|---|
| BALANCE IN CASH, CERTIFIED CHECK OR OTHER ACCEPTABLE FORM OF PAYMENT TO BE PAID TO DEALER ON DELIVERY |
| BALANCE DUE ON DELIVERY ➡ 30908.95 |

| | |
|---|---|
| SERIAL NUMBER | 4 J G B F 7 7 E 9 9 A 4 7 A 9 3 |

IF A LEASE, COMPLETE DISCLOSURE OF ALL LEASE TERMS AND CONDITIONS IS CONTAINED ON A SEPARATE LEASE CONTRACT.

CHECK APPROPRIATE BOX

☐ This vehicle is sold/leased "as is" and dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or, otherwise), is expressly excluded and customer hereby assumes any such risks.

OR

☐ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

ALL USED VEHICLE SALES-DEALER'S OBLIGATION

The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price (if a sale) to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the issuance of the permanent registration for such vehicle.

03 / 02 /2015   X _____
                        Customer's Signature

WAIVER OF DEALER'S OBLIGATION

The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price (if a sale) if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L. 1995, Chpt. 373).

03 / 02 /2015   X _____
                        Customer's Signature

TRADE-IN DESCRIPTION AND ALLOWANCE

Year _____ Make _____ Model _____
Serial No. _____ Mileage _____
Trade-in Value   N/A   Date of _____
Less Balance Owed   N/A
Net Trade-in Allowance   00
Balance Owed to: _____
Address: _____
Account No.: _____
Info. From _____ Good Thru _____

Customer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

X _____   03 /02 /2015
      Customer's Signature

Customer agrees that this Order on the face and on the reverse side and any attachments is to include all the terms and conditions, if a sale. Customer further agrees this Order cancels and supersedes any prior agreements and as of the date signed by Dealer or authorized agent comprises the complete and exclusive statement of the terms of the agreement between Customer and Dealer. If Customer, prior to delivery, elects to lease the vehicle described above, Customer and Dealer agree to execute a lease contract which shall contain full disclosure of all lease information. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE. Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the Order. YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC PRE-DELIVERY SERVICE WHICH IS TO BE PERFORMED. THE AUTOMOTIVE DEALER MAY NOT CHARGE FOR PRE-DELIVERY SERVICES FOR WHICH THE AUTOMOTIVE DEALER IS REIMBURSED BY THE MANUFACTURER. YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC DOCUMENTARY SERVICE WHICH IS TO BE PERFORMED. I am 18 years of age or older and of full legal capacity to enter into this contract.

Accepted By: 03/02/2015 _____      03/02/2015 _____
        Date   Dealer or Authorized Representative            Date   Customer's Signature

THIS ORDER NOT SUBJECT TO CANCELLATION. DEPOSIT NON-REFUNDABLE.

# EXHIBIT "B"

Object 006C4T95 (Page 4 of 17)

RETAIL INSTALLMENT SALE CONTRACT
SIMPLE FINANCE CHARGE

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| JAYANN A LOCKE<br>1020 MOUNT AVE<br>NORTH HALEDON, NJ 07508- | | DELUXE AUTO SALES INC.<br>500 COMMERCE ROAD<br>LINDEN NJ 07036 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us") the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2009 | Mercedes-B<br>ML63 AMG | 4JGBB77E39A447593 | □ Personal, family or household<br>□ agricultural □ ... |

FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 9500.00 is $ 37787.26 |
|---|---|---|---|---|
| 7.99 % | $ 3328.31 | $ 30208.95 | $ 38267.26 | $ 37787.26 |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | 580.11 | Monthly beginning 11/01/2015 |

☐ or as follows:

Late Charge. If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late. If the vehicle is paid early by prorated basis, no interest and no money back within $ 10,000 , if any, no charge for each late payment will be $ 10 .

Prepayment. If you pay off all your debt early, you did not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information. See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

ITEMIZATION OF AMOUNT FINANCED
1 Cash Price (including $ _____ Tax) $ 36298.45 (1)
2 Total Downpayment =

Other Optional Insurance

□ N/A

NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the Seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

NOTICE TO RETAIL BUYER

1 Do not sign this contract in blank.
You are entitled to a copy of the contract at the time you sign.
2 Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _Jayann Locke_ Date 01/07/2016 Co-Buyer Signs X _____ Date _____

Seller Deluxe AUTO SALES INC. By X _____ Title MANAGER

ORIGINAL LIENHOLDER

# EXHIBIT "C"



900000307997 **STO**

# VEHICLE SERVICE CONTRACT APPLICATION
**FAILURE TO MARK APPLICABLE BOXES IN THIS SCHEDULE MAY RESTRICT COVERAGE**

**SCHEDULE**

| CONTRACT HOLDER'S LAST NAME | FIRST NAME | INITIAL | TELEPHONE |
|---|---|---|---|
| LOCKE | JAYANN A | | (973) 380-4174 |

| STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1020 BELMONT AVE | NORTH HALEDON | NJ | 07508 |

| SELLER NAME | SELLER PHONE NUMBER |
|---|---|
| DELUXE AUTO SALES | (908) 474-5222 |

| STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 731 E EDGAR RD | LINDEN | NJ | 07036 |

| LIENHOLDER NAME | ADDRESS |
|---|---|
| CAPITAL ONE AUTO FINANCE | P.O. BOX 660068   SACRAMENTO   CA   95866 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2009 | Mercedes-Benz | M-Class | 4JGBB77E99A447393 |

| ODOMETER READING AT CONTRACT PURCHASE DATE | VEHICLE SELLING PRICE | CONTRACT PURCHASE PRICE |
|---|---|---|
| 83,435 | $ 30,000.00 | $ 3,650.00 |

| VEHICLE SERVICE CONTRACT PURCHASE/EFFECTIVE DATE | EXPIRATION DATE | EXPIRATION ODOMETER READING |
|---|---|---|
| Month 03 Day 02 Year 2015 | 3/2/2017 | 107,435 |

| VEHICLE IN SERVICE DATE | VEHICLE QUALIFICATION: |
|---|---|
| Month 03 Day 02 Year 2015 | ☐ NEW VEHICLE PLAN    ☒ USED VEHICLE PLAN |

**CHOOSE PLAN:** ☐ PRIMARY PLAN  ☐ PRIMARY PLUS PLAN  ☒ SUPREME PLAN  ☐ ULTIMATE PLAN  ☐ ULTIMATE WRAP PLAN

**SURCHARGES:** PRIMARY PLANS: ☐ SEALS & GASKETS   ALL PLANS: ☒ LUXURY ELECTRONIC COMPONENTS  ☐ LIFT KIT/TIRE MODIFICATION

| SELECT TERM | USED VEHICLE PLANS PRIMARY, PRIMARY PLUS, SUPREME, ULTIMATE PLANS | ☐ 12 MONTHS / 12,000 MILES | ☒ 24 MONTHS / 24,000 MILES | ☐ 30 MONTHS / 30,000 MILES | ☐ 36 MONTHS / 36,000 MILES |
|---|---|---|---|---|---|
| | NEW VEHICLE PLANS ULTIMATE PLAN | ☐ 60 MONTHS / 100,000 MILES | ☐ 72 MONTHS / 75,000 MILES | ☐ 72 MONTHS / 100,000 MILES | ☐ 84 MONTHS / 100,000 MILES |
| | ULTIMATE WRAP PLAN | ☐ 60 MONTHS / 60,000 MILES | ☐ 72 MONTHS / 70,000 MILES | | |
| | | ☐ 60 MONTHS / 100,000 MILES | ☐ 84 MONTHS / 100,000 MILES | ☐ 120 MONTHS / 100,000 MILES | |

| DEDUCTIBLE: | ☒ $100.00 DEDUCTIBLE | ☐ $50.00 DEDUCTIBLE | ☐ $0.00 DEDUCTIBLE | ☐ DISAPPEARING DEDUCTIBLE OPTION |
|---|---|---|---|---|
| | | (if a deductible is not selected, a one hundred dollar ($100) deductible will apply) | | |

## ACKNOWLEDGEMENT

I applied for a **Service Contract** covering the motor vehicle described above, which must meet Our underwriting guidelines and is subject to acceptance by the Administrator. I agree that the time and mileage limits indicated in this Application/Schedule begin to run from the **Contract Purchase Date**, even though any components or parts covered by a manufacturer, supplier, or other warranty are *NOT* covered by my **Service Contract** until expiration of the manufacturer, supplier, or other warranty. See "Eligibility and Key Terms". **I understand that my Service Contract term includes any periods of applicable manufacturers' warranties.**

I understand that proper authorization by the Claims Service Center is required on repairs covered by this **Service Contract.** (Call 800-900-6229)

I further understand that any **Mechanical Breakdown**, loss, or damage that results from a pre-existing condition* is not covered by this **Service Contract** (*refer to State Changes)

☐ Please select this box if **You** plan to use **Your Vehicle** in any of the following ways: Any government or business purpose, pick-up/delivery service, company pool use, business travel when used by more than one driver, service/repair calls, route work, job site activities, construction, farming, ranching or hauling.

I understand the purchase of this **Service Contract** is not required to purchase or obtain financing of my vehicle. The **Contract** Purchase Price shall be paid as a one-time fee.

My signature below means that I have reviewed and understand the time and mileage limitations, coverage, and exclusions, and that the repair of non-covered components is excluded from coverage. I have reviewed all the coverage and options available. All of the options I wish to purchase are clearly marked above. I have read and understand "Your Responsibilities" section of the **Service Contract**. I hereby declare that I have received all 12 pages of the **Service Contract** and the above information is correct.

| CONTRACT HOLDER'S SIGNATURE | DATE | SELLER'S SIGNATURE |
|---|---|---|

**Administrator and Obligor (in Wisconsin, Provider): OwnerGUARD Corporation**
1785 Hancock Street • Suite 100 • San Diego, CA 92110 • (800) 900-6229

♦ WHITE – ADMINISTRATOR          ♦ YELLOW – SELLER          ♦ PINK – LENDER          ♦ WHITE – APPLICANT

L2X 97155                                                                                         426-2021-0514

# EXHIBIT "D"

**JAYAMM A LOCKE**
1020 BELMONT AVE

NORTH HALEDON        NJ 07508



*Deluxe*

**AUTO SALES INC.**
731 E. Edgar Road
Linden, NJ 07036
Phone: (908) 474-5222
Fax: (908) 474-5223
www.deluxenj.com

CUSTOMER COPY   PAGE 1

| DATE | YEAR | MAKE | MODEL | VIN | STK/CUS | MILES IN | MILES OUT | TAG |
|------|------|------|-------|-----|---------|----------|-----------|-----|
| 07/01/16 | 09 | MERCEDES-B | ML63 AMG | 4JGBB77E99A447393 | 2848 | 104961 | 104962 | |

| SERVICE DATE | NOTIFIED | SVC ADV | PROMISED DATE/TIME | LICENSE | RATE | PAYMENT | INV. DATE |
|--------------|----------|---------|--------------------|---------|------|---------|-----------|
| 03/02/15 | 07/02/16 | 02 | 00:00 | | 110.00 | 01 | 07/02/16 |

| R.O. NUMBER | TAX ID | HOME PHONE | BUSINESS PHONE | | |
|-------------|--------|------------|----------------|---|---|
| 14000 | | 973-380-4174 | | BLACK | 3 |

```
==================== REPAIR LINE 001 ====================
CUSTOMER STATES PERFORM LUBE (IF NEEDED), OIL & FILTER CHANGE
PERFORM LUBE (IF NEEDED), OIL & FILTER CHANGE
CHANGE OIL & FILTER, LUBE IF NEEDED, CHECK TIRE PRESSURES, CHECK AND TOP UP FLUIDS
CHECK BELTS, HOSES, AS PER WEO - WE OWE CUSTOMER 3 OIL CHANGES- 2ND OIL CHANGE DONE-
CUSTOMER IS OWED 1 MORE OIL CHANGE IN 1 YEAR/10,000 MILES
Bill Code - UP
LOF          LOF                              20 M A                    15.00
                                             Total Labor               15.00
YY           LF670               OIL FILTE       1                      14.66
YY           5W40                OIL            10                      85.00
                                             Total Parts               99.66
                                             Total Line               114.66
==================== REPAIR LINE 002 ====================
OIL LEAK
FOUND L &R VALVE COVER GASKETS LEAKING
CALLED CUSTOMERS EXTENDED WARRANTY/ AMERIPLUS CL#17856-2542 P 125 L 3.5 HOURS
CUSTOMER HAS $100 DEDUCTIBLE
Bill Code - S Deductible - 100.00
99           GENERAL REPAIRS                 20 M A                   437.50
                                             Total Labor              437.50
YY           1560162421          GASKET          1                     28.50
YY           1560162521          GASKET          1                     28.50
                                             Total Parts               57.00
SUBLET:
1560162121 GASKET
Bill Code - S PO Number -                      M                       68.00
                                             Total Sublet              68.00
                                             Total Line               562.50
==================== REPAIR LINE 003 ====================
NEW JERSEY STATE SAFETY INSPECTION
SERVICE B DUE: SPARK PLUGS, AIR AND CABIN FILTERS, BRAKE FLUID FLUSH, COOLANT FLUSH,
TRANS SERVICE, AND WIPERS FRONT AND REAR $1295 PLUS TAX/ TECH ALSO RECCOMENDS 4 TIRES
AND ALIGNMENT
```

*will email tire parts on Tuesday*

I hereby authorize the above repair work to be done along with the necessary material and hereby grant you and/or your employees permission to operate the car or truck herein described on street, highways or elsewhere for the purpose to testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car or truck to secure the amount of repairs thereto. Warranty on parts and labor is AS SPECIFIED BY THE PART MANUFACTURER. Warranty work has to be performed in our shop & cannot exceed the original cost of repair.

Signature X _____   Date _____

| | |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| MISC. SALES | |
| MATERIALS | |
| TOTAL CHARGE | |
| DEDUCTIBLE | |
| SALES TAX | |
| OTHER PAY | |
| CUSTOMER PAY | |

**EXHIBIT "E"**

**JAYAMM A LOCKE**
1120 BELMONT AVE

NORTH HALEDON          NJ  07508


*Deluxe*

**AUTO SALES INC.**
731 E. Edgar Road
Linden, NJ 07036
Phone: (908) 474-5222
Fax: (908) 474-5223
www.deluxenj.com

CUSTOMER COPY   PAGE 2

| DATE | YEAR | MAKE | MODEL | VIN | STK/CUS | MILES IN | MILES OUT | TAG |
|------|------|------|-------|-----|---------|----------|-----------|-----|
| 07/01/16 | 09 | MERCEDES-B | ML63 AMG | 4JGBB77E99A447393 | 2848 | 104961 | 104962 | |

| SERVICE DATE | NOTIFIED | SVC ADV | PROMISED DATE/TIME | LICENSE | RATE | PAYMENT | INV. DATE |
|--------------|----------|---------|--------------------|---------|------|---------|-----------|
| 03/02/15 | 07/02/16 | 02 | 00:00 | | 110.00 | 01 | 07/02/16 |

| R.O. NUMBER | TAX ID | HOME PHONE | BUSINESS PHONE | | | |
|-------------|--------|------------|----------------|---|---|---|
| 14000 | | 973-380-4174 | | BLACK | | 3 |

```
Bill Code - C
NJSI       NJ STATE INSP                M A
Payment Type - 01 CASH          100.00
```

I hereby authorize the above repair work to be done along with the necessary material and hereby grant you and/or your employees permission to operate the car or truck herein described on street, highways or elsewhere for the purpose to testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car or truck to secure the amount of repairs thereto. Warranty on parts and labor is AS SPECIFIED BY THE PART MANUFACTURER. Warranty work has to be performed in our shop & cannot exceed the original cost of repair.

| | |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| MISC. SALES | |
| MATERIALS | |
| TOTAL CHARGE | |
| DEDUCTIBLE | 100.00 |
| SALES TAX | |
| OTHER PAY | 462.50 |
| CUSTOMER PAY | 100.00 |

Signature X _____        Date _____

# EXHIBIT "F"

**K & E Service Center**
573 Clifton ave
Clifton NJ 07011
973-866-6191

kandeservicecenter.com

# Invoice

| | |
|---|---|
| Date: | 05/18/2016 |
| **Invoice No.:** | **10148** |
| Due Date: | 05/19/2016 |
| Salesperson: | ervis |

**Bill To:**
**2008 AMG**
2008 MERCEDES BENZ ML63 AMG 6.3

973-380-4174

| Qty | Description | Unit Price | Total |
|---|---|---|---|
| 1 | VEHICLE HAS ROUGH IDLE | | |
| 1 | PEFEOMRED COMPLETE DIAGNOSIS AND FOUND NO FAULTS IN THE SYSTME, SMOKE TEST THE COMPETE ENGIEN AND FOUND THE INTAKE GASKET LEAKING | | |
| 1 | REMOVED THE COMPLETE INTAKE ASSEMLBY AND RPELACED ALL GAKSETS | $500.00 | $500.00 |
| 1 | AFTER WORK COMPLETE FOUND THE TANK VENT VALVE STICKING OPEN, REPLACED THE FUEL TANK VENT VAVLE | $100.00 | $100.00 |
| 1 | CUST DROVE VEHICLE BACK ROUGH IDLE, RECHECK THE FAULTS, NO FAULTS IN THE SYSTME AND NO LIGHT ON , SMOKE TEST THE ENGINE AGAIN AFTER 30MINS FOUND SMOKE COMING OUT THE CRANKCASE VENT VALVE | | |
| 1 | REPLACED THE COMPLETE CRANKCASE VENT VALVE | $300.00 | $300.00 |
| 1 | TEST VEHICLE VEHILCE AFTER RECHECK AGANIN FOUND FAULTS FOR TEST PARGE VENT VALVE, REPLACE THE VALVE AND CLEAR ALL FAULTS | $50.00 | $50.00 |

| | |
|---|---|
| Subtotal | $950.00 |
| Total Amt | $950.00 |
| Balance Due | $950.00 |

Please contact us for more information about payment options.

Thank you for your business.

# EXHIBIT "G"

CUSTOMER #: 31022      220412

PRE-WORKORDER

# prestige motors, inc.



JAYANNE LOCKE
1020 BELMONT AVE
HALEDON, NJ 07508
JUJUBEANS2007@GMAIL.COM
HOME:      CONT: (973) 380-4174
BUS:      CELL: (973) 380-4174

Page 1 of 2

755 Route 17 South
Paramus, NJ 07652-2984
(201) 265-7804
Fax: (201) 483-2782

Mercedes-Benz

drive**prestige**.com

SERVICE ADVISOR: Andy Mraaz

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/ OUT | TAG |
|---|---|---|---|---|---|---|
| BLACK | 2009 | Mercedes ML63 | 4JGBB77E99A447393 | C58FDH | 107212 | 9879 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 01/01/2009 | | | | | | | 12/13/2016 |

| R.O. OPENED | READY | OPTIONS: |
|---|---|---|
| 11/08/2016 | | |

| LINE | OP CODE | DESCRIPTION | DURATION | ESTIMATE |
|---|---|---|---|---|
| # A | DIAG | C/S COOLANT LIGHT COMING ON, HAD RADIATOR REPLACED HERE 10/2015. C/S COOLANT IS BUBBLING IN RESERVOIR $299.95 DIAG FEE PLUS TAX, WILL PROVIDE ESTIMATE | | 299.98 |
| # B | LC | LOANER CAR PROVIDED BY PRESTIGE MERCEDES- BENZ DURING VEHICLE SERVICE. PLEASE RETURN CAR WITHIN 24 HOURS OF COMPLETION. | | 0.00 |
| # C | MISC | CUSTOMER STATES CHECK ENGINE LIGHT ON, VEHICLE REVVING HIGH AT IDLE C/S VEHICLE HAS BEEN REVVING HIGH AT IDLE SINCE 10/2015 | | 0.00 |

ADDITIONAL SERVICE RECOMMENDATIONS

| | | | | |
|---|---|---|---|---|
| # D | MISC | Replace head bolts   *25 hrs. @ 149.99 per hour* | | 5580.50 |
| # E | MA10 | Oil and Filter - Change | | 194.58 |
| # F | MISC | Replace Aux. coolant pump   *MUST BE DONE* | | 541.70 |
| # G | CS10 | Thermostat and Gasket Replace | | 555.83 |
| # H | ENGWASH | CLEAN EXCESS OIL FROM ENGINE BAY AFTER REPAIR | | 105.00 |
| # I | STAR | Diagnose Air Suspension | | 299.95 |
| # J | BR14 | Brake Pads, Rear - Replace    *Optional* | | 474.63 |
| # K | MISC | Replace left front axle | | 1797.05 |

**PAYMENT TERMS:** I agree to pay for the inspection and repairs I authorize, along with the necessary materials, in Cash or approved credit card upon completion of the Repairs unless the Dealership agrees to other payment arrangements in advance. An express mechanic's lien is hereby acknowledged to secure the cost of labor, materials, and any other authorized charges.

**CHARGES FOR DIAGNOSTIC/PARTIALLY COMPLETED WORK:** If I authorize commencement of repairs or disassembly of the vehicle or a vehicle component for diagnostic purposes and do not authorize completion of a repair or service, I understand that a charge will be imposed for disassembly, diagnosis and reassembly of partially completed work and I agree to pay the same. Such charges will be directly related to the actual amount of labor and parts involved in the inspection, repair or service.

**STORAGE CHARGES** I understand that a storage charge equal to $0.00 will be assessed and shall accrue daily if I fail to pick up the vehicle within 0 working days from the date I am notified that the work on the vehicle has been completed or after the communication of an estimate if I fail to authorize repairs.

**WARRANTY STATEMENT AND DISCLAIMER: PLEASE SEE THE REVERSE SIDE OF THIS REPAIR ORDER FOR THE DEALERSHIP'S LIMITED WARRANTY.**

I understand that the Dealership is not responsible for any delays caused by the unavailability of parts or shipping by the parts manufacturer, distributor or transporter, nor is it responsible for loss or damage to the vehicle or articles left in the vehicle in case of fire, theft, or any other cause beyond its control.

I hereby grant the Dealership permission to operate the vehicle on streets, highways or public roadways for the purpose of testing and/or inspecting the vehicle. I authorize the retrieval of on-board data as needed to facilitate vehicle repair, as well as sharing that data with the vehicle manufacturer for diagnostic and research purposes.

Customer X _____  Date _____

DealerCAP ©2000 ADP (10/10)  SERVICE/WORKORDER/TYPE 2 - SWOC - "LIMITED WARRANTY" - NEW JERSEY- 9894537

**PARTS:** All parts installed are new unless otherwise indicated. Replaced parts will be returned to you if you request their return before we commence the repairs, provided that they are not impractical to return by virue of their size, weight or other similar factors. In addition, we are not required to return those parts and components which must be returned to the manufacturer or distributor or are sold on an exchange basis.

Discard Replaced Parts _____ (INITIAL)  Save Replaced Parts _____ (INITIAL)

**SHOP SUPPLY COSTS:** A charge equal to 0% of the total cost of labor and parts, not to exceed $00.00, will be added to the Repair Order for shop supplies used in connection with this repair.

PRELIMINARY ESTIMATE $ 12489.48

**ESTIMATE NOTICE: YOU HAVE THE RIGHT TO RECEIVE A WRITTEN ESTIMATE. PLEASE SELECT ONE OF THE FOLLOWING AND SIGN BELOW:**

_____ I REQUEST A WRITTEN ESTIMATE.

_____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____ .THE DEALERSHIP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL AUTHORIZATION.

_____ I HEREBY WAIVE MY RIGHT TO A WRITTEN ESTIMATE.

SIGNATURE _____  DATE _____

| Original Estimate (Parts & Labor) | Authorized/Requested Add'l Repairs | Approved By: | Date & Time | Telephone # Called |
|---|---|---|---|---|
| $ | $ | | | |
| Revised Estimate | $ | | | |

CUSTOMER #: 31022

JAYANNE LOCKE
1020 BELMONT AVE
HALEDON, NJ 07508
JUJUBEANS2007@GMAIL.COM
HOME:                     CONT: (973) 380-4174
BUS:                      CELL: (973) 380-4174

220412

PRE-WORKORDER

Page 2 of 2

# prestige motors, inc.

755 Route 17 South
Paramus, NJ 07652-2984
(201) 265-7804
Fax: (201) 483-2782

Mercedes-Benz

drive**prestige**.com

SERVICE ADVISOR: Andy Mrasz

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|-------|------|------------|-----|---------|----------------|-----|
| BLACK | 2009 | Mercedes ML63 | 4JGBB77E99A447393 | C58FDH | 107212 | 9879 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|-----------|-----------|----------|--------|------|---------|-----------|
| 01/01/2009 | | | | | | | 12/13/2016 |

| R.O. OPENED | READY | OPTIONS: |
|-------------|-------|----------|
| 11/08/2016 | | |

| LINE | OP CODE | DESCRIPTION | DURATION | ESTIMATE |
|------|---------|-------------|----------|----------|
| # L | MB4T | MOUNT AND BALANCE (4) TIRES | | 1604.00 |
| # M | ALIGN | PERFORM 4 WHEEL ALIGNMENT | | 186.86 |

3 Optional

TOTAL AFTER TAX = $7824.46

I will do the job for $7400.00 TOTAL

Mercedes-Benz

(RN)

| | |
|---|---|
| Subtotal | 11640.08 |
| Shop Charges | 34.95 |
| Sales Tax | 814.45 |
| Total | 12489.48 |

Printed On  12/13/2016 7:09 PM

Estimate Expires on  01/12/2017

**PAYMENT TERMS:** I agree to pay for the inspection and repairs I authorize, along with the necessary materials, in Cash or approved credit card upon completion of the Repairs unless the Dealership agrees to other payment arrangements in advance. An express mechanic's lien is hereby acknowledged to secure the cost of labor, materials, and any other authorized charges.

**CHARGES FOR DIAGNOSTIC/PARTIALLY COMPLETED WORK:** If I authorize commencement of repairs or disassembly of the vehicle or a vehicle component for diagnostic purposes and do not authorize completion of a repair or service, I understand that a charge will be imposed for disassembly, diagnosis and reassembly or partially completed work and I agree to pay the same. Such charges will be directly related to the actual amount of labor and parts involved in the inspection, repair or service.

**STORAGE CHARGES** I understand that a storage charge equal to $0.00 will be assessed and shall accrue daily if I fail to pick up the vehicle within 0 working days from the date I am notified that the work on the vehicle has been completed or after the communication of an estimate if I fail to authorize repairs.

**WARRANTY STATEMENT AND DISCLAIMER: PLEASE SEE THE REVERSE SIDE OF THIS REPAIR ORDER FOR THE DEALERSHIP'S LIMITED WARRANTY.**

I understand that the Dealership is not responsible for any delays caused by the unavailability of parts or shipping by the parts manufacturer, distributor or transporter, nor is it responsible for loss or damage to the vehicle or articles left in the vehicle in case of fire, theft, or any other cause beyond its control.

I hereby grant the Dealership permission to operate the vehicle on streets, highways or public roadways for the purpose of testing and/or inspecting the vehicle. I authorize the retrieval of on-board data as needed to facilitate vehicle repair, as well as sharing that data with the vehicle manufacturer for diagnostic and research purposes.

Customer X_____   Date_____

DealerCAP @2006 ADP (10/10)   SERVICE WORK ORDER TYPE 2 - 5M7G - LIMITED WARRANTY - NEW JERSEY - (NS457)

**PARTS:** All parts installed are new unless otherwise indicated. Replaced parts will be returned to you if you request their return before we commence the repairs, provided that they are not impractical to return by virtue of their size, weight or other similar factors. In addition, we are not obligated to return those parts and components which must be returned to the manufacturer or distributor or are sold on an exchange basis.

Discard Replaced Parts _____ (INITIAL)   Save Replaced Parts _____ (INITIAL)

**SHOP SUPPLY COSTS:** A charge equal to 0% of the total cost of labor and parts, not to exceed $00.00, will be added to the Repair Order for shop supplies used in connection with the repairs.

PRELIMINARY ESTIMATE $_____

**PRELIMINARY ESTIMATE NOTICE; YOU HAVE THE RIGHT TO RECEIVE A WRITTEN ESTIMATE. PLEASE SELECT ONE OF THE FOLLOWING AND SIGN BELOW:**

_____ I REQUEST A WRITTEN ESTIMATE.

_____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____. THE DEALERSHIP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL AUTHORIZATION.

_____ I HEREBY WAIVE MY RIGHT TO A WRITTEN ESTIMATE.

SIGNATURE_____   DATE_____

| Original Estimate (Parts & Labor) | Authorized/Requested Add'l Repairs | Approved By | Date & Time | Telephone # Called |
|-----------------------------------|-----------------------------------|-------------|-------------|--------------------|
| $ | $ | | | |
| Revised Estimate | | | | |
| $ | $ | | | |

# EXHIBIT "H"

*Serafin v. Weisleder, Inc.*                    Docket No. OCN-L-450-00

### ORDER

Chambers of Honorable Donald F. Campbell, J.S.C.
213 Washington Street
Toms River, NJ 08754
PH (732) 929-2179

| | |
|---|---|
| Edward Serafin and Gale Serafin on their own behalf and on behalf of all others similarly situated<br><br>            Plaintiff(s),<br><br>     versus<br><br>            Defendant(s)<br>Weisleder, Inc., Household Automotive Finance Corporation, and John Doe. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>OCEAN COUNTY<br><br>Docket No.  OCN-L-450-00<br>Civil Action<br><br>Motion to Dismiss Complaint |

IT IS ORDERED as follows:

MOTION TO DISMISS COMPLAINT.  Defendant's motion to dismiss plaintiff's complaint is hereby denied.  In deciding a motion to dismiss we must view the facts in a light most favorable to the non-moving party.  Viewing the facts in such a light we believe that a jury may conclude that defendant's practice of retaining 45% of the stated purchase price for the extended warranty is unconscionable under the New Jersey Consumer Fraud Protection Act.  We therefore deny defendant's motion to dismiss plaintiff's complaint.

ORDERED that a copy of the within Order shall be served upon all parties within seven (7) days of the date herein.

SIGNED this   9th   day of November, 2000.

*Serafin v. Weisleder, Inc.*    Docket No.  OCN-L-450-00

DONALD F. CAMPBELL, J.S.C.

CC:

Ronald L. Lueddeke
215 Morris Avenue
Spring Lake, New Jersey 07090

Robert Billet
Billet & Connor
4101 South Route 42
P.O. Box 1112
Turnersville, New Jersey 08012-1112

H. Frank Carpentier
Carton, Arvanitis, McGreevy, Argeris, Azeger & Aikins, L.L.C.
4001 Route 66 at Garden State Parkway
P.O. Box 1229
Asbury Park, NJ 07712

WDa55

# EXHIBIT "I"

## Introduction

Last year, there were approximately 10 million new cars registered nationwide[1]; for the same period, there were nearly 650,000 new passenger vehicles registered in New York State.[2] Nearly half of all new car buyers purchase extended service contracts.[3] Service contracts are purchased as a safety net against expensive repair and maintenance costs not covered by the manufacturer's warranty or that may arise after the warranty has expired.

Under a service contract, the issuer agrees, for a fee, to perform, over a fixed period of time or for a specified mileage, services relating to the maintenance or repair, or both, of a motor vehicle.[4] Service contracts vary according to the duration and type of coverage offered, the deductible per repair, and the model car involved. A service contract differs from a warranty, as already noted, because it pays for repairs or maintenance not covered by a warranty or that occur after the warranty runs out.

Some issuers, including GM, Ford and Chrysler, provide their dealers with a suggested retail price ("MSRP") to be charged to the consumer for their service contracts; others do not.[5] According to the domestic manufacturers, the MSRP is designed to incorporate a generous dealer profit: often the MSRP is set at, or close to, twice the wholesale price.

Unlike the MSRP for a new car, which, by federal law, must be disclosed to consumers,[6] there are no comparable disclosure requirements with respect to the MSRP for extended service contracts, and dealers generally do not disclose it. Also, in contrast to the purchase of a car itself, for which consumers negotiate on the price and frequently pay less than the MSRP or "sticker price", consumers do not regularly bargain over the price of the extended service contract, but rather pay whatever the dealer asks. As a result, many dealers, not legally required to disclose the MSRP, take advantage of this situation and charge as much as six times the MSRP, which can be as high as twelve times

---

[1]   _Automotive News_, November 20, 1989, p.128

[2]   Statistics furnished by the New York State Department of Motor Vehicles (DMV).

[3]   _The Car Book, 1990_ by Jack Gillis, p.77;  _Consumer Reports_, April 1990, p.226

[4]   See, Magnuson-Moss Warranty Act, 15 U.S.C. 2301(8).

[5]   For example, in addition to the three major domestic manufacturers, Volvo, Mazda and Subaru also provide their dealers with MSRP's for their service contracts. Toyota, Nissan and Mitsubishi issue service contracts but do not provide an MSRP.

[6]   The Monroney sticker law, 15 U.S.C. 1231, requires such disclosure on a window sticker.

the dealer cost for the service contract.

Moreover, dealers fail to notify consumers that, following the sale of the car, the manufacturer will frequently offer to the consumer, through direct mail solicitation, the exact same service contract at the MSRP. Thus, many dealers are concealing both the MSRP and the fact that the consumer may purchase the same contract for less than the dealer charges by waiting for and responding to the mail solicitation.

## Summary of Findings

This report reviews pricing data submitted by GM, Ford, Chrysler and Toyota at the request of the Attorney General for dealer sales of service contracts to New York consumers between August and December, 1989. The review of over 1700 transactions shows that in 54% (924) of the contracts sold, consumers paid in excess of the MSRP or, for Toyota, which does not provide an MSRP, in excess of an assumed MSRP of twice the dealer's cost – the highest common MSRP. In cases where consumers were charged above the actual or assumed MSRP, those consumers paid an average of $265 above that amount, giving the dealer an average mark-up of 76% over the actual or assumed MSRP.

In the aggregate, based on the data reviewed in this report, it may be projected that the total amount charged above the MSRP for 1989 by GM, Ford and Chrysler dealers on the sale of manufacturer issued service contracts in New York was $15.5 million. The estimated total amount charged by Toyota dealers above twice the dealer cost was over $2.5 million for 1989. When additional dealer sales of service contracts issued by other manufacturers, independent warranty companies and the dealers themselves are taken into account, for 1989 alone, approximately 175,000 New York consumers annually paid in excess of $25 million over and above the MSRP or, where no MSRP is provided, in excess of twice the dealer cost for service contracts.[7] Since the practices identified are nationwide in scope, it may be estimated that more than two million consumers were overcharged in an amount in excess of $300 million.[8]

To combat these abuses, the Attorney General has proposed state legislation to require dealers selling service contracts to make full disclosure of material information provided by the manufacturer or issuer of the contract, including any MSRP, in order to

---

[7]    The figure of $25 million is computed as follows: since 50% of almost 650,000 new car buyers purchased extended service contracts, and 54% of those were subject to dealer excessive pricing practices, about 175,000 consumers were overcharged. The four manufacturers named above represent approximately 65% of the market; thus, their overcharges of over $15 million can be conservatively extrapolated to an industry total of overcharges well in excess of $25 million.

[8]    $25 million x 50% x 54% = number of consumers overcharged. Since New York has 6.5% of the total 1989 new car sales, the corresponding amount for overcharges nationally is over $300 million.

# EXHIBIT "J"

# SUPERIOR COURT OF NEW JERSEY



CHAMBERS OF
MATHIAS E. RODRIGUEZ
JUDGE

MIDDLESEX COUNTY COURT HOUSE
P.O. BOX 964
NEW BRUNSWICK, NEW JERSEY 08903 - 0964



May 7, 2001

Ronald L. Lueddeke, Esq.
215 Morris Ave.
Spring Lake, NJ 07762

Donald Maurice, Esq.
Marino and Maurice, PC
250 Route 28
Bridgewater, NJ 08807

Salvatore Giampiccolo, Esq.
Waters, MM PC
300 Lighting Way
Box 1560
Secaucus, NJ 07096

re: Perry v. Route 22 Nissan, Inc. et al
     Docket No. 11558-99

Dear Counselors:

    Enclosed is the court's decision on the defendant's and plaintiff's motions for summary judgment.

    Thank you for your kind cooperation.

Yours very sincerely,

MATHIAS E. RODRIGUEZ, J.S.C.

/cr

If you require any accommodations as a result of a disability, please call (732) 981-3211/3210

NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE COMMITTEE ON OPINIONS

| | |
|---|---|
| JOE PERRY, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION |
| | MIDDLESEX COUNTY |
| vs. | |
| | Docket No. L-11558-99 |
| ROUTE 22 NISSAN, INC., UNITED | |
| NATIONAL BANK, AND JOHN DOE, | OPINION |
| corporations and individuals, | |
| Defendants. | |

Decided May 7, 2001

Attorney for Plaintiff, Ronald Lueddeke, Esq. (Law Offices of
Ronald L. Lueddeke)

Attorney for Defendant, United National Bank, Donald Maurice,
Esq. (Marino and Maurice, P.C.)

Attorney for Defendant, Route 22 Nissan, Salvatore Giampiccolo,
Esq. (Waters, McPherson, McNeill, P.C.)

MATHIAS E. RODRIGUEZ, J.S.C.

This case arises out of the purchase of a motor vehicle pursuant to a Retail Installment

Contract. The Plaintiff seeks relief alleging Route 22 Nissan failed to disclose the price paid for

the extended warranty and the price paid for credit insurance. Route 22 Nissan drafted the Retail

Installment Contract which was then assigned to United National Bank.  Plaintiff filed a five

count Complaint in the Superior Court, Middlesex County against Route 22 Nissan, Inc.

(hereinafter "Nissan") and United National Bank (hereinafter "United") for alleged violations of

the Federal Truth in Lending Act (hereinafter "TILA") and the New Jersey Consumer Fraud Act

(hereinafter "CFA")[1].  This court must now decide United's motion for summary judgment and Route 22 Nissan's cross-motion for summary judgment, as well as Plaintiff's cross-motion for summary judgment as to Defendant Route 22 Nissan.

## FACTS

On March 16, 1996 the Plaintiff, Joe Perry, entered into Retail Installment Sale contract with Rt. 22 Nissan to purchase a used 1993 Nissan 300 ZX for $24, 897.00.

In addition, Plaintiff purchased a service contract for the amount of $1,200 of which $822 was kept by Nissan; credit life insurance for the amount of $446.61 of which $205.35 was kept by Nissan; and disability insurance for the amount of  $910.41 of which $400.58 was kept by Nissan. Disclosure of the amounts retained by Nissan was not made.

On March 16, 1996 the Retail Installment Contract was assigned to United National Bank.  The loan amount was $32,867.04.

Plaintiff negotiated the purchase price of the vehicle and the amount of his trade-in vehicle, but the Plaintiff does not recall discussing the warranty or insurance agreement or the cost of either.

---

[1]The following is a brief outline of each Count of the Plaintiff's complaint:
Count 1 - II alleges, on behalf of himself and others similarly situated, that the Defendant's violated TILA, 15 U.S.C.A. 1638, et seq., 12 C.F.R. 226.1, et seq. (Reg. Z).
Count 2 - II alleges, on behalf of himself and others similarly situated, that Defendant's violated the New Jersey CFA.
Count 3 - II alleges, on behalf of himself and other similarly situated, Breach of the implied covenant of good faith and fair dealing.
Count 4 - II, on behalf of himself and others similarly situated, alleges that the money paid for the extended warranty amounted to money paid by mistake.
Count 5 - II alleges, on behalf of himself only, violations of CFA.  Specifically, Plaintiff alleges that the acts of the Defendants resulted in his paying a higher finance interest rate and that Defendant, United, wrongfully repossessed the Plaintiff's vehicle.

-2-

Plaintiff stopped making payments on the loan as of June 30, 1999. However, Plaintiff disputes that he defaulted on his loan, and claims that he made an alternative payment agreement with United (See Cert of Nancy Perry attached to Opp).

On November 7, 1997 Plaintiff's vehicle was repossessed for the first time. Plaintiff retrieved the vehicle. United requested that Plaintiff's credit insurance policy be canceled as of this repossession date and that the price be refunded to the provider. Plaintiff's extended service warranty expired on its own in March 1997. (Plaintiff does not admit or deny this fact. Plaintiff simply states that "the service agreement speaks for itself.")

In January of 1999 Plaintiff's vehicle was repossessed for the second time. Plaintiff once again retrieved the vehicle.

On October 4, 1999 Plaintiff's vehicle was repossessed for the third and final time. Plaintiff's vehicle was sold at public auction, after which United sent to Plaintiff a refund check in the amount of $2,124.80.

On December 2, 1999 Plaintiff brought suit on behalf of himself and others similarly situated against Rt. 22 Nissan and United National Bank for alleged violations of the Federal Truth in Lending Act (TILA), the New Jersey Consumer Fraud Act, and various common law claims

## ANALYSIS

For purposes of clarity this Court will address each Count of Plaintiff's Complaint separately and according to topic.

*Count 1: Truth in Lending Act*

*A. As to United*

Plaintiff concedes that Defendant United is not liable under the Truth in Lending Act.

*B. As to Route 22 Nissan and Plaintiff*

Under TILA, creditors are directed to disclose the total amount financed by a consumer. 15 U.S.C.A. 1638. Creditors are further directed that the amount financed must be itemized and that when itemizing this amount, creditors are to disclose the amount that is or will be paid to third persons on the consumers behalf. Id.

TILA's "safe harbor" provision provides:

"No provision of this section...imposing any liability shall apply to any act done or omitted in good faith conformity with any rule, regulation or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefore, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded or determined by judicial or other authority to be invalid for any reason." 15 U.S.C.A. 1640(f).

In December 1995, the FRB proposed an Official Staff commentary pertaining to Regulation Z. The proposed commentary provided:

"Creditor-imposed charges added to amounts paid to others. A Creditor that offers an item for sale in both case and credit transactions sometimes adds an amount (often referred to as an "upcharge") to a fee charged to a consumer by a third party for a service (such as for a maintenance or service contract) that is payable in an equal amount in both types of transactions, and retains that amount. At its option, the credit[or] may list the total charge (including the portion retained by it) as an amount paid to others, or it may choose to reflect the amounts in the manner in which they were actually paid to or retained by the appropriate parties." 60 Fed. Reg. 62764, 62769 (Dec. 7, 1995).

In April 1996, the Board promulgated a second commentary which was later codified. This more restrictive interpretation of Regulation Z provided:

-4-

"Charges added to amounts paid to others. A sum sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization, the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category 'amount paid to others' language such as '(we may be retaining a portion of this amount).'" 61 Fed. Reg. 14952, 14956 (April 4, 1996)(codified at 12 C.F.R. Pt. 226, Supp. I section 18(c)(1)(iii)(d)).

Defendant Nissan argues that Nissan was acting within TILA's requirements as understood for the time period in question. According to Defendants, the more lenient of the two interpretations, that is, the December 1995 commentary, was applicable when the Plaintiff and Defendant entered into the Retail Install Contract on March 16, 1996. Defendant Nissan relies upon *Green v. Levis Motors, Inc.*, 179 F. 3d 286 (CA 5, 1999).

In *Green*, the 5th Circuit held that the safe harbor provision of the TILA is not available to shield defendants who executed agreements before the Proposed December 1995 commentary on Regulation Z. The court reasoned that because the more lenient December 1995 interpretation did not exist at the time of the challenged disclosure it could not be relied upon.

Plaintiff argues that Nissan cannot claim a good faith defense based upon a proposed FRB commentary (December 1995). Plaintiff cites *Jones v. Bill Heard Chevrolet* 98-6786, 2000 WL 712860 (11th Cir. 6/2/00) in support of this argument. The *Jones* court stated that the defendant could not overcome the "insurmountable obstacle" that the Board's April 1996 commentary did not exist until after the plaintiff's entered into their contract. The court stated that "a party cannot act 'in good faith in conformity with' a regulation or interpretation that does not exist at the time of the disputed act."

In summary, the court finds that since the safe harbor provision of TILA is applicable to Nissan there is no genuine issue of material fact with regards to Nissan's liability under TILA and summary judgment is appropriate. As a consequence, Plaintiff's cross motion for summary judgment must be denied.

*Count 2, 3, & 4: Affirmative relief pursuant to FTC Holder Rule and NJ Holder Rule as to United.*

The FTC Holder Rule provides that "a holder of a consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto. Recovery by a debtor against a holder is not to exceed the amount paid by the debtor hereunder." See 16 C.F.R. Section 433.2.

The New Jersey Holder Rule provides in pertinent part:

"Any subsequent holder of a consumer note shall be subject to all claims and defenses of the retail buyer against the retail seller arising out of the transaction but no such claim or defense may be asserted against such holder in excess of the time sales price under the retail installment contract for any sale, except that, in the case of the sale of a new motor vehicle, as defined in R.S. 39:10-2, no claim or defense may be asserted against such holder in excess of the time balance under the retail installment contract."

This language was incorporated in the Retail Installment Contract, entered into by the Plaintiff and Defendant Route 22 Nissan and assigned to Defendant United under the section entitled "Notice". The Plaintiff asserts that United is liable under both the FTC Holder Rule and the NJ Holder Rule.

Defendant's contend that no affirmative recovery against United can be awarded under the FTC Holder Rule (and New Jersey Holder Rule) since rescission and restitution are not justified. For this proposition the Defendant relies upon *Daly v. All American Chevrolet*, et. al.,

-7-

an unpublished NJ Superior Ct. Law Div. 9/24/99 (Attached at Exhibit C). The *Daly* court found that to hold an assignee liable pursuant to the mandatory FTC Holder language requires a request for rescission and proof that rescission is warranted. The *Daly* court in part relied upon *Ford Motor Credit Company v. Morgan*, 404 Mass. 537, (Supreme Judicial Court of Mass, Suffolk, 1989); *Field v Chrysler Credit Corp.*, 219 Ill. App. 3rd 530, 580 N.E. 2d 191(App. Ct. 1991); and *Taylor v. Bob O'Connor Ford, Inc.* 198 WL 177689 North Division Illinois.

The *Morgan, supra,* court held that there are a limited number of circumstances where a judgment for damages against the assignee-creditor would be available. One of the circumstances a consumer can maintain an affirmative action against an assignee creditor is if the consumer "commenced payments and received little or nothing of value from the seller." Id. at 542.

The *Field, supra,* court held that a consumer can maintain an action against an assignee creditor for a refund of money paid, but only if the seller's breach was so substantial that recission and restitution would be justified. *Id.* at 570.

The *Taylor, supra,* court added that a consumer can assert a claim against the assignee creditor only for recision of the contract.

Plaintiff argues that Defendant is liable under the FTC and NJ Holder Rules. First, Plaintiff argues that this case is distinguishable from *Daly* by pointing out that the Plaintiff is limiting his recovery in this matter to the finders fee or commission received by Nissan (see page 14 of Plaintiff's Opposition). Therefore, Plaintiff asserts there is a question whether he received anything for value when the size of the amount of the commissions are considered.

Secondly, Plaintiff relies upon a letter issued by the FTC on September 25, 1999 which

-8-

stated that the courts are wrong when they limit the affirmative recovery ability under the FTC Holder rule. According to the FTC, "the consumer may recover his or her down payment (all deposits and trade-ins given to the seller), and all installment payments made pursuant to the contract, but no more."(Attached at Exhibit D of Plaintiff's Opposition Brief).

Plaintiff then turns to *Gonzalez v. North Hudson*, unpublished NJ App. Div. case (1999), for the proposition that "whatever claim plaintiff, as a retail buyer, had against ... the retail seller, that claim could be asserted against ... the subsequent holder of the consumer note" under the NJ Holder Rule. The App. Div. in *Gonzalez* relied upon N.J.S.A. 17:16C-38-2 which defines a holders liability under a Consumer Note for said proposition (Attached at Exhibit C of Plaintiff's Opposition Brief).

This court finds that although the FTC letter, as discussed in the NCLC Reports Volume 18 July/August 1999 edition, is not binding on this court, it is persuasive evidence that the FTC did not intend to limit liability under the FTC Holder Rule to only those consumer claims that are substantial, requiring recission or restitution. Accordingly, this court finds that the *Daly* court incorrectly applied the FTC Holder Rule when it limited liability to only recission or restitution. Therefore, Defendant United may be held liable under the FTC Holder Rule.

This court further finds that based on the Appellate Divisions decision in *Gonzalez* and N.J.S.A. 17:16C-38-2, it is clear that whatever claim Plaintiff has against Route 22 Nissan may be asserted against United as holder of the consumer note or Retail Installment Contract. Accordingly, Defendant United may be held liable under the NJ Holder Rule as well.

Since a rational fact finder could find United liable as the holder of the consumer note under both the FTC Holder Rule and the NJ Holder Rule there is a genuine issue of material fact

-9-

which precludes summary judgment.

*Count 2:  New Jersey Consumer Fraud Act as to United, Route 22 Nissan and Plaintiff*

The CFA prohibits:

"[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression , or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby...." N.J.S.A. 56:8-2.

The CFA provides individual consumers with a cause of action to recover refunds, NJSA 56:8-2.11 to 2.12, and treble damages for violations, whether in good faith or otherwise, NJSA 56:8-19.

The "rights, remedies and prohibitions" created by the CFA are cumulative to any other rights, remedies, and prohibitions created by the common law or other statutes.  N.J.S.A. 56:8-2.13.

The New Jersey Supreme Court in *Lemelledo v. Beneficial Mgmt,* 150 N.J. 255, 264 (1977), explained that "[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud."

The *Lemelledo* court also explained that "[i]n determining whether the existence of other regulations creates an exemption to the CFA for particular conduct that otherwise would fall within its provisions, it should ordinarily be assumed that the CFA applies to the covered practice.  That assumption is appropriate because of the strong and sweeping legislative remedial purpose apparent in the CFA." Id. at 553.

"In order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied,..., that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes." Id. at 554.  The *Lemelledo* court explained that the court "must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes.  We stress that *the conflict must be patent and sharp*, and must not simply constitute a mere possibility of incompatibility." Id. at 554. (Emphasis added.)

In order for the Plaintiff to succeed under the CFA, the Plaintiff must demonstrate that s/he "suffered an ascertainable loss....as a result of the unlawful conduct." *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 NJ 464, 473 (1988); N.J.S.A. 56:8-19.  There must be a "causal relationship" between the unlawful practice and the "ascertainable loss" sustained by the plaintiff. *Ramanadham v. NJ Mfrs. Ins. Co.*, 188 N.J. Super. 30, 33 (App. Div. 1982); N.J.S.A. 56:8-19.

According to *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994), the court explained that to violate the [CFA], a person must commit an 'unlawful practice' as defined by the legislation.  Unlawful practices fall into three general categories:  affirmative acts, knowing omissions and regulation violations. See N.J.S.A. 56:8-2, 8-4.

A.  *As to United*

Defendant argues that without a finding that United violated the TILA there can be no finding that United violated the NJ CFA.  The Plaintiff has conceded that Defendant United cannot be held liable under TILA which bars assignee liability for undisclosed premiums not

-11-

apparent on the face of the disclosure document.

However, Plaintiff contends that if Nissan is found to have violated the CFA based upon an unconscionable commercial practice, this violation may be visited upon United pursuant to the FTC and NJ Holder Rules.

Defendant replies and points out that if we were to follow Plaintiff's reasoning there would be a conflict between the CFA and the TILA. According to Defendants, the Plaintiff is contending that although the TILA does not impose a duty on assignees to investigate if any of the TILA disclosures on the Retail Installment Contract are inaccurate, the CFA does. TILA only requires an assignee-creditor to investigate those disclosures that are incomplete or inaccurate on the face of the disclosure or a disclosure which does not use the terms required under TILA. 15 U.S.C.A. 1641 (a).

Based on *Lemelledo* this court will presume that the CFA does in fact require the defendant to investigate whether disclosures on the Retail Installment Contract are accurate even though TILA does not. When the evidence is viewed in the light most favorable to the non-moving party, this court is convinced that the defendant has not overcome the presumption that the CFA appies. This court does not view requiring Defendant United to investigate above and beyond what TILA requires as imposing a conflicting duty. If any conflict does exist it is not "patent and sharp." *Lemelledo, supra,* at 554. Requiring a higher duty of care under CFA is not a conflict. The legislators intended the CFA to be applied broadly in order to combat consumer fraud. Id. at 264. *Cf. Hinfey v. Matawan Regional Bd. of Educ.,* 77 N.J. 514, 527-28 (1978)(holding that more specific antidiscrimination statute did not preempt broader antidiscrimination statute despite the existence of separate administration bodies charged with

-12-

combating the same form of discrimination); *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 365 N.E. 2d 802, 805 (1977)("the mere existence of one regulatory statute does not affect the applicability of a broader, non-conflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter.").

Accordingly, a rational fact finder could find that United violated the CFA precluding summary judgment. United's motion for summary judgment on Count 2 is denied.

### B. As to Nissan and Plaintiff

Plaintiff argues that Nissan made an affirmative misrepresentation when it represented in the contract the amounts charged the plaintiff for the service contract, the life insurance, and the disability insurance because that was not the amounts that were paid for those products. Plaintiff further argues that Nissan made a knowing omission when it failed to reveal the amounts that it was retaining as a finder's fee or commission.

Plaintiff cites *Smith v. Precision Chevrolet*, an unreported Atlantic County Law Division case, and *Abrams v. Bob Ciasulli-Mack Pontiac*, an unreported Ocean County Law Division case, in support of his argument.

In *Abrams* a jury found that when the dealer charged $989 for a service contract that cost it $298, the dealer committed an unconscionable commercial practice, deception, fraud or misrepresentation.

The *Smith* court held that the dealership violated the CFA when it did not disclose the amount it retained under the service and warranty contract. The court categorized this as an affirmative misrepresentation citing *Generi v. Weichert-Realtor*, 148 N.J. 582 (1997) and *Chatlon v. Cape May Green*, 243 N.J. Super. 590 (App. Div. 1990), aff'd 124 N.J. 520. The

court noted that the defendant's failure to disclose could also be characterized as a knowing omission since there was no dispute that the omission was knowingly made with the intent that the consumer rely upon it in direct violation of the CFA.

A rational fact finder could find that Nissan violated the CFA when it misrepresented in the Retail Installment Contract the amounts charged for the service contract and the insurance, and that Nissan knowingly failed to disclose the amount it retained for the service contract and the insurance in direct violation of the CFA. Therefore, there exists a genuine issue of material fact which precludes summary judgment in favor of Defendant Nissan.

Defendant Nissan argues that even if the plaintiff can establish that Nissan's practices were unlawful, the plaintiff cannot establish the elements of ascertainable loss or a "causal relationship" between the ascertainable loss and the unlawful practice.

This court feels that the determination as to whether the plaintiff suffered an ascertainable loss and the extent of such loss is a question of fact for the jury to determine. Accordingly, plaintiff's cross-motion for summary judgment must be denied.

*Count 3 : Breach of Contract - Implied Covenant of Good Faith and Fair Dealing*

The New Jersey Supreme Court in *Palisades Properties v. Brunetti*, 44 N.J. 117, 130 (1965), has stated that "[i]n every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract...'(citing 5 Williston on Contracts Section 670, at 159-60 (3d ed. 1961))."

The Restatement (Second) of Contracts, Section 203 (1979 Main Vol.), defines the duty of good faith and fair dealing as "a duty of good faith and fair dealing in its performance and its

-14-

enforcement." See also N.J.S.A. 12A:1-203.

Comment C of Section 203 of the Restatement (Second) of Contracts, states that the Duty of Good Faith and Fair Dealing, like UCC Section 1-203, "does not deal with good faith in the formation of a contract." See also N.J.S.A. *Channel Home Ctrs v. Grossman*, 795 F.2d 291, 299 n.8 (3d Cir. 1986)(Good faith in bargaining or formation stages of the contracting process is distinguishable from the common law duty to perform in good faith.); *Henkin v. Skane-Gripen A.B.*, 986 F. 2d 1424 (7th Cir. 1993)(granting summary judgment for Defendants where allegation that Defendants breached duty of good faith and fair dealing were based only on negotiation process.).

Defendant United argues that since the Plaintiff alleges that the contract term of good faith and fair dealing was breached because of the misrepresentations and omissions in the formation of the contract regarding the cost of the extended warranty, there is no breach of good faith and fair dealing in the performance or enforcement of the contract.

Defendant Route 22 Nissan relies upon and joins Defendant United's argument on this issue.

Plaintiff suggests that the retail installment contract can be construed as creating a duty to pay the entire service contract and life and disability insurance premiums to a third party or to disclose that the amount paid for the service contract and insurance was inflated. Therefore "this is an unequivocal representation and stipulation in a binding contract that the monies will be paid without any reservations. This certainly creates a duty to pay the entire monies as agreed and to disclose any finders fee or commission and not to inflate the cost of these products." Plaintiff wants this court to construe the contract as requiring as part of its *performance* a duty to pay the

-15-

monies as represented in the Retail Installment Contract without any reservations and a duty to disclose any finders fee or commissions.

In the case at bar, the plaintiff's complaint is based on the nondisclosure of the amounts retained by Route 22 Nissan for the service contract and life and disability insurance. There is no genuine issue of material of fact that nondisclosure occurred at the formation stage of the contract during the course of negotiations not in the performance or enforcement of the contract. Accordingly there has been no breach of the implied covenant of good faith and fair dealing. Therefore, Defendant United's motion and Defendant Nissan's cross-motion on this issue is granted and Plaintiff's cross-motion is denied.

*Count 4: "Money paid by mistake"*

"[M]oney voluntarily paid with full knowledge of the facts, even if for an unjust claim, or if paid under protest cannot be recovered." *McGregor v. Erie Railroad, Co.*, 35 N.J.L. 89, 112 (Sup. Ct. 1871). However, recovery is permitted for "money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition, express or implied, or extortion, or opposition, or an undue advantage taken of the plaintiff's situation (citation omitted)." *Id.* at 112.

Defendant argues that the Plaintiff does not allege that he purchased the warranty and credit insurance involuntarily, through extortion or coercion, fraud or duress. Plaintiff knew what Nissan was charging for those items. Accordingly, money was not paid by mistake because Plaintiff paid United understanding what he was being charged for the warranty and insurance.

Defendant Route 22 Nissan relies upon and joins Defendant United's argument on this issue.

-16-

Plaintiff relies upon the same argument presented for Breach of Implied Covenant of Good Faith and Fair Dealing. Plaintiff contends that the Retail Installment Contract created a duty to pay the entire service contract and insurance premiums to a third party. Plaintiff wants us to construe the defendants failure to disclose that Nissan retained a portion of these fees as "money paid by mistake."

On a motion for summary judgment the court must view the evidence in the light most favorable to the Plaintiff. Consequently, there is evidence on the record to support a claim of undue advantage against Route 22 Nissan. Plaintiff does not assert that there was an undue advantage, but one could be implied by Plaintiff's argument that Nissan's failure to disclose that it retained a portion of these fees prevented the plaintiff from negotiating a lower fee for these services. There is evidence on the record that even when armed with such knowledge the Plaintiff might not have attempted to negotiate a lower rate for these services. (Plaintiff recently purchased a new vehicle and did not negotiate the amount paid for the same services). Therefore, there is a genuine issue of material fact as to whether plaintiff was placed in a situation of undue advantage by Route 22 Nissan when Nissan failed to disclose the amounts retained precluding summary judgment in favor of Defendant Nissan and Plaintiff as to Count 4.

However, there is no evidence even viewed in the light most favorable to the Plaintiff to support a claim against Defendant United for money paid by mistake. There was no mistake of fact in the amount paid to United for these services by the Plaintiff. There is also no evidence of coercion, fraud or duress. There is no genuine issue of material fact as to United and therefore summary judgment is appropriate as to Count 4 of Plaintiff's complaint.

-17-

*Count 5:  IP's individual claims violation of the NJ Consumer Fraud Act*

A.    Interest Rate

As discussed earlier, for the Plaintiff to succeed under the CFA, the Plaintiff must demonstrate that s/he "suffered an ascertainable loss....as a result of the unlawful conduct." *Meshinsky, supra.,* at 473; N.J.S.A. 56:8-19.  In *Cox, supra.,* the court explained that to violate the [CFA], a person must commit an 'unlawful practice' as defined by the legislation.  Unlawful practices fall into three general categories:  affirmative acts, knowing omissions and regulation violations.  See N.J.S.A. 56:8-2, 8-4.

TILA requires that the creditor "clearly and conspicuously" disclose certain aspects of a credit transaction to the borrower.  15 U.S.C.A. 1632(a).  The information that the creditor is required to disclose in this manner includes the "finance charge".  15 U.S.C.A. 1638(a)(3); 12 C.F.R. 226.18(d).

TILA defines a "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit....Examples of charges which are included in the finance charge include any of the following types of charges which are applicable: (1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges....(3) Loan fee, finder's fee, or similar charge...."  15 U.S.C.A.1605 (a).  Regulation Z defines a "finance charge" as "the cost of consumer credit as a dollar amount.  It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."  12 C.F.R. 226.4(a).

According to 15 U.S.C.A. 1605 (a) & 12 C.F.R. 226.4(a), a finance charge includes any cost paid directly or indirectly by the consumer and imposed directly or indirectly by the creditor as a condition on the extension of credit.  Stated another way, "a charge which the consumer does not pay directly and which is only indirectly a condition to the extension of credit is as much a finance charge under TILA as charges paid directly by the borrower and which are direct conditions on the extension of credit." *Noel v. Fleet Finance, Inc.* 971 F. Supp. 1102, 1110 (E.D. M.I., 1997).

The court in *Noel, supra.,* employed a two-step analysis in determining whether the yield spread was a finance charge. First, they looked at whether the consumer paid the finance charge or yield spread directly or indirectly and found that the consumer indirectly paid the yield spread. The court reasoned that "Fleet rewarded Birmingham and Sterling for originating the Plaintiffs' loans at an interest rate higher than the interest rates approved by Fleet by paying them an amount equal to at least 75% of the yield spread multiplied by the amount of each loan." Id.  The court further reasoned that "while the yield spread premiums were paid to Birmingham and Sterling directly by Fleet, they were paid indirectly by the Plaintiffs." Id.

Secondly, the court looked at whether the yield spread premium was an indirect condition on the extension of credit by Birmingham and Sterling.  Here they found that "[a]lthough the fact of the yield spread premium was not revealed to the Plaintiffs, they were nevertheless required to agree to it in order to consummate their loan transactions." Id. at 1111.  Thus, the *Noel* court found that the yield spread premium met the definition for finance charge under TILA

Defendant United argues that as a matter of law it was not required to disclose any "spread" between the rate of interest at which Defendant United would take the assignment of a contract

and the rate of interest charged to Plaintiff because it is not a finance charge. Defendant also

argues that a dealer and assignee are not required to disclose a dealer discount or the assignment

of the loan agreement at less than its face value. The defendant cites *April v. Union Mortgage*

*Co., Inc.*, 709 F. Sup. 809, 813 (N.D. Ill. 1989)(held that the $3,300 retained by Union Mortgage

of the $20,000 paid was not a finance charge, discount or additional charge required to be

disclosed under TILA); *Balentine v. Union Mortgage Co.*, 1994 WL 34256, 2 (N.D. Ill., Feb. 2,

1994)(held that "chopping" is not required to be disclosed under TILA because it is not a finance

charge, but the cost of doing business); and *Baldwin-v Laurel Ford Lincoln-Mercury, Inc.*, 32 F.

Supp. 2. 894, (S.D. Miss. 1998)(held Ford Credit, as assignee, acted in good faith and was

therefore not liable under TILA for not disclosing the amount of the interest being retained by the

dealer, Laurel Ford Lincoln-Mercury, Inc.)

Defendant Route 22 Nissan relies upon and joins Defendant United's argument on this

issue.

Plaintiff has conceded that Defendant United is not liable under TILA and is therefore not

liable for the nondisclosure of the yield spread based on a TILA violation. However, Plaintiff

argues that Defendant Nissan has violated the CFA when it did not disclose the exact amount of

the annual percentage rate that it was retaining as a commission or finders fee, i.e.; the yield

spread. This nondisclosure, argues the plaintiff, is an affirmative misrepresentation in violation

of the CFA.

This court finds that, based on the plain language of 15 U.S.C.A. 1605 (a)(1)&(3), the

interest rate and the yield spread at issue in this case are included in the definition of a finance

charge which requires disclosure under TILA. 15 U.S.C.A. 1638(a)(3); 12 C.F.R. 226.18(d).

Also, when employing the same two-step analysis as used in *Noel*, this court finds that the yield spread is a finance charge requiring disclosure under TILA.  First, Defendant United, in a sense, 'rewarded' Route 22 Nissan for originating the Plaintiffs' loan at an interest rate higher than that approved by United by paying Route 22 Nissan the difference or the yield spread.  Thus, this cost was indirectly paid by the Plaintiffs.  Secondly, this court has little doubt that the Plaintiffs were required to consent to the higher interest rate or the yield spread as a condition to the extension of credit.  This court finds, as did the *Noel* court, that Route 22 Nissan was required to disclose the existence of the yield spread to the Plaintiffs under TILA.

Accordingly, a rational fact finder could find Route 22 Nissan violated the CFA based on the violation of TILA.  Also, a rational fact finder could find that Route 22 Nissan's nondisclosure was an affirmative misrepresentation or a knowing omission in violation of the CFA.  Therefore, there exists a genuine issue of material fact which precludes summary judgment in favor of Defendant Nissan.

In order for the plaintiff to succeed under the CFA, the plaintiff must demonstrate an ascertainable loss resulting from the unlawful practice.  *See Meshinski, supra,* at 473.  Whether the plaintiff suffered an ascertainable loss and the extent of such a loss is a question of fact for the jury to determine.  Accordingly, plaintiff's cross-motion for summary judgment must be denied.

There is also the issue of whether a fiduciary duty exists between a borrower and a lender while negotiating the terms of the a loan agreement requiring the lender to disclose to a prospective borrower the rate of interest being offered by the lender.  However this aspect of the Defendant, United's,  argument is not addressed by the Plaintiff. Accordingly, the court assume

-21-

that the Plaintiff has conceded this point.

In sum, summary judgment is granted in favor of Defendant United and denied as to Defendant Nissan and Plaintiff.

## B. Repossession of the Vehicle

A creditor may repossess its collateral when (1) there is a default under the credit agreement; (2) there is a valid security agreement concerning the collateral; and (3) the repossession is executed without a breach of the peace. *Slowinski v. Valley National Bank,* 264 N.J. Super. 172, 186 (App. Div. 1993); N.J.S.A. 12A:9-504.

Defendant United argues that the bank has satisfied all the conditions required in repossessing the Plaintiff's vehicle. Plaintiff was in default of the Retail Installment Contract because they had not made the June 30, 1999 payment. Plaintiff Joe Perry admits it has no evidence of making payments in the months of August, September, or October 1999. (Exhibit A – Plaintiff Joe Perry Dep, pg. 87, lines 5-23) Plaintiff Nancy Perry admits that the contract was in default when the vehicle was repossessed in October of 1999. (Exhibit B – Nancy Perry Dep pg. 33, line 22.) There was a valid security agreement which terms provided for the repossession of the vehicle upon default and there was no breach of the peace.

Plaintiff argues that in August 1999, the Plaintiff Joe Perry through is wife, Nancy Perry, entered into an alternative payment agreement with Defendant United. Plaintiff owed $7,400 on the loan at that time. Plaintiff Nancy Perry agreed that by October 1, 1999, the Plaintiff Joe Perry would make a double payment. Plaintiff Nancy Perry confirmed arrangement in September of 1999. Plaintiff Nancy Perry claims to have sent the agreed upon payment on October 1, 1999. The car was repossessed on October 4, 1999. According to Plaintiffs, on October 21, 1999, the

Plaintiffs attempted to wire $7,400 to Defendant United from their PNC bank account in order to prevent the auction of the vehicle from taking place. The Plaintiffs concede that the wire transaction was not completed by PNC and that they have no proof that the wire transfer was in fact suppose to take place. (Exhibit B - Nancy Perry Dep pg. 33, line 22.) The car was sold on October 21, 1999. Plaintiffs received $2,124.80 surplus from the sale of the car.

Plaintiffs argue that Defendant United's conduct in failing to honor the alternate payment agreement and the subsequent repossession of the case was unconscionable conduct in violation of the CFA. According to the Plaintiffs, it clearly was not within the standards of good faith, honesty-in-fact and fair dealing required by the CFA. Plaintiffs cite *Kugler v. Romain*, 58 N.J. 522 (1971) in support of their position.

The Defendant replied and argued that the Certification of Nancy Perry is deficient to defeat summary judgment because there is no proof of any payments being made. Only thing offered is a letter from PNC indicating that a wire transfer in an amount undetermined was suppose to take place on October 21, 1999. (Exhibit C - Perry's Cert) Furthermore, the Plaintiffs had sufficient notice of the sale as evidenced by the notice attached to Nancy Perry's certification as Exhibit A.

This court finds no genuine issue of material fact and, therefore, SJ is appropriate.

## SUMMARY

As to United:

GRANTED - Summary Judgment as to Count 1 - TILA

DENIED - Summary Judgment as to Counts 2 on the issue of affirmative relief pursuant to FTC Holder Rule and NJ Holder Rule/GRANTED Summary Judgment as to Counts 3 & 4.

DENIED - Summary Judgment as to Count 2 on the issue of NJ CFA violation.

GRANTED - Summary Judgment as to Count 3 on the issue of Breach of Contract.

GRANTED - Summary Judgment as to Count 4 on the issue of "Money paid by Mistake"

GRANTED - Summary Judgment as to Count 5 in its entirety.

As to Route 22 Nissan/*Plaintiff:*

GRANTED/*denied*- Summary Judgment as to Count 1 - TILA

DENIED/*denied* - Summary Judgment as to Count 2 on the issue of NJ CFA violation.

GRANTED/*denied* - Summary Judgment as to Count 3 on the issue of Breach of Contract.

DENIED/*denied* - Summary Judgment as to Count 4 on the issue of "Money paid by Mistake"

DENIED/*denied* - Summary Judgment as to Count 5 - Interest rate

# EXHIBIT "K"

11:42am  From-McELROY,DEUTSCH & MULVANEY                    T-767  P.09/24  F-683

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
ATLANTIC COUNTY, NEW JERSEY
DOCKET NO. ATL-L-3156-96
A.D. # _____

BESSIE SMITH,                    )
                                 )
                 Plaintiff,)          TRANSCRIPT
                                 )         OF
        -v-                      )     CROSS MOTIONS
                                 )        FOR
PRECISION CHEVROLET              )     SUMMARY JUDGMENT
OLDSMOBILE, et al,               )
                                 )
                 Defendant.)

                    Place:  Atlantic County Cthse.
                            1201 Bacharach Boulevard
                            Atlantic City, NJ 08401

                    Date:   July 29, 1999

BEFORE:

  HON. MICHAEL WINKLESTEIN, J.S.C.

TRANSCRIPT ORDERED BY:

  JEFFREY C. SOTLAND, ESQ. (Mintzer & Sarowitz)

APPEARANCES:

  DONNA SEGAL MAFFA, ESQ. (Tomar, Simonoff, Adourian,
          O'Brien, Kaplan, Jacoby & Graziano)
     Attorney for the Plaintiff

  MICHAEL C. CORCORAN, ESQ. (Mintzer & Sarowitz)
     Attorney for the Defendant

                    Transcriber, Beatrice A. Creamer
                    J&J COURT TRANSCRIBERS, INC.
                    268 Evergreen Avenue
                    Hamilton, NJ 08619
                         (609)586-2311
                    FAX NO.  (609)587-3599

                    Audio Recorded
                    Audio Operator, W. Bordonaro

08-30-00   11:43am   From-McELROY,DEUTSCH & MULVANEY                        T-767   P.10/24   F-689

```
 1                          I N D E X                              2
 2
 3
 4                                                    PAGE
 5      RULING
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                              Colloquy                            3
 1         THE COURT:  Mr. Corcoran, can you hear me?
 2      MR. CORCORAN:  Yes, Your Honor.
 3         THE COURT:  Good morning.  Ms. Maffa is in the
 4   Courtroom.  I'm going to go on the record at this point.
 5   This is the matter of Smith versus Precision, ATL-L-3156-96.
 6   The matter is before the Court this morning for argument on
 7   cross motions for summary judgment.  May I have counsel's
 8   appearance, please, beginning with plaintiff's counsel?
 9         MS. MAFFA:  Donna Sagal Maffa from the Tomar law
10   firm on behalf of Bessie Smith and the class.
11         MR. CORCORAN:  Your Honor, Michael Corcoran from
12   the law firm Mintzer & Sarowitz on behalf of the defendant,
13   Precision Chevrolet.
14         THE COURT:  Good morning.  I have reviewed all of
15   these papers.  I'm thoroughly familiar with the file and the
16   arguments.  If counsel wish to supplement the arguments set
17   forth in the brief, I will hear from you at this time.  I'll
18   begin with you, Mr. Corcoran.
19         MR. CORCORAN:  Your Honor, before the Court, as
20   you aware, is defendant Precision's motion for summary
21   judgment.  The defendant seeks summary judgment as to the
22   five counts in plaintiff's second amended complaint, all the
23   class action complaint that is.  And as you just stated, the
24   brief accompanying our motion -- spells out our argument and
25   the basis for our request for summary judg-
     RECEIVED TIME
```

Ruling

4

1    rely upon the brief in support of our arguments today.
2          THE COURT:  Very well.  Ms. Segal Maffa?
3          MS. MAFFA:  Good morning.  As Your Honor
4    indicated, you've read everything and you're looking just
5    for any supplemental arguments.  In fact, we have nothing to
6    supplement our briefs with.  So unless you have questions, I
7    will also rely on our paper submissions.
8          THE COURT:  Okay.  No, I don't have any questions.
9    I'm all too familiar with this case.  I feel like it's —
10   I've been living with it for the past year and a half, as
11   I'm sure each of you do.
12         This matter is before me on a motion by defendant
13   Precision for summary judgment on counts one, two, three,
14   five and six of plaintiff -- bless you -- Bessie Smith's
15   second amended complaint.  The plaintiff has filed
16   opposition and a cross motion for summary judgment as to
17   counts one, two and six.  The New Jersey Coalition of
18   Automotive Retailers has filed an amicus brief.  And I have
19   also received a reply from Precision to the cross motion.
20         This action stems from an automobile sales
21   transaction between Precision and plaintiff.  On June 6,
22   1996, plaintiff purchased a car from Precision for $11,995.
23   In addition to the automobile itself, Precision purchased an
24   extended warranty costing $995, a insurance policy, credit
25   life disability insurance policy for $523.33.  Specifically

Ruling

5

1    the retail installment contract stated as follows.  "To
2    Credit Insurance Company, $523.33."  And with regard to the
3    service contract, it's stated, "To Service Contract $995."
4    With the exception of a $300 down payment and $5,975 in
5    consideration for your trade in, plaintiff's -- the rest of
6    plaintiff's purchase price was made possible through the
7    extension of credit.
8          Precision charged plaintiff an interest rate of 18
9    percent.  Precision asserts that all of these costs were
10   fully disclosed to the plaintiff in her retail installment
11   contract.  Plaintiff alleges in the second amended complaint
12   that Precision failed to disclose certain material facts,
13   which I will go over in a moment or two, and employed
14   deceptive and unconscionable commercial practices in
15   violation of the Consumer Fraud Act.
16         This is a motion under Brill under Rule 446(2).
17   According to Brill, "A determination whether there exists a
18   general issue of material fact that precludes summary
19   judgment requires the motion judge to consider whether the
20   competent evidential materials presented when viewed in the
21   light most favorable to the non-moving party are sufficient
22   to permit a rational fact finder to resolve the alleged
23   disputed issue in favor of the non-moving party.  The import
24   of our holding is that when the evidence is so one-sided
25   that one party must prevail

Ruling                                                                    6

1  "judgment should not hesitate to grant summary judgment."
2         There really are very few facts that are disputed
3  in this case.  Count one of plaintiff's complaint alleges
4  that Precision made affirmative misrepresentation in its
5  retail installment contracts regarding payments made to
6  third parties.  Precision argues that no affirmative
7  misrepresentation was made as to the retention of a profit
8  or commission from the sale of either the extended warranty
9  or the credit insurance policy.  Precision argues that under
10 the Consumer Fraud Act, the alleged unlawful practice, if
11 anything, amount to a knowing omission.  Precision states
12 that this requires proof that Precision acted knowingly and
13 with the intent that the omission be relied upon.  Precision
14 also states that plaintiff is unable to demonstrate an
15 ascertainable loss as required under NJSA 56:8-19.
16 Precision argues that plaintiff has not specified what
17 damages she has sustained as a result of Precision's alleged
18 failure to represent the amount retained on the sale of the
19 extended warranty and service contract.
20        Plaintiff argues a number of different positions.
21 First, that under the Truth in Lending Act it must be
22 disclosed that the dealer has retained a portion of the
23 service contract and the case of Gibson v. Watson Chevrolet
24 is cited at 112 F3d 283, a 7th Circuit 1997 case which I
25 have referred to in at least one prior decision.  Plaintiff

---

Ruling                                                                    7

1  states that strict liability should attach because of
2  Precision's failure to represent what was retained on the
3  service and warranty contract.  Plaintiff states that
4  Precision violated the TILA and New Jersey recognizes that a
5  violation of an other consumer protection law may constitute
6  a per se violation of the Consumer Fraud Act, citing
7  Lamellado v. Beneficial, 289 NJ Super 489, a 1996 Appellate
8  Division case which was affirmed by the Supreme Court of New
9  Jersey at 150 NJ 255.  Precision -- excuse me -- plaintiff
10 argues that Precision by not disclosing that it retained a
11 portion of the amount charged to plaintiff on sales of
12 credit insurance and service contracts misrepresented
13 amounts paid to third parties on the retail installment
14 contract.
15        The first question I will address is whether
16 Precision's failure to disclose the amount it retained on
17 the service and warranty contracts is an affirmative
18 misrepresentation or a knowing omission.  There is no
19 dispute that Precision did retain an amount on both the
20 service and warranty contracts.  There is no dispute that it
21 did not disclose that fact to the consumer.  Cox v. Sears &
22 Roebuck, 138 NJ 2 (1994) states that, "To violate the
23 Consumer Fraud Act a person must commit an unlawful practice
24 as defined in the legislation.  Unlawful Practices fall
25 affirmative acts, know-

Ruling

8

1   violations." So there are really three categories under the
2   Consumer Fraud Act. And they cite to 56:8-2.
3        According to Gennari v. Weichert Realtors, 148 NJ
4   582 (1997), "One who makes an affirmative misrepresentation
5   is liable even without knowledge of the falsity of the
6   misrepresentation, without negligence and without the intent
7   to deceive." Specifically NJSA 56:8-2 provides that, "The
8   act, use or employment by any person of any unconscionable
9   commercial practice, deception, fraud, false pretense, false
10  promise, misrepresentation or the knowing concealment,
11  suppression or omission of any material fact with the intent
12  that others rely upon such concealment, suppression or
13  omission of any material fact with the intent that others
14  rely upon such concealment, suppression or omission is a
15  violation of the act."
16       Plaintiff asserts that Precision violated this Act
17  by misrepresenting that Precision was keeping certain sums
18  which were stated to be paid to others including payments
19  for credit insurance as well as the service contract.
20       The first category of the two that I will talk about
21  consists of the affirmative acts and then I will deal with the
22  omission of material facts. Other cases that I will be
23  citing are Chattin v. Cape May Green, 243 NJ Super 590,
24  Appellate Division (1990) affirmed O.B. 124 NJ 520 and
25  Fenwick v. Kay American Jeep, 72 NJ 372 (1977). Both of

Ruling

9

1   these cases stand for a number of different propositions,
2   but specifically the fact that affirmative acts do not
3   require a showing of intent.
4        Our Supreme Court in Chattin has held that certain
5   -- certain representations can either be an affirmative
6   misrepresentation or a knowing omission, and that may create
7   a jury question on that issue. In Chattin homeowners sued
8   their builder for representing through a brochure as well as
9   orally that the windows to be installed were insulated. In
10  fact, the double pane of glass had substantial insulation
11  qualities, but the frame had none. The builder stated that
12  pursuant to industry standard, windows were insulated when
13  there was a double pane and an uninsulated frame. To the
14  contrary the homeowners believed that the entire window
15  would be insulated based upon the builder's representations.
16  The court concluded that the builder's alleged consumer
17  fraud may be viewed under those circumstances as either an
18  affirmative act or a knowing omission.
19       I find that Precision's failure to disclose the
20  amount retained on the service and warranty contracts do
21  amount to affirmative misrepresentations. When Precision
22  said in the retail installment contract that $523 was paid
23  to a credit insurance company, that statement was not true.
24  And at the time it was made, the defendant knew it was not
25  true. There is no dispute.

08-30-99   11:44am   From-McELROY,DEUTSCH & MULVANEY                         T-767   P.14/24   F-603

## Ruling                                                                    10

1   opinion, an affirmative misrepresentations.  The same
2   analysis applies to the statement concerning the service
3   contract.  Defendant knew when it said that $995 was paid to
4   the service contract that it was not.  A portion of it was
5   paid to or for the service contract, while a portion was
6   kept by the defendant.  Again, that, in my opinion, is an
7   affirmative misrepresentation.
8          However, even if I were to characterize the
9   language as a knowing omission, again there is no dispute.
10  There is no dispute that defendant knew when it made the
11  statement that it was not true.  The only conclusion that a
12  fact finder could draw is that the omission was knowingly
13  made with the intent that the consumer rely upon it.  This
14  is not a case where there are facts in dispute as to whether
15  or not defendant knew that it was keep -- that is was paying
16  all of the $995 and the $523 to a third party.  It is
17  undisputed that the defendant when it made this
18  representation knew that it was not so.  Defendant says that
19  it's the practice in the industry to do this, that they've
20  always done this, but that doesn't detract from the fact
21  that they knew what they were saying was not true.
22         In the Watson case which I previously mentioned,
23  the 7th Circuit concluded that automobile purchasers would
24  state a claim under the TILA by alleging that dealers fail
25  to disclose that they retain portions of the listed costs of

## Ruling                                                                    11

1   the warranty contract.  That's all fours with what we're
2   talking about.  With regard to the dealer's requirement to
3   disclose such portions, the chief judge, Judge Posner, put
4   it as follows, and I've mentioned this quote before and I
5   believe it's right on point.
6          The defendants contend in interpreting the
7   language of the regulation, which I dealt with in the
8   declaratory judgment action, that the word may or could show
9   that they can if they want to disclose that they are
10  retaining some of the fee, but they are not required to do
11  so.  In other words, they read the commentary to say, "You
12  may conceal the fact that you are pocketing part of the fee
13  that is ostensibly for a third party.  But if you are a
14  commercial saint and would prefer to tell the truth, you may
15  do that too."  That's Gibson at 285 and 286.
16         I agree with Judge Posner's conclusion that such an
17  interpretation would be preposterous.  It would certainly be
18  bad public policy.  I'm in agreement that a sensible reading
19  of the commentary, which I'm not going to go through at
20  length at this time, authorizes the dealer to disclose
21  either the fact that the dealer retained a portion of the
22  charge, or, if the dealer wants to, the exact amount of the
23  charge, but it does not authorize the dealer to fail to
24  disclose that he retained a portion of the amount
25  listed as an amount

08-30-99   11:44am   From-McELROY, DEUTSCH & MULVANEY                          T-747   P.15/24   F-622

### Ruling                                                                    12

1   reasons for such an interpretation.  If a consumer is aware
2   that a dealer is keeping a portion of the amount listed as
3   paid to others, a sin this case with a warranty or even with
4   the amount financed, the consumer would have an opportunity
5   theoretically to go to other dealers to compare prices.
6   Moreover, with the financing the consumer could arrange for
7   its own financing at a cheaper price and not have to go
8   through the dealer if it knew the dealer was keeping a
9   portion of the interest.
10          The protection of the consumer's interest is the
11  cornerstone of the Consumer Fraud Act.  I find that
12  Precision violated the Consumer Fraud Act by not disclosing
13  the amount retained.  There is that third category of
14  unlawful acts under the Consumer Fraud Act which consists of
15  violations of specific regulations promulgated under the Act
16  and as well as other acts which affect consumers.  In those
17  instances intent's not an element of the unlawful practice
18  and the regulations do impose strict liability for those
19  violations.  That's _Cox_ at pages 18 and 19, citing _Fenwick_
20  at 376.  According to _Cox_ the parties subject to the
21  regulations are assumed to be familiar with them so that any
22  violation of the regulations regardless of intent or moral
23  culpability constitutes a violation of the New Jersey
24  Consumer Fraud Act.  Thus a violation of the Truth in
25  Lending Act itself would be a violation of the Consumer

### Ruling                                                                    13

1   Fraud Act.
2          Another case, _Delaney v. Garden State Auto Parts_,
3   318 NJ Super 15 Appellate Division 1998.  The Appellate
4   Division concluded that defendant violated the consumer
5   fraud act when certain predelivery services were not
6   disclosed to the consumer or present in the final sales
7   agreement.  The Court noted that, "In response to observed
8   abuses in automobile sales practices where consumers were
9   frequently induced to expend additional monies for services
10  that were either unnecessary or not being performed the Act
11  was broadened through regulation to protect the automotive
12  consumer."  That's _Delaney_ at page 20.  Those specific
13  regulations, NJAC 13:45A-26(b).2 declare it unlawful under
14  the Act for an automobile dealer to "accept, charge or
15  obtain from a consumer monies or any other thing of value in
16  exchange for the performance of predelivery services without
17  first itemizing the actual predelivery service which is
18  being performed and setting forth in writing on the sales
19  document the price for each specific predelivery service."
20  Predelivery service is defined as "any monies or other thing
21  of value which an automotive dealer accepts from a consumer
22  in exchange for the performance of predelivery services upon
23  a motor vehicle and includes but is not limited to items
24  which are often described or labeled as dealer preparation
25  vehicle preparation, predelivery

Ruling                                                    14

1   delivery or any other term of similar import." And that's
2   NJAC 13:45A-26(b).1. The Court in Delaney stated that the
3   service items including rust proofing, undercoating, paint
4   sealer and fabric guard were to be installed in connection
5   with the power train warranty which was covered by the
6   vehicle service contract. Justice Newman concluded that the
7   absence of this itemization was what consumer fraud
8   legislation was meant to protect.
9        A fair reading of 13:45A-26(b).1 can include
10  monies retained as in this case, to include the warranties
11  and the credit life insurance as well as the interest rate.
12  Those are all predelivery services under a broad
13  interpretation of the regulation. As I just indicated, such
14  services are monies or other things of value which a dealer
15  accepts from a consumer in exchange for predelivery
16  services. In this instance the warranty and service
17  contract were sold to the plaintiff. Certainly they were
18  predelivery in nature. It's not disputed that Precision
19  received certain monies for these services, yet Precision
20  did not tell the consumer that they were keeping certain
21  portions of the monies let alone tell them how much they
22  were keeping. In furtherance with the intent to protect
23  consumers and giving consumers the opportunity to go to
24  other dealers to compare prices I'm satisfied that the
25  retention of the monies without itemizing and not disclosing

Ruling                                                    15

1   to plaintiffs amounts is a violation of the aforementioned
2   regulation, and thus would constitute a violation of the
3   Consumer Fraud Act. Therefore under the — of
4   misrepresentation, the knowing omission or the violation of
5   legislation under one or all three I find that the defendant
6   has violated the Act.
7        The next issue is whether the plaintiff
8   experienced an ascertainable loss. To bring an action under
9   the Consumer Fraud Act an ascertainable loss must be
10  demonstrated under 56:8-19. In Miller v. American Family
11  Publishing, 284 NJ Super 67, a 1995 Chancery Division case,
12  the plaintiffs, who were magazine subscribers, relied upon
13  misleading sales material when they purchased magazine
14  subscriptions. They paid for the subscriptions because
15  "They were told and believed that for their money they would
16  receive two things, first, a magazine subscription, and
17  second, the ability to remain a part of defendant's
18  sweepstakes." An ascertainable loss was demonstrated as
19  plaintiffs received something less than and different from
20  what they reasonably expected in view of the defendant's
21  misrepresentations.
22        According to Cox even without an ascertainable
23  loss a consumer fraud plaintiff can recover counsel fees and
24  costs if plaintiff can prove that the

Ruling                                                                16

1   plaintiff asserts that as a result of Precision's violations
2   of the Consumer Fraud Act by specifically failing to
3   disclose that it retained portions of the amounts allegedly
4   paid to others she was caused ascertainable loss by not
5   having the opportunity to compare prices with those of other
6   dealers. As a result plaintiff alleges that the amount
7   retained by Precision is the amount of damage she incurred
8   since it was not disclosed. That's a fair argument.
9         In Delaney the Court found that additional cost
10  for items not disclosed was a reasonable basis to establish
11  an ascertainable loss. And the argument is similar to that
12  made in Delaney. However I do not believe that I can find a
13  specific ascertainable loss as a matter law. I'm satisfied
14  that it will be up to the Jury to determine whether the
15  plaintiffs sustained an ascertainable loss, and if so, what
16  that was.
17        According to Green v. Continental Rentals, 292 NJ
18  Super 241, a 1994 Law Division case, under the Consumer
19  Fraud Act conduct that is not in good faith, honest in fact
20  and observant of fair dealing is unconscionable. I find
21  that the statements made in the retail installment contract
22  as mentioned above were false, known to be false, and thus
23  constitute unconscionable commercial practices.
24        Count two of the complaint alleges that Precision
25  violated the Consumer Fraud Act by not disclosing its

Ruling                                                                17

1   retention of monies in connection with the purchase of
2   service contracts and credit insurance on behalf of the
3   plaintiff. Precision concedes that the profit or
4   commissions made for the sale of the extended warranty and
5   credit insurance were not disclosed. The issue is whether
6   this is an unconscionable commercial practice as defined by
7   the Consumer Fraud Act. The analysis under count two is
8   exactly the same as the analysis under count one, and for
9   the same reasons I make the same findings, that the Consumer
10  Fraud Act was in fact violated but the ascertainable loss
11  remains a Jury question.
12        Count three. Plaintiff alleges in count three
13  that Precision violated the Consumer Fraud Act by charging
14  unconscionably high commission rates in connection with its
15  purchase of service and warranty contracts. Precision
16  argues that it realized a $638.50 profit off the sale in
17  question. The cost of the warranty was not $995 and the
18  cost of the credit insurance was $523.33. Precision asserts
19  that the warranty provided to plaintiff was not profitable
20  to the dealership, in particular that the costs associated
21  with the warranty often exceed the profit realized from the
22  sale of the warranty. And as for the credit insurance it is
23  alleged by Precision that plaintiff's expert did not testify
24  that the commission retained was unconscionable.
25        Plaintiff asserts that

## Ruling                                                              18

1  overcharged its customers for credit insurance and service
2  contracts and commission rates on the sales were in fact
3  unconscionably excessive.  Specifically it is alleged that
4  Precision made between a 40 and 50 percent commission on the
5  sale of credit insurance and the service contract.
6  Plaintiff maintains that the price charged for products was
7  grossly excessive in relation to the seller's business costs
8  and did not match the value of the products.    Plaintiff's
9  expert, Mr. Stivers, testified, "Question:  When we're
10  talking about the actual profit regardless of where it goes,
11  if that profit margin is approved by the government in your
12  opinion can that be unconscionable?"
13          "Answer:  If it is represented as money going to
14  the insurance company that's not going there, yes."
15          "Question:  You believe putting aside where the
16  money went the amount of profit in this case on the single
17  disability insurance policy was unconscionable?"
18          "Answer:  Yes, based on the false designation of
19  credit insurance premium stated on the installment
20  contract."
21          That's his deposition at pages 78 through 80.
22          This is in dispute.  Precision states that the
23  amount retained, including with the cost, does not return a
24  profit and is not unconscionable.  What we have here is a
25  garden variety jury question.  I cannot as a matter of

## Ruling                                                              19

1  summary judgment find as a matter of law that one side is
2  entitled to prevail.  That creates a jury question and
3  precludes summary judgment on that count.
4          Count five.  Count five of the complaint states
5  that Precision violated the Consumer Fraud Act by routinely
6  packing its form retail installment contracts with
7  unnecessary excessively priced credit insurance and service
8  contracts.  Precision argues that Plaintiff testified that
9  both the credit insurance as well as the extended warranty
10  package were of a benefit to her.  As to the credit
11  insurance, plaintiff stated that it was a perfect package
12  for her and she felt safe knowing that he purchased it.  In
13  fact it's really not disputed that plaintiff did benefit
14  from the insurance.  She became disabled and the insurance
15  company paid her monthly payments for the car.  Plaintiff
16  maintains, however that the warranty was necessary.  Plaintiff
17  maintains, however that regardless of the fact that she
18  retained a benefit the price charged for the service and
19  warranty contracts were excessive.
20          I'm satisfied that there is no factual dispute
21  that the plaintiff retained a benefit as a result of
22  purchasing these items, but there does exist a jury question
23  as to whether or not the items were excessively priced.  Mr.
24  Stivers that the amounts charged were unconscionable and
25  that the price was ex...

Ruling                                                    20

1    not disclosed to plaintiff.  For these reasons, again, a
2    jury question exists and summary judgment is denied.
3              Count six.  Cont six of the complaint alleges that
4    Precision violated the Consumer Fraud Act when arranging
5    financing for its consumers charging unconscionably inflated
6    interest or finance charges and misrepresenting and/or
7    concealing additional profit realized and/or kickbacks given
8    and received for such practices.  My reading of count six
9    presents two issues, one, whether the rate charged was
10   unconscionable, and two, whether the failure to disclose
11   that the dealer was keeping a portion of the interest charge
12   violated the Consumer Fraud Act, kind of a repetition of
13   counts one and two.
14             Let me go over briefly the financing arrangement.
15   Precision entered into an agreement with Callow Hill prior
16   to the plaintiff's final purchase whereby Callow Hill
17   accepted an assignment of financing deals from Precision.
18   This was a general agreement between Precision Callow Hill,
19   which is no longer a party to this case.  In that agreement
20   Precision would receive a two percent commission -- does
21   not -- Precision does not disclose this two percent
22   commission from Callow Hill in its retail installment
23   contract or any other document that I am aware of.
24   Basically Precision argues that it has no duty to disclose.
25   In particular, Precision maintains that there is no law,

Ruling                                                    21

1    state or federal, that requires an automobile dealer to
2    disclose the yield spread arrangement, that's what this two
3    percent commission is being referred to, that it has with a
4    lending institution.  In fact, Precision argues that several
5    courts have held that the difference between the cash price
6    of the contract and the price at which the contract is sold
7    is not required to be disclosed, citing Ballentine v. Union
8    Mortgage Company, 1994 West Law 34256, Northern District of
9    Illinois.
10             In addition, Precision's expert, Gene March,
11   opined that, "No law requires that a car dealer disclose to
12   a buyer how the dealer's spread, being the difference
13   between wholesale and resale, will be disbursed.  Similarly
14   absent some requirement mandated by state or federal law, no
15   lender or merchant should be required to disclose how the
16   profit or loan interest is to be shared if the retail rate
17   is fully disclosed to the consumer."
18             Precision also relies on the Alabama Supreme Court
19   case in the matter of Ex Parte Ford Motor Credit Co., 717
20   S2d 781, a 1997 Alabama case whereby the court held that,
21   "In the absence of a special confidential relationship, the
22   general creditor beneficiary relationship does not impose a
23   fiduciary duty requiring the disclosure of a prior
24   commission agreement between creditors."  Precis-
25   thereby...

Ruling                                    22

1   purchase at an interest rate of 18 percent, that never was
2   there an understanding by the parties that a special trust
3   or confidence had been reposed in the creditor.  Precision
4   states that the allegations in count six amount to a knowing
5   omission and further argues that under the CFA therefore the
6   plaintiff must prove that defendant acted knowingly with the
7   intent that another rely upon that concealment or
8   suppression.
9            In response to the allegations with regard to the
10  insurance, the plaintiff asserts that Precision
11  misrepresented the nature of its role in financing and
12  misrepresented who imposes and collects the interest
13  charges.  Plaintiff maintains that the interest rate of 18
14  percent does not reflect what is actually charged by the
15  lender.  It is plaintiff's position that by misrepresenting
16  the destination of the interest Precision prevents the
17  negotiation over the price of the loan.  Plaintiff argues
18  that disclosure of the withheld yield spread is consistent
19  with regulations promulgated pursuant to the CFA,
20  specifically pointing to NJAC 13:45A-26B.2.
21           In addition, plaintiff relies upon Atkinson v.
22  Halpern Ford Mercury, Inc., 191 West Law 17177, Tennessee
23  Court of Appeals, where the court affirmed a jury finding
24  that the failure to disclose the yield spread violated the
25  Tennessee Consumer Protection Act.

Ruling                                    23

1            I am satisfied that I cannot as a matter of law
2   decide whether Precision charged inflated interest rates,
3   but I do find primarily for the some reasons that I just set
4   forth that the failure to disclose that the dealer was
5   keeping a portion of the interest charge was in fact an
6   affirmative misrepresentation and violated the Consumer
7   Fraud Act.  Precision's expert, Mr. March, opined that, "No
8   law requires that a dealer disclose to a buyer how the
9   dealer's spread will be disbursed."  I'm satisfied that that
10  is his opinion, but that opinion is inconsistent with the
11  opinions of the 7th Circuit in Gibson, the Tennessee Court
12  of Appeals in Atkinson as well as the regulations under NJAC
13  13:45A-26B.2.
14           The facts in Atkinson are quite similar to those
15  in this case.  The Court concluded there that it was proper
16  for a jury to base a finding of unfair deceptive acts and
17  practices based upon the dealer keeping 2.5 percent of the
18  16.5 annual percentage rate financing.  As in this case, the
19  plaintiff was led to believe in the contract that the
20  financing company required a specific percentage.  In this
21  case, the plaintiff was led to believe that the finance
22  company required 18 percent.  It was not disclosed that
23  Precision kept two percent.  As in the Tennessee case
24  therefore there's a violation of the Act.  We...

# EXHIBIT "L"

*Judge's corrected copy*

Re: Abrams v Bob Ciasulli-Mack Pontiac
    Docket No. L-812-95

1) Did you find by a preponderance of the evidence that the defendant committed any unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation with respect to any of the following claims of plaintiff:

(a) that the vehicle was repaired prior to its sale and the vehicle was represented as new?

YES ✓_____    NO_____

(b) that the Retail Installment entered into on August 24, 1994 (P-8) was to be exactly the same as the one entered into on August 20, 1994 (P-5) except as to the reduction in the price of the car to $16,000.00?

YES ✓_____    NO_____

(c) that the interest rate on her Retail Installment Contract was 12.5% when the Bank's interest rate to the dealership was 7.50% (P-24)?

YES ✓_____    NO_____

(d) to charge her $989.00 for an extended service contract when the defendant's cost for that contract is $298.00 (P-12)?

YES_____    NO_____

(e) to charge her $1,331.00 for rustproofing, undercoating and exterior treatment (P-9) when the defendant's cost for those products, including application, is $182.00?

YES_____    NO_____

(f) that the hood was switched on her vehicle?

YES ✓_____    NO_____

If you answered yes to any of the foregoing questions proceed to question 2. If you answered no, proceed to question 4.

2) Did plaintiff suffer any ascertainable loss of money as a direct result of the consumer fraud violations?

YES ✓_____    NO_____

If you answered yes, proceed to question 3. If you answered no, proceed to question 4.



JOINT
EXHIBIT
J1- EVID
5-7-96

3) Please state the amount of ascertainable loss suffered by plaintiff for each claim referred to in question 1.

(a) $ _____ no proofs of ascertainable loss as to this item.

(b) $ _____ no proofs of ascertainable loss as to this item.

(c) $ 679.20 ($679.20 maximum)

(d) $ 400.00 ($691.00 maximum)

(e) $ 1,149.00 ($1,149.00 maximum)

(f) $ _____ no proofs of ascertainable loss as to this item.

4) Do you find from a preponderance of the evidence that defendant knowingly concealed, suppressed or omitted any material fact with intent that plaintiff rely upon same with respect to any of the following claims by plaintiff:

(a) that the vehicle was repaired by defendant prior to its ale to her and this repair was not disclosed to plaintiff at the time of purchase?

YES____✓____ NO_____

(b) that the vehicle had an "acid rain" defect which defect was not disclosed to plaintiff at the time of purchase?

YES____✓____ NO_____

(c) that the hood on the vehicle was switched?

YES____✓____ NO_____

(d) concerning the failure to disclose to her that the bank's interest rate is 7.50% and her interest rate is 12.5%?

YES____✓____ NO_____

If you answered yes to any of the claims set forth in this question proceed to question 5. If you answered no as to all claims proceed to question 7.

5) Did plaintiff suffer any ascertainable loss of money as a direct result of the consumer fraud violations(s)?

YES____✓____ NO_____

If you answered yes, proceed to question 6. If you answered no, proceed to question 7.

2

6) Please state the amount of ascertainable loss suffered by plaintiff for each claim referred to in question 4:

(a) $ _____ no ascertainable loss

(b) $ _____ no ascertainable loss

(c) $ _____ no ascertainable loss

(d) $ 679.20 (maximum of $679.20)

If you find that plaintiff has proven a claim for "consumer fraud", you should know that the court will treble (3 times) the damages you have found in question 3 and question 6 and will award counsel fees to plaintiff's attorney as well.

### LEGAL FRAUD

7) Do you find from clear and convincing evidence that defendant committed legal fraud upon plaintiff?

YES ✓ NO _____

If you answered yes, proceed to question 8. If you answered no, proceed to question 10.

8) Did plaintiff suffer damages as a direct result of the fraud?

YES ✓ NO _____

If you answered yes, proceed to question 9. If you answered no, proceed to question 10.

9) State the amount of monetary damages suffered by plaintiff.

$ 2228.20

10) Do you find from clear and convincing evidence that defendant committed equitable fraud upon plaintiff? (Remedy fee is rescission!)

YES ✓ NO _____

Answer this question only if you have answered yes to question 7 or question 10. Else proceed to question 12.

11) Do you find this is an "exceptional case" and that defendant should be punished by an award of punitive damages?

YES ✓ NO _____

3

12) Do you find from a preponderance of the evidence that the vehicle did not conform (that is to say it was defective); that the nonconformity substantially impaired the value of the goods to the plaintiff and that either plaintiff knew of the nonconformity when she accepted the vehicle and she acted on the reasonable assumption that the nonconformity would be cured but it was not seasonably cured or plaintiff did not know of the nonconformity when she accepted and her acceptance was reasonably induced either by the difficulty of discovery the non-conformity before acceptance or by the defendant's assurance that the non-conformity would be cured?

YES____✓____ NO_____

If you answered yes to question 12 proceed to question 13. If you answered no please stop here.

13) Do you find that the buyer revoked her acceptance within a reasonable time of discovering the defect?

YES____✓____ NO_____

(If you find that plaintiff revoked her "acceptance" of the contract "within a reasonable time", the Court, as a remedy, can cancel the contract, have all money paid by the plaintiff returned to her. The car is given back to the defendant and defendant must assume the balance of the  FINANCING )

# EXHIBIT "M"

reover, Ms. Cannon's "feeling" that the ranty was too expensive is not based comparison shopping, or any knowledge comparative pricing, and there is no cation in the record that she either w or (with disclosure of the upcharge) ld have known that a less expensive rnative was available.

a sum, plaintiff's own testimony contras any suggestion that she relied to her iment on Cherry Hill's incomplete disclosure. Mere speculation as to what Ms. non *might* have done does not create a ble issue that she relied to her detriit on the incomplete warranty disclose and suffered quantifiable damages eby. Plaintiff thus has failed her burof marshaling facts and reasonable rences from which a jury could find : (1) she *would* have sought a cheaper ranty; and: (2) that she *would* have eeded in such a quest. The Court s that plaintiff has failed to satisfy the d and fourth prongs of the *Peters* test, concludes that plaintiff has failed to te a triable issue that she suffered ial damages on account of Cherry Hill's A violation. Accordingly, the Court enter summary judgment against otiff's claims for actual damages under A.

] Although plaintiff is unable to e actual damages under TILA, she proved entitlement to statutory dam- arising from this same TILA violation uant to 15 U.S.C. § 1640(a)(2)(A)(for ridual claim) and 1640(a)(2)(B)(for claim). Plaintiff in this TILA case d not prove that [s]he suffered actual etary damages in order to recover

---

is to plaintiff's individual claim, statutory mages of twice the amount of any finance arge in connection with the transaction are ailable under 15 U.S.C. § 1640(a)(2)(A)(i), ora: As noted above, statutory damages der TILA for class action suits arising out

statutory damages and attorney's fees," *Purtle v. Eldridge Auto Sales, Inc.,* 91 F.3d 797, 800 (6th Cir.1996), *cert. denied,* 520 U.S. 1252, 117 S.Ct. 2411, 138 L.Ed.2d 177 (1997).

Plaintiff's TILA claim will be set for trial to determine the proper measure of individual and class-based statutory damages to be awarded.[3] It will be especially appropriate to award statutory damages where, as in plaintiff's case, actual quantifiable damages are not susceptible of proof. *See, e.g., Gambardella v. G. Fox & Co.,* 716 F.2d 104 (2d Cir.1983); *Brown v. Marquette Sav. & Loan Ass'n,* 686 F.2d 608 (7th Cir.1982); *Davis v. Werne,* 673 F.2d 866 (5th Cir.1982); *Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641 (8th Cir.1980); *Postow v. OBA Federal Sav. & Loan Ass'n,* 627 F.2d 1370(D.C.Cir.1980); *Hinkle v. Rock. Springs Nat. Bank,* 538 F.2d 295 (10th Cir.1976).

## C. NJCFA Claim

Plaintiff's Count Two alleges that Cherry Hill's conduct violated the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1 to 8-97 ("NJCFA"). The parties have cross-moved for summary judgment on this Count as well.

NJCFA provides a private cause of action in favor of:

Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act.... In any action under this section the court shall, in addition to any other appropriate legal

of the same TILA violation have a ceiling of the lesser of $500,000 or 1% of the defendant's net worth, 15 U.S.C. § 1640(a)(2)(B). If the parties are unable to agree to the statutory damages for this class, the matter will be tried shortly.

---

or equitable relief, award thre ages sustained by any person In all actions under this court shall also award reason neys' fees, filing fees and costs of suit.

N.J.S.A. 56:8-19. The Act pro *alia,* that it shall be an unlaw for an automobile dealer to " close, prior to sale, the exi terms of any written warran contract, or repair insurance the dealer in connection with t used motor vehicle." N.J.S.A.

[5] Cherry Hill's failure disclose its profits on the MB indicating the entire amount Interstate, is a facial violatio 56:8-67. The Court finds that Toyota is liable to plaintiff N.J.S.A. 56:8-67(g) by failing the existence of a material service contract, namely, tha cost of the MBP to Cherry substantially lesser amount tha that the contract stated was b Interstate on plaintiff's beha difference in price going to Ch profit upon the sale of the serv Instead, Cherry Hill falsely di the entire amount charged for ed service contract was being a third party—Interstate—wh substantial amount was retain ry Hill as a commission and p undisclosed upcharge. Cherr ure to disclose the true price contract—the amount actually Interstate—is as a matter of tion of the NJCFA, N.J.S.A. failure to disclose a material service contract, namely, its a

4. Plaintiff asserts that the prop damages under this theory is charge—the amount of the M

IES

s and attorney's fees,"
e Auto Sales, Inc., 91
Cir.1996), cert. denied,
S.Ct. 2411, 138 L.Ed.2d

claim will be set for
the proper measure of
s-based statutory dam-
.? It will be especially
rd statutory damages
f's case, actual quantifi-
ot susceptible of proof.
lla v. G. Fox & Co., 716
983); Brown v. Mar-
n. Ass'n, 686 F.2d 608
is v. Werne, 673 F.2d
Dryden v. Lou Budke's
., 630 F.2d 641 (8th
. OBA Federal Sav. &
2d 1370(D.C.Cir.1980);
rings Nat. Bank, 538
76).

wo alleges that Cher-
lated the New Jersey
t, N.J.S.A. §§ 56:8-1
The parties have
mmary judgment on

private cause of ac-

suffers any ascertain-
s or property, real or
lt of the use or em-
ther person of any
ctice declared unlaw-
.... In any action
the court shall, in
er appropriate legal

iation have a ceiling of
or 1% of the defen-
U.S.C. § 1640(a)(2)(B).
le to agree to the statu-
class, the matter will be

or equitable relief, award threefold dam-
ages sustained by any person in interest.
In all actions under this section the
court shall also award reasonable attor-
neys' fees, filing fees and reasonable
costs of suit.

N.J.S.A. 56:8-19. The Act provides, inter
alia, that it shall be an unlawful practice
for an automobile dealer to "fail to dis-
close, prior to sale, the existence and
terms of any written warranty, service
contract, or repair insurance offered by
the dealer in connection with the sale of a
used motor vehicle." N.J.S.A. 56:8-67.

[5] Cherry Hill's failure to correctly
disclose its profits on the MBP, by instead
indicating the entire amount was paid to
Interstate, is a facial violation of section
56:8-67. The Court finds that Cherry Hill
Toyota is liable to plaintiff for violating
N.J.S.A. 56:8-67(g) by failing to disclose
the existence of a material term of the
service contract, namely, that the actual
cost of the MBP to Cherry Hill was a
substantially lesser amount than the figure
that the contract stated was being paid to
Interstate on plaintiff's behalf, with the
difference in price going to Cherry Hill as
profit upon the sale of the service contract.
Instead, Cherry Hill falsely disclosed that
the entire amount charged for the extend-
ed service contract was being paid over to
a third party—Interstate—when in fact a
substantial amount was retained by Cher-
ry Hill as a commission and profit in the
undisclosed upcharge. Cherry Hill's fail-
ure to disclose the true price of the service
contract—the amount actually remitted to
Interstate—is as a matter of law a viola-
tion of the NJCFA, N.J.S.A. 56:8-67, for
failure to disclose a material term of the
service contract, namely, its actual price.

However, simply showing a violation of
NJCFA is not enough to entitle a plaintiff
to damages under that Act. It is important
to note that the NJCFA does not provide
for recovery of statutory damages where a
plaintiff cannot show actual harm. In
TILA, the statutory damages provision al-
lows damages even without a showing of
loss caused by the illegal conduct. See 15
U.S.C. § 1640(a)(2)(A). Unlike TILA,
however, NJCFA requires that, in order to
recover any damages, a plaintiff must
show that she has suffered an ascertain-
able loss as a result of the defendant's
unlawful commercial practice. See
N.J.S.A. 56:8-19.

The Court has already determined that
plaintiff has failed to create a triable issue
that she relied to her detriment on Cherry
Hill's incomplete warranty disclosure. Be-
cause this determination applies with equal
force to plaintiff's NJCFA claim, the ques-
tion becomes whether plaintiff may estab-
lish that she suffered an "ascertainable
loss" despite having failed to show detri-
mental reliance.

Plaintiff argues that "ascertainable loss"
under NJCFA is a broader concept that
"actual damages" under TILA. (See Pl.
Opp'n Br. at 11-12.) Whereas the statuto-
ry damages provision allows TILA to deter
wrongful conduct even without a showing
detrimental reliance, plaintiff argues that
the NJCFA would lose its deterrent effect
if merchants had no risk of liability unless
the consumer could establish actual harm.
As the Court understands plaintiff's argu-
ment, all plaintiff must do in order to
recover damages under the NJCFA is
show that there was an offensive commer-
cial practice, that the plaintiff suffered a
loss, and that there is a nexus between the
two.[4]

---

4. Plaintiff asserts that the proper measure of
damages under this theory is the entire up-
charge—the amount of the MBP price re-

tained by defendant. Plaintiff argues that she
and each class member agreed to pay the
third-party's price for the MBP, and in fact

FILED

AUG 17 2017

MARK P. CIARROCCA
J.S.C.

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | |
|---|---|
| JAYANN A. LOCKE | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| Plaintiff(s), | : UNION COUNTY |
| | : |
| | : DOCKET NO. UNN-L-2309-17 |
| v. | : |
| | : |
| DELUXE AUTO SALES, CAPITAL | : Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : |
| PRESTIGE MERCEDES BENZ, | : **ORDER TO SHOW CAUSE** |
| K & E SERVICE CENTER | : |
| | : |
| Defendant(s) | : |

RECEIVED

AUG 28 2017

LEGAL DEPT
RICHMOND VA

This matter having been opened to the Court by the Lueddeke Law Firm, attorney

for the plaintiff, Jayanne A. Locke and Ronald L. Lueddeke, Esq. appearing; and the Court

having reviewed the Verified Complaint, Certification of Jayann A. Locke, Brief in Support of

Order to Show Cause, Order for Replevin and Order to Show Cause submitted herewith;

and for good cause shown;

IT IS on this 17day of *Avg 17*, 2017

**ORDERED** that on this   *15*   day of *September* 2017

at *9:00 a.m.* or as soon thereafter as counsel may be heard, the defendants shall appear

before the Honorable Mark P. Ciarrocca, J.S.C., at the Union County Superior Court, Law

Division,  2 Broad Street, Elizabeth,  New Jersey and show cause why an Order should not

be entered allowing the following:

(1)     Ordering that a Writ of Replevin issue out of this Court directed to any Sheriff of the

Superior Court to attach and repossess the said 2009 Mercedes ML63 automobile; and

(2)      That defendant, Deluxe Auto Sales, located at 500 Commerce Road, Linden, County of Union, State of New Jersey turn said vehicle over to the plaintiff or the Union County Sheriff; and

(3)      That the Union County Sheriff of the Superior Court take possession of said automobile and deliver same to the plaintiff

IT IS FURTHER ORDERED:

1.      Copies of the Order to Show Cause (which serves in lieu of a summons pursuant to R. 4:52-1(b)) and the Verified Complaint with Exhibits and Brief support thereof shall be served upon the Defendants via certified mail, return receipt requested and regular mail within 5 days hereof, said service to be effected by Plaintiffs' counsel or their designee or any other manner permitted by court rule.

2.      Written opposition to the Order to Show Cause, by way of answer, memorandum of law, answering affidavit of motion and proof of service shall be filed and served so as to be received by the court and counsel no longer than $\mathcal{V}$ days before the return date.

3.      The original documents must be filed with the Clerk, Union County Superior Court, Law Division, 2 Broad Street, Elizabeth, New Jersey and a copy mailed directly to the Honorable Mark P. Ciarrocca, J.S.C., Union County Superior Court, Law Division, 2 Broad Street, Elizabeth, New Jersey 07207.

4.      You must also send a copy to the plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above.

5.      A telephone call will not protect your rights. You must file and serve your opposition (with the fee) if you want the Court to hear your opposition to the relief the plaintiff is seeking.

6.      If opposition is not received to the Order to Show Cause, the application may be decided as unopposed on the return date and relief may be granted by default

7.      Any reply submission on behalf of the application shall be filed and served so as to be received by the court and counsel no later than 7 days before the return date.

8.      No requests for adjournments _ absent such emergent circumstances _ will be considered unless made prior to 3:00 p.m. on the third day prior to the return date.

9.      A proof of mailing (with original return receipt cards when appropriate) must be submitted to the Court at least 7 days prior to the return date.

10.     If any opposing party cannot afford an attorney, said opposing party may call the Legal Service Office in the county of their residence. If they are not eligible for free legal assistance and they do not have an attorney, they may obtain a referral to an attorney by calling the Lawyer Referral Services. The telephone number for the Union County Legal Services is (908) 354-4340; the telephone number for the Lawyer Referral Services is (908) 353-4715 and the telephone number for the Union Bar Association is (908) 353-4715.

11.     The appearance of all counsel or pro se parties is required unless you are otherwise advised in advance of the return date.

Mark P. Ciarrocca, J.S.C.

RECEIVED / FILED
Superior Court of New Jersey

JUN 19 2017

CIVIL CASE MANAGEMENT
UNION COUNTY

LUEDDEKE LAW FIRM
215 MORRIS AVENUE
SPRING LAKE, NEW JERSEY 07762
ATTORNEY ID# 016781976
(732) 449-2884
ATTORNEY FOR PLAINTIFF(S)

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L- |
| v. | : | UNN-L 2309 - 17 |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | |
| K & E SERVICE CENTER | : | |
| | : | |
| Defendant(s) | : | |

## BRIEF IN SUPPORT OF ORDER TO SHOW CAUSE
## FOR ISSUANCE OF WRIT OF REPLEVIN

### LEGAL ARGUMENT

Plaintiff by way of the filing of this Order to Show Cause seeks a Writ of

Replevin for the subject vehicle.

Pertinent facts are as pled in Plaintiff's Verified Complaint

(1)     Plaintiff purchased used 2009 Mercedes ML 63 AMG from Deluxe on March 2,

2015;

(2)     The vehicle was covered by a used vehicle warranty or service contract

issued by Defendant, AmeriPlus, for which Plaintiff paid $3,650.00;

(3)     Plaintiff presented the vehicle to Defendant, Prestige Mercedes Benz,  for

service on multiple dates  The latest invoice is for $7,400.00 (Exhibit "G" to the Verified

Complaint). Additional work could bring the total to $18,000.00. The said repair order was not signed by Plaintiff and Plaintiff did not sign any repair invoice before work proceeded. Prestige still has the vehicle and will not release it unless 7,400.00 is paid.

The dealership clearly violated the Automotive Repair Regulations as alleged in the Verified Complaint at Paragraph 40. This violation renders the dealership's claim for $7,400.00 unenforceable and any garage keeper's lien void.

Plaintiff is therefore entitled to the return of her vehicle. Plaintiff is suffering hardship without the use of the vehicle as set forth in the Certification of Plaintiff. She is paying the bank (Capitol One) about $1,000 per month and is without a vehicle.

Plaintiff seeks a Writ of Replevin for the return of the vehicle.

The Plaintiff is also entitled to replevin.

4:61-1. Writ of Replevin

(a) Issuance of Writ on Notice. A writ of replevin shall issue only upon court order on motion of a party claiming the right to possession of chattels. Except as otherwise provided by paragraph (b) of this rule, the motion shall be heard on no less than three days' notice to the party in possession of the chattels, who shall file and serve any opposing affidavits or cross-motions at least one day prior to the hearing. The motion shall be granted only upon the court's finding, based on the moving papers, any opposing affidavits which may have been filed, and any testimony taken pursuant to R. 1:6-6, that there is a probability that final judgment will be rendered in favor of the movant. In lieu of ordering the issuance of the writ the court may order the party in possession of the chattels to give security for satisfaction of any judgment which may be rendered in the action, or order such other relief upon such terms as may be just in the circumstances.

The collateral must be returned if there is a high probability of success, i.e. probability that final judgment will be rendered in favor of movant. Thus if the plaintiff has met this burden she is entitled to replevin and return of the car. This is the current case. The dealership clearly violated the Automotive Repair Regulations by failing to obtain a

written repair authorization prior to the repair work being performed.  Huffmaster v. Robinson, 221 N.J. Super 315 (Law Div. 1986), Cox v. Sears, Roebuck 138 N.J. 2, 23 (1994). An Order of Replevin should issue do Plaintiff can get the vehicle back, repair and back on the road as soon as possible.

Ronald L. Lueddeke, Esq.

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | |
|---|---|
| JAYANN A. LOCKE : | SUPERIOR COURT OF NEW JERSEY |
| : | LAW DIVISION |
| Plaintiff(s), : | UNION COUNTY |
| : | |
| : | DOCKET NO. UNN-L- 2309-17 |
| v. : | |
| : | |
| DELUXE AUTO SALES, CAPITAL : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, : | |
| PRESTIGE MERCEDES BENZ, : | **CERTIFICATION OF JAYANN A. LOCKE** |
| K & E SERVICE CENTER : | |
| : | |
| Defendant(s) : | |

1.      I am the Plaintiff in the above matter and have personal knowledge of the facts herein stated.

2.      I am writing this to stress the hardship I have been going through since Prestige Mercedes came and took their loaner car without notice.

3.      I have been a customer of Prestige Mercedes since 2006 and I have been treated very poorly since they have been fixing my 2009 Mercedes ml63.

4.      Since they took the loaner car back in February 2017, I have had to hire someone to bring to and pick up my children from school, as well as after school activities five (5) days a week. I have had to take my husband's car to work because my hours are 6:30 a.m. to 6:30 p.m. in Saddle River, NJ. My husband now has to pay to provide a ride to and from work for him.

5.      I am very disappointed with Prestige. We were willing to pay the $7,400 to get out vehicle back. But, when the manager, Richard, informed me that the $7,400 would not make my car drivable, I declined to pay. In order for me to drive the car again, it may cost $18,000. According to Prestige, Richard said this with no compassion knowing that the new issue with the cam shaft came up after they put the engine back together. I explained to him that the warranty company said they are willing to fix it, if Prestige can show the documents to prove that this was an existing problem and not something that broke in the process of them working on the vehicle. I explained this to Richard and he just dismissed me and said I have to pay out of my pocket.

6.      I have been without a car for almost three (3) months and it's been hard not having a car with a family of four.  We are a very active family, and we feel so helpless against these bullies at Prestige and the warranty company that has been railroading me for months without any valid explanation.

June is our busiest month with the kids, and, so far, it has been hell, and I know it is going to get worse.  Please help a working mother of two, who just wants her car to be fixed so I can get back to my family life.

Dated: ___6-14-17___          By: _____*Jayann A. Locke*_____
                                   Jayann A. Locke

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L-2309-17 |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | **ORDER FOR REPLEVIN** |
| K & E SERVICE CENTER | : | |
| | : | |
| Defendant(s) | : | |

THIS MATTER being opened to the Court by Ronald L. Lueddeke, Esq. attorney for plaintiff, upon the application for the issuance of a Writ of Replevin against the defendant, Deluxe Auto Sales; and the Court having read and considered the Certification of the plaintiff annexed hereto, and plaintiff's Verified Complaint and it appearing from said Certification and Verified Complaint to the satisfaction of the Court, that the said defendant has no enforceable lien on the subject vehicle; and for good cause appearing;

IT IS ON this _____ day of _____, 2017

ORDERED, that a Writ of Replevin issue out of this Court directed to any Sheriff of the Superior Court to attach and repossess the said 2009 Mercedes ML63 automobile; and

IT IS FURTHER ORDERED, that defendant, Deluxe Auto Sales, located at 500 Commerce Road, Linden, County of Union, State of New Jersey turn said vehicle over to the plaintiff or the Union County Sheriff; and

IT IS FURTHER ORDERED, that the Union County Sheriff of the Superior Court take possession of said automobile and deliver same to the plaintiff; and

IT IS FURTHER ORDERED, that a copy of this Order be served upon the defendant(s) within seven (7) days of the within date.

_____

JSC

( ) opposed

( ) unopposed

**Appendix XII-B1**

| | | |
|---|---|---|
| | **CIVIL CASE INFORMATION STATEMENT (CIS)**<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed** | **FOR USE BY CLERK'S OFFICE ONLY**<br>PAYMENT TYPE: ☐ CK ☐ CG ☐ CA<br>CHG/CK NO.<br>AMOUNT:<br>OVERPAYMENT:<br>BATCH NUMBER: |



| | | |
|---|---|---|
| ATTORNEY / PRO SE NAME<br>Ronald L. Lueddeke, Esq. | TELEPHONE NUMBER<br>(732) 449-2884 | COUNTY OF VENUE<br>Union |
| FIRM NAME (if applicable)<br>Lueddeke Law Firm | | DOCKET NUMBER (when available)<br>UNN L 2309 - 17 |
| OFFICE ADDRESS<br>215 Morris Avenue<br>Spring Lake, NJ 07762 | | DOCUMENT TYPE<br>Verified Class Action Complaint<br>JURY DEMAND  ☒ YES  ☐ No |

| | |
|---|---|
| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Jayann A. Locke, Plaintiff | CAPTION<br><br>Locke v. Deluxe Auto Sales, Capital One Auto Finance, et. al. |
| CASE TYPE NUMBER<br>(See reverse side for listing)<br><br>508 | HURRICANE SANDY RELATED?<br>☐ YES  ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ Yes  ☒ No | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes  ☒ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☐ UNKNOWN |

| **THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.** |
|---|
| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |

| | |
|---|---|
| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ Yes  ☒ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS |

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☐ YES  ☐ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| | |
|---|---|
| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES  ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *Ronald Lueddeke*



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I  -  150 days' discovery**
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

**Track II  -  300 days' discovery**
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

**Track III  -  450 days' discovery**
005   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV  -  Active Case Management by Individual Judge / 450 days' discovery**
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Multicounty Litigation (Track IV)**
271   ACCUTANE/ISOTRETINOIN
274   RISPERDAL/SEROQUEL/ZYPREXA
281   BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282   FOSAMAX
285   STRYKER TRIDENT HIP IMPLANTS
286   LEVAQUIN
287   YAZ/YASMIN/OCELLA
289   REGLAN
290   POMPTON LAKES ENVIRONMENTAL LITIGATION
291   PELVIC MESH/GYNECARE
292   PELVIC MESH/BARD
293   DEPUY ASR HIP IMPLANT LITIGATION
295   ALLODERM REGENERATIVE TISSUE MATRIX
296   STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
297   MIRENA CONTRACEPTIVE DEVICE
299   OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
300   TALC-BASED BODY POWDERS
601   ASBESTOS
623   PROPECIA

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**   ☒ Putative Class Action     ☐ Title 59

LUEDDEKE LAW FIRM
215 MORRIS AVENUE
SPRING LAKE, NEW JERSEY 07762
ATTORNEY ID# 016781976
(732) 449-2884
ATTORNEY FOR PLAINTIFF(S)

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L- |
| | : | UNN-L 2309-17 |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | VERIFIED CLASS ACTION COMPLAINT |
| K & E SERVICE CENTER | : | AND JURY DEMAND |
| | : | |
| Defendant(s) | : | |

The Plaintiff, Jayann A. Locke, residing at 1020 Belmont Avenue, North Haledon, New Jersey, on her own behalf and on behalf of the putative class by way of Complaint against the defendants states:

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>

1.     On or about March 2, 2015, Plaintiff purchased a used 2009 Mercedes ML63 from Deluxe Auto Sales, Linden, NJ ("Deluxe"). A true copy of the Motor Vehicle Retail Order is attached as Exhibit "A".

2.     The purchase paid by way of a $9,500 deposit and financing provided by Capitol One. A true copy of the Retail Installment Sales Contract is attached as Exhibit "B".

3.     The Retail Buyer Order reveals that Deluxe engaged in unconscionable price gouging. Deluxe charged Plaintiff for the following:

**LUEDDEKE LAW FIRM**
**215 MORRIS AVENUE**
**SPRING LAKE, NEW JERSEY 07762**
**ATTORNEY ID# 016781976**
**(732) 449-2884**
**ATTORNEY FOR PLAINTIFF(S)**

| | | |
|---|---|---|
| JAYANN A. LOCKE | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION |
| Plaintiff(s), | : | UNION COUNTY |
| | : | |
| | : | DOCKET NO. UNN-L- |
| v. | : | |
| | : | |
| DELUXE AUTO SALES, CAPITAL | : | Civil Action |
| ONE AUTO FINANCE, AMERIPLUS, | : | |
| PRESTIGE MERCEDES BENZ, | : | **VERIFIED CLASS ACTION COMPLAINT** |
| K & E SERVICE CENTER | : | **AND JURY DEMAND** |
| | : | |
| Defendant(s) | : | |
| | : | |

The Plaintiff, Jayann A. Locke, residing at 1020 Belmont Avenue, North Haledon, New Jersey, on her own behalf and on behalf of the putative class by way of Complaint against the defendants states:

## ALLEGATIONS COMMON TO ALL COUNTS

1.      On or about March 2, 2015, Plaintiff purchased a used 2009 Mercedes ML63 from Deluxe Auto Sales, Linden, NJ ("Deluxe").  A true copy of the Motor Vehicle Retail Order is attached as Exhibit "A".

2.      The purchase paid by way of a $9,500 deposit and financing provided by Capitol One.  A true copy of the Retail Installment Sales Contract is attached as Exhibit "B".

3.      The Retail Buyer Order reveals that Deluxe engaged in unconscionable price gouging.  Deluxe charged Plaintiff for the following:

| | | |
|---|---|---|
| (1) | Three (3) year key replacement | $1,690.00 |
| (2) | Three (3) year Tire and Wheel Coverage | $1,995.00 |
| (3) | AmeriPlus Service Contract | <u>$3,650.00</u> |
| | | $7,335.00 |

(a)     As to the key replacement, Plaintiff was actually told this was being provided for free.

(b)     None of the charges appearing on the Retail Order were explained to Plaintiff. The Retail Order was presented late at night after Plaintiff had been at Deluxe for several hours. Deluxe "fanned the paperwork" and said "sign here" to multiple documents.

(c)     Plaintiff was not given any paperwork for the key replacement or the tire/wheel coverage.

(d)     These charges are absolutely unconscionable and were charged in order to rip Plaintiff off for most of her cash deposit of $9,500.

4.     Plaintiff was induced in purchasing said vehicle by representations that the vehicle was in excellent condition, and that Deluxe had performed a full tune up and mechanical inspection before offering the vehicle for sale.

5.     Since taking possession, Plaintiff has experienced significant problems/conditions with the vehicle.

6.     In October 2015, the vehicle overheated. Plaintiff caused the vehicle to be towed to Prestige Motors, Inc., a Mercedes dealership; Plaintiff was advised that the radiator was cracked and needed to be replaced.

7.     Plaintiff was further informed that her extended warranty would not cover the repair. Plaintiff was shocked to hear this as she asked for the best warranty available and she paid $3,650 for the warranty.

8.     In connection with the purchase, Plaintiff had purchased a service contract or

extended warranty from Deluxe

9.     Deluxe informed Plaintiff that the service contract would cover everything "bumper to bumper" and it was their best warranty.  This representation was false:  The service contract did no cover everything and it was not their best warranty.

10.     Deluxe also misrepresented to Plaintiff that by buying the extended warranty, her finance rate would be lowered; this representation was false.

11.     Deluxe charged Plaintiff $3,650 for the warranty which is an unconscionable amount.  Said charge appears on the Retail Order (Exhibit "A").

12.     The warranty was issued by AmeriPlus and the face page of the contract is attached as Exhibit "C".

13.     Said warranty was characterized as the "Supreme Plan".

14.     Despite a $3,650 purchase price, the warranty was only for a duration of two years or 24,000 miles.

15.     A review of the face page to the extended warranty indicates that it is not the best warranty as there is an "ultimate plan" and an "ultimate wrap" plan".

16.     Said warranty failed its essential purpose and it did not provide any coverage for the significant conditions Plaintiff encountered and suffered post-sale except for a valve gasket issue which is memorialized in Deluxe Retail Order #14000 dated, July 2, 2016 (Exhibit "D").

17.     Deluxe violated the Consumer Fraud Act in diverse respects including but not limited to conduct in connection with the sale of the warranty as hereinafter set forth

18.     Prestige allegedly performed repairs as memorialized in Invoice #174467

3

dated October 17, 2015 (Exhibit "E") for which Prestige charged $2,894.03.

19.     Prestige did not repair vehicle correctly, and when Plaintiff picked up the vehicle, the engine was revving and the check engine light was on.   Prestige acted unconscionably by trying to have Plaintiff pay $300 to check the vehicle; Plaintiff refused to pay.

20.     Plaintiff immediately returned the vehicle to Prestige and, after checking the vehicle, told Plaintiff the vehicle was okay (saying the vehicle's revving is because it is a powerful vehicle with a lot of horse power; this statement is false).

21.     Plaintiff contends that Deluxe knew of the multitude of issues with this vehicle prior to the sale to Plaintiff yet failed to disclose same to Plaintiff.

22.     Plaintiff would not have purchased the vehicle had these problems been disclosed to her.

23.     Plaintiff has a right to reject the vehicle based upon the defects that existed at the time possession was tendered and did so in a timely manner N.J.S.A. 12A:2-602.

24.     Plaintiff revoked her acceptance of the vehicle by filing this complaint for said relief.

25.     Plaintiff lost the use of vehicle and Defendants are legally liable for this loss of use.

26.     All warranties, including the AmeriPlus warranty, have failed their essential purpose and it operates to deprive Plaintiff of the substantial value of her bargain and Plaintiff is therefore entitled to all her consequential and incidental damages including attorney's fees and costs pursuant to N.J.S.A. 12A:2-715.

27.     Defendant Deluxe failed to disclose that it makes a substantial profit on said warranty sale. Defendant Deluxe represented that the entire warranty purchase price was paid to the warranty provider. This representation was false.

28.     Plaintiff has a right to cancel the contract and recover so much of the purchase price as has been paid. N.J.S.A. 12A:2-608(3); 12A2-711(1). *Ramirez v. Autosport* 88 N.J. 277, 288-289 (1982). Plaintiff properly exercised said right in a timely manner.

29.     Defendant, K & E Service Center ("K & E") also performed repairs to the vehicle as memorialized in Invoice #10148, dated May 19, 2016, for $950 (Exhibit "F").

30.     AmeriPlus did not cover the K & E repair.

31.     The K & E repairs did not resolve the revving condition Plaintiff was experiencing.

32.     Eventually, the revving condition grew worse and when Plaintiff turned the vehicle on it sounded like an airplane.

33.     Plaintiff took the vehicle to Prestige on or about November 5, 2016. Her advisor told her that if she had come back within a year of October 22, 2015, they would have checked the vehicle for free; Plaintiff was unaware of this and also thought she had full coverage under the AmeriPlus warranty.

34.     Plaintiff's advisor, Andy, said the warranty company was going to send someone to look at the vehicle to figure out if they are going to fix it. He said that she would have to give him the okay to pull the engine down and if the warranty company denied it, she would have to pay $2,700 to cover labor. Plaintiff read the warranty and it stated that the Supreme Warranty covers engine mount and water pump, the two (2) things that Prestige

said were Plaintiff's problem. Plaintiff was happy that her warranty was finally going to fix it.

To Plaintiff's surprise, AmeriPlus denied the claim because they said that a gasket cracked when the car overheated and that is what caused the engine mount and water pump to break.

Prestige denied that they were responsible. Plaintiff told Prestige that she would pay the $2,700 for their labor and she would take her car elsewhere. Plaintiff's advisor told her that for that money she was going to get her engine in the trunk and she would have to tow her vehicle out of there. Plaintiff was highly upset that her advisor, Andy, did not tell her that she would have to pay to put the car back together. Plaintiff was stuck. Being that she was stuck, she asked for a discounted price. Andy said her discount was $7,400 even though she had told Plaintiff $6,000 was the price to fix it before the warranty company got involved.

35.     Subsequently AmeriPlus declined to pay the $7,400 Prestige invoice.

36.     Prestige's present bill is Invoice #220412, dated December 12, 2016 (Exhibit "G". The sum, if all the work is done, is $12,489.48. The sum allegedly due for work allegedly performed to date is $7,400.

37.     AmeriPlus refused to give Plaintiff the reasons for its claim denial in writing; this is unconscionable.

38.     Prestige refused to give the vehicle back to Plaintiff unless its invoice is paid.

39.     Prestige, in an email dated February 15, 2016, told Plaintiff that if all repairs were performed, the balance could be as much $18,000.

40.     Defendants, Prestige, Deluxe and K & E, also violated the Automotive Repair regulations, N.J.A.C. 13:45A-7.1, et seq. in diverse respects including but not limited to

6

commencing work for compensation without securing written authorization from Plaintiff and making statements which were untrue or misleading

41.    Plaintiff is entitled to all of her money back from Deluxe together with incidental and consequential damages.

## COUNT ONE
### (CONSUMER FRAUD)

1.    The foregoing conduct constitutes consumer fraud by way of affirmative acts and acts of omission and regulatory violations.

2.    Defendant, Deluxe, violated the Used Car Lemon Law, N.J.S.A. 56:8-67 in diverse respects particularly committing unlawful practices set forth in N.J.S.A. 56:8-68.

3.    Plaintiff suffered an ascertainable loss as a proximate result of Defendants' conduct. N.J.S.A. 56:8-19.

**WHEREFORE**, Plaintiff, demands damages against defendants as follows:

(1)    Compensatory damages which should be trebled under the Consumer Fraud Act;

(2)    Punitive damages;

(3)    Rescission;

(4)    Attorney's fees;

(5)    Lawful interest;

(6)    Costs of suit;

(7)    For such other relief as the Court may deem equitable and just including rescission and replevin of the vehicle.

## SECOND COUNT

1.    Plaintiff, repeats each and every allegation of the First Count as though set forth

more fully at length herein.

2.      The foregoing conduct of defendants constitutes breach of contract and breach of the implied covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiff, demand damages against defendants as follows:

(1)      Compensatory damages which should be trebled under the Consumer Fraud Act;

(2)      Punitive damages;

(3)      Rescission;

(4)      Attorney's fees;

(5)      Lawful interest;

(6)      Costs of suit;

(7)      For such other relief as the Court may deem equitable and just.

<u>**THIRD COUNT**</u>

1.      Plaintiff, repeats each and every allegation of the First and Second Count as though set forth more fully at length herein.

2.      Defendants, Deluxe and AmeriPlus, breached an express warranty and as a result Plaintiff has been damaged.

3.      All warranties failed their essential purpose.

4.      Plaintiff has rejected the vehicle pursuant to N.J.S.A. 12A:2-602 or alternatively, Plaintiff revoked acceptance of the vehicle pursuant to N.J.S.A. 12A:2-608.

**WHEREFORE**, Plaintiff, demands damages against defendants as follows:

(1)      All remedies available to Plaintiff under the Uniform Commercial Code including, but not limited to rejection, revocation,  rescission, breach of

8

warranty damages, including incidental and consequential damages pursuant to N.J.S.A. 12A:2-715, attorney's fees, costs of suit, interest and such other relief as the Court seems equitable and  appropriate. So much of the purchase price as has been paid pursuant to N.J.S.A. 12A:2-711.

## FOURTH COUNT

1.      Plaintiff, repeats each and every allegation of the First, Second and Third Counts as though set forth more fully at length herein.

2.      The aforesaid conduct of defendants, Deluxe and AmeriPlus, constitute a breach of implied warranties.

**WHEREFORE,** Plaintiff demands judgment against said defendants, for the following relief;

(1)     All remedies available to Plaintiff under the Uniform Commercial Code including, but not limited to, revocation, rescission, breach of warranty damages, including incidental and consequential damages, attorneys fees, costs of suit, interest and such other relief as the Court seems equitable and appropriate.

## FIFTH COUNT

1.      Plaintiff, repeats each and every allegation of the First, Second, Third and Fourth Counts as though set forth more fully at length herein.

2.      Defendants, Deluxe and AmeriPlus, violated the Magnuson-Moss Warranty Act 15 U.S.C.A. § 2301 et seq.

**WHEREFORE,** Plaintiff seeks all remedies available to Plaintiff under said statute.

## SIXTH COUNT

1.  Plaintiff, repeats each and every allegation of the First, Second, Third, Fourth and Fifth Counts as though set forth more fully at length herein.

2. Defendant, Deluxe, committed fraud, legal and equitable.

**WHEREFORE,** Plaintiff seeks judgment against said Defendant for all relief and remedies to which she is legally and equitably entitled including punitive damages.

<u>**SEVENTH COUNT**</u>

1.      Defendants, Deluxe and AmeriPlus, engaged in unlawfully conspiracy in connection with the sale of the subject warranty and conduct in connection therewith.

**WHEREFORE,** Plaintiff, demands damages against defendants as follows:

(1)     Compensatory damages which should be trebled under the Consumer Fraud Act;

(2)     Punitive damages;

(3)      Rescission;

(4)     Attorney's fees;

(5)     Lawful interest;

(6)     Costs of suit;

(7)     For such other relief as the Court may deem equitable and just including rescission and replevin of the vehicle.

<u>**EIGHT COUNT**</u>

1.      Plaintiff, repeats each and every allegation of the First, Second, Third, Fourth, Fifth, Sixth, and Seventh Counts as though set forth more fully at length herein.

2.      Capital One financed the subject vehicle.

3.      Capital One is the assignee of the subject Retail Installment Contract (Exhibit "B") ("RIC")

4.      Capital One is an indispensible and necessary party as Plaintiff may seek

10

rescission and cancellation of the transaction and RIC.

5.     In addition, Capital One is subject to the Federal and State Holder Rule and by terms of the RIC which, inter alia, provide that the holder is subject to all claims and defenses the buyer may have against the seller.

6.     In order to protect her credit, Plaintiff has made all her payments to Capitol One. Given the extent of the fraud by Deluxe, Plaintiff's payment is approximately $1,000 per month. Staying current on payments is creating a tremendous hardship as she does not have the vehicle.

WHERFORE, Plaintiff seeks all remedies available to her in law and equity together with attorney's fees, interest and costs of suit.

### CLASS ACTION CLAIMS
### NATURE OF THE ACTION

1.     This action is brought on behalf of Plaintiff and a class comprised of all individuals, who, during the class period, (a) purchased an extended warranty/service contract, or other similar extended maintenance or service agreement in connection with the purchase of a used motor vehicle from Defendant pursuant to a Retail Credit Installment Sales Contract or Buyer's Order ("contracts") from Defendant, Deluxe, or (b) purchased a key replacement product or (c) tire and wheel coverage from Deluxe, and who were damaged and/or suffered an ascertainable loss owing to misrepresentations, non-disclosures, unconscionable conduct, price gouging, regulatory violations and omissions in the contract regarding the cost of the extended warranty, key replacement and the wheel coverage and amounts paid to the issuer of said products on behalf of the consumer.

11

2.       Plaintiff alleges that Deluxe engages in a business practice and scheme the effect of which scheme is to conceal from consumers that they are paying substantial commissions, profits or finder's fees to the dealer, in connection with the dealer's sale of an extended warranty, key replacement and tire and wheel coverage.

3.       The finder's fee, profit or commission often amounts to 40% or 50% or more of the total amount paid by the consumer, such that the actual cost of the extended warranty, key replacement and tire and wheel coverage, the amount actually paid to the issuer of the extended warranty and other said products is grossly overstated, resulting in consumers paying an inflated price for the extended warranty in the form of an undisclosed commission.  This deceptive and unfair practice inflates the amount financed by the consumer, which inures to the benefit of Defendant.  Defendant is liable for these misrepresentations, unconscionable conduct, omissions and regulatory violations under the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1, et seq. ("CFA"). Deluxe is also liable for breach of contract and must disgorge all monies earned on account of its breaches.

4.       Plaintiff further claims that the amounts charged for said extended warranties, key replacement and tire and wheel coverage are grossly excessive and the price charged for said products is unconscionable, thereby violating the New Jersey Consumer Fraud Act and the Uniform Commercial Code, N.J.S.A. 12 A: 2-302.  See also *Toker v. Westerman* 113 N.J. Super. 452, 455 (Union Cty. Ct. 1970) (flagrantly excessive price was within intendment of N.J.S.A. 12A:2-302).

5.       In the instant matter Plaintiff was charged $3,650.00 (plus tax thereon) for an extended warranty.

12

6.      Plaintiff was charged $1,690.00 for three (3) year key replacement.

7.      Plaintiff was charged $1,995.00 for three (3) year tire and wheel coverage.

8.      As to the alleged unconscionability and excessive price charged for such extended warranties in the Ocean County, Superior Court, Law Division case of *Serafin v. Weisleider, Inc.* Docket No. OCN-L-450-00 the Honorable Donald F. Campbell, J.S.C. ruled that a jury may conclude that Defendant's practice of retaining 45% of the stated purchase price for the extended warranty is unconscionable under the New Jersey Consumer Fraud Act (Exhibit "H").

(a)      As hereinafter alleged, Defendant, Deluxe, also violated the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA") N.J.S.A. 56:12-15, in connection with its sale of the extended warranty, key replacement and tire and wheel coverage.

## FACTUAL ALLEGATIONS

9.      Plaintiff's Retail Installment Sales Contract (Exhibit "B" "RIC") contains a section entitled "Itemization of The Amount Financed" (the "Itemization"), which purports to disclose and itemize all amounts that are being financed by the consumer.  In those instances where the consumer purchases an extended warranty, the Itemization, in plaintiff's case in #8, sets out an amount that purportedly is paid to the issuer of the warranty, respectively, on the consumer's behalf. In Plaintiff case, it is represented that $3,650.00 was paid to "AmeriPlus."  This representation is false in that this specific sum of money was not paid to AmeriPlus.

(a)      Plaintiff's Retail Buyer's Order is attached as Exhibit "A" and this also

13

reflects a sale of a service contract, key replacement and tire and wheel coverage.

10.     In fact, unbeknownst to Plaintiff and the class members, the disclosures and representations regarding the cost of the extended warranty, key replacement and tire and wheel coverage are false, inaccurate, and misleading. The amounts stated for these products, was not paid to the issuer or provider of these products. Rather, only a portion of the amount stated was paid to the issuer or provider of these products. The balance was retained by or paid to the automobile dealership Deluxe as a commission, profit or finder's fee. A substantial percentage of the amount represented as having been paid to the issuer or provider of these products is actually paid to Deluxe as a finder's fee, profit or commission. Thus, the amount stated as having been paid to the issuer or provider of these products on the consumer's behalf is grossly overstated in that only a portion of the stated amount is actually paid to the issuer with the remainder being paid to the dealership as a finder's fee, or undisclosed profit. Discovery will indicate the exact amount of the unconscionable profit made by Deluxe in connection with the sale of these products.

11.     In fact, in a report prepared by the New York Attorney General's office it was reported that dealers charge as much as six times the manufacturer's "MSRP" for the extended warranty, and this figure can be as high as twelve times the dealer's cost for the extended warranty (Exhibit "l", pgs. 1,2). The extended warranty in this case was not a manufacturer's warranty but a third party warranty replete with contractual exclusions which serve to defeat the coverage which the purchaser reasonably expects.

12.     The best evidence that this AmeriPlus product was not worth anything near what Plaintiff paid is that almost all of Plaintiff's repair claims were denied.

14

13.     By overstating the actual cost of the extended warranty and presenting the inflated cost as a non-negotiable charge passed on to the issuer of the extended warranty on the consumer's behalf, the cost of the warranty and the amount financed are thereby inflated without the customer's knowledge. Defendant, Deluxe, benefits from this deceptive practice by having a profit center at the consumer's expense.  This profit center is an integral part of the dealership's "after market" sales department. The consumer is totally unaware that only a portion of the purchase price is paid to the provider (AmeriPlus in Plaintiff's case) and the dealer retains a major portion of the purchase price for itself. In fact, the dealership purposely creates the impression and indeed represents that the entire purchase price is paid to provider.

(a)     The consumer is further misled and deceived into believing that the entire purchase of $3,650.00 is paid to the provider, "AmeriPlus" by a statement on the "AmeriPlus" contract that the service agreement price is $3,650.00. (Exhibit "C")(page 1 of 13 only).

(b)     These same allegations pertain to the key replacement and tire and wheel coverage products except that Plaintiff did not receive any documents pertaining to these products.

14.     The identical misrepresentation, except for variations in the dollar amount, is made in virtually every Buyer's Order (Exhibit "A") and motor vehicle retail installment sales contract (Exhibit "B") that is entered into by Deluxe where the retail customer purchased an extended warranty or service contract.  It is the standard practice and policy of Defendant, Deluxe, to make or adopt the previously described false and misleading

15

disclosures regarding extended warranties in the motor vehicle retail installment sales contracts assigned to financing institutions.

15.     Deluxe concealed from Plaintiff and the class members the true amounts paid to others for extended warranties, key replacement and tire and wheel coverage on their behalf. Plaintiff and the class members could not, through reasonable diligence, have discovered the patent misrepresentations since the violation and the wrongdoing was self-concealing and the pertinent information was exclusively within the knowledge and possession of Defendant, Deluxe.

16.     It is recognized that on Plaintiff's RIC (Exhibit "B") it states that Seller may retain or receive a portion of this amount (which is not prominently displayed and only found by a discerning eye seeing a small asterisk) seemingly refers to the AmeriPlus extended warranty or service contract although the RIC states "Service Contract, paid to AmeriPlus $3,650.00".  Plaintiff claims this statement Seller may retain or receive a portion of this amount is false and misleading in that the truth is that seller <u>does</u> retain a portion (a very significant portion) of the amount. The law recognizes the following:

> Although a vendor may be under no obligation to speak concerning the thing he would sell, yet if he undertakes to do so he is bound not only to speak the truth in all he says but is equally obliged to tell every material fact within his knowledge which might materially qualify such statements as he may have made.  (citation omitted). *Tobin v. Paparone Const. Co.* 137 <u>N.J. Super.</u> 518 (524, 525) Law Div. 1975.

Accordingly, Defendant, Deluxe, was under an affirmative obligation to speak the whole truth in terms of exact monies paid to AmerPlus and exact monies retained by

16

Deluxe.

      (a)   In addition, Plaintiff contend that this "we may retain" language is language promulgated by the FTC and is intended to make the Retail Installment Contract compliant with the Federal Truth in Lending statute (TILA). This, however, does not protect or insulate defendant from our state's consumer fraud legislation. In *Perry v. Rt. 22 Nissan* (Exhibit "J") the Honorable Mathia E. Rodriquez indicated that while a defendant dealership may be TILA compliant this does not mean that the dealership is CFA compliant in connection with the sale of extended warranty or service contracts.

      (b)   The same allegations pertain to the key replacement and tire and wheel coverage.

**CLASS ACTION ALLEGATIONS**

**(A)  The Class**

17.    **Class Period.**  This action is brought as a class action pursuant to R. 4:32 of the New Jersey Civil Practice Rules.  The class period encompasses the following time period:

From the date of the filing of this action to the exact same date six years earlier. This period is applicable to the class of persons who purchased extended warranties, key replacement and tire and wheel coverage from Deluxe in connection with the purchase of a vehicle which was documented in a form retail installment contract and/or Buyer's Order that did not reveal that Deluxe would retain a portion of the amounts paid for the service contract, key replacement and tire and wheel coverage.  This time period applies to the New Jersey Consumer Fraud Act violations alleged herein.  The statute of limitations for the

17

Consumer Fraud Act violations is six (6) years. *D'Angelo v. Miller Yacht Sales*, 261 N.J. Super. 683, 688 (App. Div. 1993).

18.   **Class Definition.**   Plaintiff brings this action on her own behalf and in a representative capacity on behalf of a class composed of all persons, who, during the class period (a) purchased an extended warranty/service contract, key replacement and tire and wheel coverage from Deluxe where the mark-up, profit, finder's fee or commission was not disclosed to the buyer by the Defendant, Deluxe.

19.   **Numerosity.**   The members of the proposed class, being geographically dispersed and numbering in the hundreds or thousands, are so numerous that jointer of all of them is impracticable.

20.   **Typicality.**   Plaintiff's claims are typical of class members' claims because the Plaintiff is a party who has purchased outright or financed the purchase of a motor vehicle and an extended warranty or service contract, key replacement and tire and wheel coverage through Deluxe, and, by proving her own claims, Plaintiff will presumptively prove the claims of all class members.

21.   **Adequacy of Representation.**   Plaintiff can and will adequately represent and protect the interests of the class and has no interests that conflict with or are antagonistic to the interests of the class members.  Plaintiff has retained attorneys who are competent and experienced in consumer fraud litigation and consumer fraud class litigation.  No conflict exists between Plaintiff and the other class members because;

(a)   the claims of the named Plaintiff are typical of the absent class members' claims;

(b)     any claims which Plaintiff herein asserts against Deluxe which are solely related to her individual transaction, as hereinbefore alleged, can be resolved without any prejudice to the class members. Such claims can be effectively severed, tried separately or otherwise effectively and efficiently case managed by the trial court; such separate claims are set forth in separate counts to the Complaint, those counts being Count One through Seven; as amended.

(c)     all of the questions of law or fact regarding the liability of the Defendant, Deluxe, are common to the class and overwhelmingly predominate over any individual issues that may exist, such that by prevailing on her own extended warranty, key replacement and tire and wheel coverage claim.   Plaintiff necessarily will establish said Defendant's liability as to all class members;

(d)     without the class representation provided by Plaintiff virtually no class members will receive legal representation or redress for their injuries;

(e)     Plaintiff's counsel has the necessary financial resources to adequately and vigorously litigate this class action, and;

(f)     Plaintiff and class counsel are aware of their fiduciary responsibilities to class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible class recovery including monetary recoveries and injunctive belief to have defendant cease and desist from its illegal practices.

22.     **Common Questions of Law and Fact.** Virtually all of the issues of law and

19

fact in this class action are issues that are common issues to the class that include at least the following:

(a)     Whether Defendant, Deluxe, is liable under the Uniform Commercial Code for charging a flagrantly excessive and unconscionable price for the extended warranty, key replacement and tire and wheel coverage and for misrepresentations and inaccurate disclosures in the sales contract regarding the sub products;

(b)     Whether Defendant, Deluxe, is liable to the Plaintiff and the class members under the New Jersey Consumer Fraud Act (for acts of commission, omission and regulatory violations) with respect to the sale of extended warranties key replacement and tire and wheel coverage;

(c)     Whether Defendant concealed from consumers the true cost of extended warranties and payment of a finder's fee or commission to the automobile dealership in connection with the sale of such products;

(d)     Whether Defendant, Deluxe, is liable to Plaintiff and class members for breach of contract and the implied covenant of good faith and fair dealing with respect to the sale of said products;

(e)     Whether Defendant, Deluxe, is liable to Plaintiff and class members for monies paid in connection with extended warranties, key replacement and tire and wheel coverage and are liable for a refund pursuant to N.J.S.A. 56:8-2.11;

(f)     Whether Defendant, Deluxe, is liable to Plaintiff and class members for

violating N.J.A.C. 13:45A26(b).1 of the Automotive Pre-Delivery Services regulations. *See Bessie Smith v. Precision Chevrolet,* (Transcript annexed as Exhibit "K" hereto at pg. 14, line 9 through pg. 15, line 6) where the Honorable Michael Winklestein expressly found the identical practice relating to extended warranties violated these regulations for which there is strict CFA liability.

(g)   Whether Defendant, Deluxe, is liable to Plaintiff and class members for violating the Used Car Lemon Law, N.J.S.A. 56:8-68(g). *See Cannon v. Cherry Hill Toyota, Inc.,* 161 F. Supp. 2d 362 (D. N.J. 2001) (Exhibit "L").

(h)   Whether a conspiracy exists between Deluxe and providers of the extended warranty, key replacement and tire/wheel coverage.

(i)   Whether Defendant is liable to Plaintiff and class members are liable for violating TCCWNA in as much as Plaintiff and the class members had a clearly established legal right under TCCWNA to know that Defendant, Deluxe, was making a profit on the sale of the extended warranty, key replacement and tire/wheel coverage and how much the mark-up was. This clearly established legal right is established under the CFA (Affirmative Acts and Acts of Omission), Used Car Lemon Law, Automobile Pre-Delivery Services regulations and Uniform Commercial Code.

(j)   Whether the Plaintiff and the proposed class are entitled to declaratory and injunctive relief to enjoin Defendant, Deluxe, from engaging in the conduct Plaintiff alleges violates the Consumer Fraud Act and TCCWNA. See Laufer v.

The United States Life Insurance Company 385 N.J. Super. 172 (App. Div. 2006). In Laufer the trial Court found that since the case involved form contracts and mass mailings it is particularly appropriate to use the class action procedure. Laufer at 179. The Appellate Division affirmed the trial Court's granting of class certification and found that class certification was appropriate even if only the Plaintiff claimed an ascertainable loss for herself (and did not allege that class members suffered a loss) and only sought declaratory and injunctive relief for the class.

23. **Superiority.** A class action is superior to any other available method for the fair and efficient adjudication of this controversy, given that;

(a) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there should be enormous economies to the Court and the parties in litigating the common issues on a class wide instead of a repetitive individual basis;

(b) the relatively small size of each class member's individual damage claim which is too small to make individual litigation an economically viable alternative, such that as a practical matter there is no "alternative" means of adjudication to a class action;

(c) few class members have any interest in individually controlling the prosecution of separate actions (any who do may opt out);

(d) class treatment is required for optimal deterrence, optimal compensation to class members, and for limiting the legal expenses incurred by the class

members and for injunctive relief;

(e)     despite the relatively small size of individual class members claims, their

aggregate volume, coupled with the economies of scale inherent in litigating

similar claims on a common basis, will enable this class action to be litigated

on a cost-effective basis, especially when compared to repetitive individual

litigations, and

(f)     no unusual difficulties are likely to be encountered in the management of this

class action (as demonstrated by the fact that other class actions involving

the same alleged illegal practice have been resolved without any difficulties).

**COUNT IX**
<u>**CLASS CLAIM**</u>
**(Violation of the New Jersey Consumer Fraud Act, as it relates to the Extended**
**Warranty, key replacement and tire/wheel coverage, N.J.S.A. 56:8-1 <u>et seq.</u> ; ("CFA"))**

24.     Plaintiff on behalf of herself and all others similarly situated, re-alleges each

and every allegation contained in the preceding paragraphs, and further alleges that

Plaintiff and the class members have unknowingly paid and financed monies for

commissions, finder's fees, and up-charges in connection with their purchases of extended

warranties, key replacement and tire/wheel coverage under the mistaken belief, purposely

fostered by Defendant, Deluxe, that the cost of these products was a fixed, nonnegotiable

charge and that all amounts paid for such products were passed on to and actually paid to

the issuers/providers of said products on their behalf.

25.     Plaintiff and the class members were unconscionably overcharged for

23

extended warranties, key replacement and tire/wheel coverage in violation of the New Jersey Consumer Fraud Act. "Prize gouging" is unlawful, *Toker*, supra. In fact, in a case tried by Plaintiff's counsel (Ronald L. Lueddeke, Esq.) before a jury in Superior Court, Law Division, Ocean County (*Abrams v. Bob Ciasulli Auto Mall*, Docket No. L-812-95), the jury returned a verdict that a charge of $989.00 for an extended warranty that cost the dealership $298.00 was an unconscionable act in violation of the Consumer Fraud Act (Exhibit "M"). Here, the charge for the extended warranty is significantly higher than that present in the *Abrams* case. ($3,650.00).

26. Further, it is the law of this State that violation of a statute or regulation can serve as evidence of unconscionable practices under the Consumer Fraud Act. *Lemelledo v. Beneficial Management*, 289 N.J. Super. 489, 502 (App. Div. 1996), aff'd. 150 N.J 255, (1997). Therefore, if Plaintiff succeed in proving a violation of the Uniform Commercial Code, this finding can serve as evidence that an unconscionable practice was committed by Defendant under the Consumer Fraud Act. Similarly, if Plaintiff prove a violation of TCCWNA this can serve as evidence of an unconscionable practice under the CFA.

27. The concept of unconscionability is well entrenched in our Consumer Fraud law and it is generally defined as conduct which is not in good faith, honest in fact and observant of fair dealing. Actual deceit or fraudulent intent is <u>not</u> necessary. *Green v. Continental Rental* 292 N.J. Super. 241, 255 (Law Div. 1994). Further, the statutory and regulatory scheme of the Consumer Fraud Act is designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services. <u>Division of *Consumer Affairs v. Gen. Elec. Co.*</u> 244 N.J. Super.

349.353 (App. Div. 1990). Under the CFA it is the consumer's reasonable expectations that control. The consumer fraud statue is aimed at promoting truth and fair dealing in the marketplace. *Feinberg v. Red Bank Volvo* 331 N.J. Super. 506, 512 (App. Div. 2000). It is the "capacity to mislead" that "is the prime ingredient of all types of consumer fraud." *Cox v. Sears, Roebuck & Co. Inc.* 138 N.J. 2.15 (1994).

28.     Said Defendant's (Deluxe) conduct complained of herein constitutes acts, uses, or employment by Defendant of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that others, including Plaintiff and the members of the Class would rely thereon, in connection with the defendant's commercial transactions with consumers.  Said Defendant's conduct herein is an unfair act or practice that has the capacity to and does in fact deceive consumers.

29.     Said Defendant's conduct occurred in the conduct of trade or commerce or the sale of services and is within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.

30.     As stated above, the case of *Perry v. Route 22 Nissan* Superior Court of N.J., Middlesex County – Docket No. 11558-99 the Honorable Mathias E. Rodriquez, J.S.C. found that practices similar to those existing herein with respect to extended warranties violated of the Consumer Fraud Act (Exhibit "J").

31.     The conduct alleged herein occurred in the course of Deluxe's business.  Its conduct is part of a pattern or generalized course of conduct repeated on hundreds of occasions.

25

32.    Plaintiff and the members of the class have been damaged as a result of the conduct complained of herein, and the harm or risk of harm is ongoing.  Said Defendant's conduct renders them liable for treble damages and costs under N.J.S.A. 56:8-19.  In addition, Plaintiff and class members are entitled to injunctive relief to enjoin this ongoing illegal practice. N.J.S.A. 56 : 8-19 ; *Laufer v. U.S. Life Ins. Co. in N.Y.* 385 N.J. Super. 172 (App. Div. 2006). In addition, Plaintiff and the members of the class are entitled to a refund pursuant to N.J.S.A. 56:8-2.11 as interpreted in the case of *Artistic Lawn and Landscape Co.* v. *Smith* 381 N.J. Super. 75 (Law Div. 2005).

33.    Further, the class action rule (R.4:32) should be construed liberally in a case involving allegations of consumer fraud. *Strawn v. Canuso*, 140 N.J. 43, 68 (1995). *Riley v. New Rapids Carpet Center*, 61 N.J. 218, 294 (1972).  Indeed, a class action should be permitted unless there is a clear showing that it is inappropriate or improper. *Lusky v. Capasso Bros.*, 118 N.J. Super. 369, 373 (App. Div.) cert denied, 60 N.J. 466 (1972).  In fact, in the case of *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540 (D.N.J. 1999), 161 F. Supp. 2d. 362, 373 (D.N.J.) (Exhibit "M") the United States District Court for the District of New Jersey granted class action certification on the virtually identical extended warranty Consumer Fraud claims herein and granted Summary Judgment to the class that the Consumer Fraud Act and Used Car Lemon Law was violated.  Furthermore, in the case of *Bessie Smith v. Precision Chevrolet Oldsmobile, et al.,* Superior Court of New Jersey, Law Division, Atlantic County, Docket No. ATL-L-3156-96 (Exhibit "K") the Court (then assignment Judge Michael Winklestein presiding) granted class action certification and summary judgment on the identical extended warranty Consumer Fraud claims as asserted

herein.

34.    In Bessie Smith, the defendant Percision Chevrolet Oldsmobile sold plaintiff Smith an extended warranty for a price of $995 and retained a portion of that amount as an undisclosed profit. Judge Winklestein found that Precision's conduct with respect to that practice violated the Consumer Fraud Act in diverse respects:

(1)    Affirmative acts including misrepresentation (Precision represented on the RIC that purchase price was paid to the provider; this was not true. Transcript, Exhibit "K" at 8,9,10).

(2)    Acts of Omission. Precision committed a knowing omission with the intent that the consumer rely upon it (Exhibit "K" at 10-8); "I find that Precision violated the Consumer Fraud Act by not disclosing the amount retained" (Exhibit "K", 12-11)

(3)    Pre-Delivery Automotive Services Regulations.    N.J.A.C. 13:45A-26(b).2. Monies retained on the extended warranty constitute pre-delivery services and Precision did not tell the consumer that they were keeping certain amounts let alone tell them how much they were keeping. "I'm satisfied that the retention of the monies without itemizing and not disclosing to Plaintiff amounts is a violation of the aforementioned regulation and this would constitute a violation of the Consumer Fraud Act (Exhibit "K", 13, 1-25; 14, 15, 1-2)

(4)    Whether the price charged for the warranty was excessive or unconscionable was found to be a jury question (Exhibit "K", 19-22).

35.    In fact, in determining whether a class should be certified a Plaintiff's chances of prevailing on the merits of the case are not relevant, and the determination

27

must be made with reference to R. 4:32 criteria for maintaining a class action. *Delgozzo v. Kenny*, 266 N.J. Super. 169, 180-181 (App. Div. 1993). Indeed, a class action should be permitted unless there is a clear showing that it is inappropriate or improper. In re Cadillac V8-6-4 Class Action, 93 N.J. 412 (1983). Here, plaintiff is demonstrating from previous cases that plaintiff's claim is very meritorious and well founded both factually and as a matter of law.

## COUNT X
## CLASS CLAIM
**(Breach of Contract, Fraud and Breach of Implied Covenant of Good Faith and Fair Dealing)**

36.     Plaintiff on behalf of herself and all others similarly situated, re-alleges each and every allegation contained in the preceding paragraphs, and further alleges that Deluxe, as seller of the vehicles are liable to Plaintiff and the class members for breach of contract owing to the misrepresentations and omissions in the contracts regarding the cost of the extended warranty, key replacement and tire/wheel coverage and payments made for the said products on the consumer's behalf and for the practices alleged herein.

37.     Implied in every New Jersey contract is an implied covenant of good faith and fair dealing. Plaintiff alleges on her behalf and on behalf of the class members that the conduct of the Defendant, Deluxe, violated this covenant.

38.     Plaintiff and the class members suffered actual damages proximately caused by said Defendant's breach of contract in that, contrary to it charged inflated amounts for extended warranties, key replacement and tire/wheel coverage and received undisclosed

28

commissions, finder's fees or up-charges in connection with the sale of said products.

## COUNT XI
## CLASSCLAIM
### (Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-15)
### ("TCCWNA")

39.     Plaintiff repeats and re-alleges each and every preceding paragraph as though set forth at length herein.

40.     In 1981, the Legislature enacted the TCCWNA. L. 1981, c. 454. The Act provides:

> No seller ... shall in the course of his business offer to a consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

The rights, remedies and prohibitions conferred by the TCCWNA are "in addition to a cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statues of this State." N.J.S.A. 56:12-18. As explained in Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 457 (2011).

> [t]he purpose of the TCCWNA is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts. By its terms, it encompasses a wider variety of transactions than do truth-in-lending and truth-in-leasing laws.

In Kent Motor Cars, a class action, the trial court granted partial summary judgment to the class, in part, on the inadequate font size. 297 N.J. at 435. Accordingly, Freehold Kia's inadequate font size in their advertisement is both a Consumer Fraud Act violation and a

29

TCCWNA violation.

The TCCWNA provides that any person who violates the provisions of the statue shall be liable to an aggrieved consumer for a civil penalty not less than $100, actual damages, or both at the election of the consumer, in addition to reasonable attorneys' fees and court costs. N.J.S.A. 56:12-17.

41.     TCCWNA is a remedial statute, entitled to a broad interpretation to fraudulent its stated purpose. Shelton v. Restaurant.com 214 N.J. 419, 442 (2013). Further, the Supreme Court in Shelton states:

> We conclude the purpose of the TCCWNA is facially remedial. The label or descriptor of the deterrent imposed by the Legislature to address the identified prohibited behavior does not negate its overall remedial nature. Moreover, the Governor's signing message identified the TCCWNA as a measure to strengthen the CFA, see Governor's Statement on Signing Assembly Bill No. 1660, supra, (January 11, 1982) a statute traditionally afforded a liberal construction, see Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011) ("The CFA is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud..."

It is recognized that the TCCWNA is remarkably well suited to class actions and one commentator has described the statute as "the new CFA".

42.     Plaintiff contends that the Defendant (Deluxe) dealership's conduct violated the TCCWNA in diverse respects.

43.     Defendant, Deluxe, did violate New Jersey's Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et seq. ("TCCWNA"). Said Act provides, inter alia, that no seller shall enter into any written contract that includes a provision that violates any clearly established legal right as established by state or federal law.

30

44.     Plaintiff and the proposed class have clearly established legal rights under the CFA and under the Automotive Pre-Delivery Services regulations, N.J.A.C. 13:45 A.26(b) 1. See *Bessie Smith v. Precision Chevrolet* (Exhibit "K" hereto).  See page 35 above (¶ 35) for specific findings made by Judge Winklestein (dealership's practice in connection with the sale of extended warranty violated the CFA in three separate ways (affirmative acts, acts of omission and regulatory; Exhibit "K" at 15-4).

(a)     Key replacement and tire/wheel coverage are pre-delivery services and stand on the same footing as the extended warranty.

45.     Plaintiff and the proposed class also had clearly established legal rights under the Uniform Commercial Code, N.J.S.A. 12A:2-302 (not to pay an excessive price).

46.     Plaintiff and the proposed class has clearly established legal rights under the CFA, as to affirmative acts, acts of omission, regulatory and used car lemon law.

## NOTICE TO ATTORNEY GENERAL OF AMENDED ACTION

47.     A copy of this Complaint, as amended, shall be mailed to the Attorney General of the State of New Jersey within ten days after the filing of this Complaint with the Court pursuant to N.J.S.A. 56:8-20.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that this Court enter judgment in her favor and in favor of the class as follows:

(a)     Certifying that the action may be maintained as a class action on behalf of the class described above;

31

(b)    Certifying Plaintiff as class representative and the undersigned as class counsel;

(c)    Awarding Plaintiff and all class members compensatory damages in an amount to be determined at trial;

(d)    Awarding Plaintiff and all class members a refund pursuant to N.J.S.A. 56:8-2.11 and/or treble damages under the New Jersey Consumer Fraud Act (N.J.S.A. 56: 8-19);

(e)    Awarding Plaintiff and all class members punitive damages in an amount to be determined at trial;

(f)    A declaration of the rights and obligations of the parties, including a declaration that Defendant's conduct violates the New Jersey Consumer Fraud Act, the Uniform Commercial Code, Used Car Lemon Law and the common law;

(g)    An injunction requiring Defendant, Deluxe and its co-conspirators including AmeriPlus, to discontinue their unlawful and unfair practices;

(h)    An accounting to determine the amounts Defendant, Deluxe, has illegally profited at Plaintiff's and the class members' expense, and disgorgement to the class of such funds;

(i)    An award to Plaintiff and the class members of the expenses of this suit, including costs, reasonable attorneys' fees, and expert's fees;

(j)    The imposition of civil penalties as provided for in the Consumer Fraud Act;

(k)    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff herein demands a trial by jury as to all triable issues of fact.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Ronald L. Lueddeke, Esquire is hereby designated as trial counsel on behalf of the plaintiff.

Dated: 6/14/17                    By: _____
                                       Ronald L. Lueddeke, Esquire

## CERTIFICATION

The undersigned hereby certifies that the within controversy is not subject of any other action or proceeding either filed or anticipated.  In addition, plaintiff is not aware of any other parties that should be joined to this action at this time except the providers of the key replacement product and tire/wheel coverage and individuals who committed or participated in the unlawful conduct herein alleged.

Dated: 6/14/17                    By: _____
                                       Ronald L. Lueddeke, Esquire

33

## VERIFICATION

I hereby verify that the factual allegations contained herein are true and correct to the best of my knowledge and belief and if willfully false I am subject to punishment.

Dated:  6-14-17                    By: _Jayann Locke_
                                       Jayann A. Locke

# EXHIBIT "A"

DELUXE AUTO SALES, INC.

Motor Vehicle
Retail Order

731 E. Edgar Rd. (Routes 1 & 9 So.)
Linden, NJ 07036
(908) 474-5222
(908) 474-5223 Fax

800 Commerce Rd.
Linden, NJ 07036
(908) 862-0010
(908) 862-0023 Fax

| CUSTOMER | JAYANN A LOCKE | DATE 03/02/2015 | STOCK NO. | 6417 |
|---|---|---|---|---|

ADDRESS  1020 BELMONT AVE          NORTH HALEDON    NJ     07508

PHONE (H)  973-380-4174          PHONE (W)                    CELL

E-MAIL                                              SALES REP.  KEVIN GOINES

| YEAR | 2009 | MAKE | Mercedes-B | MODEL | ML63 AMG |
|---|---|---|---|---|---|

| BODY TYPE | Multi | EXT. COLOR | BLACK | INT. COLOR | | MILES | 83435 |
|---|---|---|---|---|---|---|---|

Prior to Delivery of the vehicle listed above, customer shall elect one of the following and so advise dealership:
• Cash Purchase   • Finance Purchase   • Lease

IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS ORDER.

TO BE DELIVERED ON OR ABOUT  03/02/2015

| Price of Unit | 30000 | 00 |
|---|---|---|
| Additional Equipment (options) | N/A | |
| | | |
| 3 YR KEY REPLACEMENT | 1690 | 00 |
| 3 YR TIRE & WHEEL | 1995 | 00 |
| | | |
| AMERIPLUS | 3650 | 00 |
| 24 MONTHS    24000 MILES | | |

**IF A LEASE, THE FOLLOWING APPLY:**

MONTHLY PAYMENT AMOUNT $

TERM_____MONTHS

MILEAGE PER YEAR

CASH DUE AT DELIVERY $

**IF A PURCHASE, THE FOLLOWING APPLY:**

| TOTAL PRICE OF VEHICLE | 37335 | 00 |
|---|---|---|
| Less Trade-in | N/A | |
| | | |
| TOTAL TAXABLE AMOUNT | 37335 | 00 |
| State Sales Tax | 2613 | 45 |
| | N/A | |
| Security Window Etch (Optional) | $553.00 | |
| Registration/Title Fee (Estimated) | | |
| (SEE PARAGRAPH 12 ON REVERSE SIDE) | 161 | 50 |
| Documentary   Clerical Expense $149.50 | | |
| Fee          Document Delivery Service $149.50 | $299.00 | |
| (SEE PARAGRAPH 13 ON REVERSE SIDE) | | |
| NET PAY-OFF ON TRADE-IN | N/A | |
| | | |
| TOTAL | 40408 | 95 |
| Deposit | Cash   N/A | |
| | 9500 | 00 |

BALANCE IN CASH, CERTIFIED CHECK OR OTHER ACCEPTABLE FORM OF PAYMENT TO BE PAID TO DEALER ON DELIVERY

BALANCE DUE ON DELIVERY ➡      30908.95

| SERIAL NUMBER | 4 | 6 | B | 2 | 7 | 7 | 8 | 9 | R | 4 | 7 | 4 | 9 | 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

IF A LEASE, COMPLETE DISCLOSURE OF ALL LEASE TERMS AND CONDITIONS IS CONTAINED ON A SEPARATE LEASE CONTRACT.

**CHECK APPROPRIATE BOX**

☐ This vehicle is sold/leased "as is" and dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks.

OR

☐ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

**ALL USED VEHICLE SALES-DEALER'S OBLIGATION**

The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price (if a sale) to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the issuance of the permanent registration for such vehicle.

03 / 02 / 2015   X _____
Date                 Customer's Signature

**WAIVER OF DEALER'S OBLIGATION**

The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE and RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price (if a sale) if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L. 1995, Chpt. 373).

03 / 02 / 2015   X _____
Date                 Customer's Signature

**TRADE-IN DESCRIPTION AND ALLOWANCE**

Year _____ Make _____ Model _____

Serial No. _____ Mileage _____

Trade-in Value ____N/A____ Date of _____

Less Balance Owed ____N/A____

Net Trade-in Allowance ____00____

Balance Owed to: _____

Address: _____

Account No.: _____

Info. From _____ Good Thru _____

Customer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

X _____   03 / 02 / 2015
Customer's Signature

Customer agrees that this Order on the face and on the reverse side and any attachments to it include all the terms and conditions, if a sale. Customer further agrees this Order cancels and supersedes any prior agreements and as of the date signed by Dealer or authorized agent comprises the complete and exclusive statement of the terms of the agreement between Customer and Dealer. If Customer, prior to delivery elects to lease the vehicle described above, Customer and Dealer agree to execute a lease contract which shall contain full disclosure of all lease information. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR THE AUTHORIZED REPRESENTATIVE. Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the Order. YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC PRE-DELIVERY SERVICE WHICH IS TO BE PERFORMED. THE AUTOMOTIVE DEALER MAY NOT CHARGE FOR PRE-DELIVERY SERVICES FOR WHICH THE AUTOMOTIVE DEALER IS REIMBURSED BY THE MANUFACTURER. YOU HAVE A RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC DOCUMENTARY SERVICE WHICH IS TO BE PERFORMED. I am 18 years of age or older and of full legal capacity to enter into this contract.

Accepted By: 03/02/2015 _____        03/02/2015 _____
Date or Authorized Representative              Date      Customer's Signature

**THIS ORDER NOT SUBJECT TO CANCELLATION—DEPOSIT NON-REFUNDABLE**

# EXHIBIT "B"

Object 006C4T95 (Page 4 of 17)

**RETAIL INSTALLMENT SALE CONTRACT**
**SIMPLE FINANCE CHARGE**

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| JAYNNA A LOCKE | | DELUXE AUTO SALES INC. |
| 1020 BEHIND AVE | | 508 COMMERCE ROAD |
| NORTH HALEDON, NJ 07508- | | LINDEN NJ 07036 |

| New/Used | Year | Make/Model | Vehicle Identification Number | Primarily For Which Purchased |
|---|---|---|---|---|
| USED | 2009 | Mercedes-B | 4JGBB22E59A447353 | ☐ Personal |

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| 2.21 % | $ 3324.31 | $ 30898.95 | $ 38223.26 | $ 47383.26 |

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | 509.55 | Monthly beginning 04/01/2013 |

**NO COOLING OFF PERIOD**

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may cancel it if the Seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**NOTICE TO RETAIL BUYER**

1. Do not sign this contract in blank.
2. You are entitled to a copy of the contract at the time you sign.
3. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

# EXHIBIT "C"



900000307997 **STO**

## VEHICLE SERVICE CONTRACT APPLICATION
### FAILURE TO MARK APPLICABLE BOXES IN THIS SCHEDULE MAY RESTRICT COVERAGE

**SCHEDULE**

| CONTRACT HOLDER'S LAST NAME | FIRST NAME | INITIAL | TELEPHONE |
|---|---|---|---|
| LOCKE | JAYANN A | | (973) 380-4174 |

| STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1020 BELMONT AVE | NORTH HALEDON | NJ | 07508 |

| SELLER NAME | | SELLER PHONE NUMBER |
|---|---|---|
| DELUXE AUTO SALES | | (908) 474-5222 |

| STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 731 E EDGAR RD | LINDEN | NJ | 07036 |

| LIENHOLDER NAME | ADDRESS |
|---|---|
| CAPITAL ONE AUTO FINANCE | P.O. BOX 660068    SACRAMENTO    CA    95866 |

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|
| 2009 | Mercedes-Benz | M-Class | 4JGBB77E99A447393 |

| ODOMETER READING AT CONTRACT PURCHASE DATE | VEHICLE SELLING PRICE | CONTRACT PURCHASE PRICE |
|---|---|---|
| 83,435 | $ 30,000.00 | $ 3,650.00 |

| VEHICLE SERVICE CONTRACT PURCHASE/EFFECTIVE DATE | EXPIRATION DATE | EXPIRATION ODOMETER READING |
|---|---|---|
| Month 03  Day 02  Year 2015 | 3/2/2017 | 107,435 |

| VEHICLE IN SERVICE DATE | VEHICLE QUALIFICATION: | |
|---|---|---|
| Month 03  Day 02  Year 2015 | ☐ NEW VEHICLE PLAN | ☒ USED VEHICLE PLAN |

**CHOOSE PLAN:** ☐ PRIMARY PLAN  ☐ PRIMARY PLUS PLAN  ☒ SUPREME PLAN  ☐ ULTIMATE PLAN  ☐ ULTIMATE WRAP PLAN

**SURCHARGES:** PRIMARY PLANS: ☐ SEALS & GASKETS   ALL PLANS: ☒ LUXURY ELECTRONIC COMPONENTS  ☐ LIFT KIT/TIRE MODIFICATION

| SELECT TERM | USED VEHICLE PLANS PRIMARY, PRIMARY PLUS, SUPREME, ULTIMATE PLANS | ☐ 12 MONTHS / 12,000 MILES | ☒ 24 MONTHS / 24,000 MILES | ☐ 30 MONTHS / 30,000 MILES | ☐ 36 MONTHS / 36,000 MILES |
|---|---|---|---|---|---|
| | NEW VEHICLE PLANS ULTIMATE PLAN | ☐ 60 MONTHS / 100,000 MILES | ☐ 72 MONTHS / 75,000 MILES | ☐ 72 MONTHS / 100,000 MILES | ☐ 84 MONTHS / 100,000 MILES |
| | ULTIMATE WRAP PLAN | ☐ 60 MONTHS / 60,000 MILES | ☐ 72 MONTHS / 70,000 MILES | | |
| | | ☐ 60 MONTHS / 100,000 MILES | ☐ 84 MONTHS / 100,000 MILES | ☐ 120 MONTHS / 100,000 MILES | |

**DEDUCTIBLE:** ☒ $100.00 DEDUCTIBLE  ☐ $50.00 DEDUCTIBLE  ☐ $0.00 DEDUCTIBLE  ☐ DISAPPEARING DEDUCTIBLE OPTION
(If a deductible is not selected, a one hundred dollar ($100) deductible will apply)

## ACKNOWLEDGEMENT

I applied for a **Service Contract** covering the motor vehicle described above, which must meet Our underwriting guidelines and is subject to acceptance by the Administrator. I agree that the time and mileage limits indicated in this Application/Schedule begin to run from the **Contract Purchase Date**, even though any components or parts covered by a manufacturer, supplier, or other warranty are *NOT* covered by my **Service Contract** until expiration of the manufacturer, supplier, or other warranty. See "Eligibility and Key Terms". **I understand that my Service Contract term includes any periods of applicable manufacturers' warranties.**

I understand that proper authorization by the Claims Service Center is required on repairs covered by this **Service Contract**. (Call **800-900-6229**)

I further understand that any **Mechanical Breakdown**, loss, or damage that results from a pre-existing condition* is not covered by this **Service Contract** (*refer to State Changes)

☐ Please select this box if **You** plan to use **Your Vehicle** in any of the following ways: Any government or business purpose, pick-up/delivery service, company pool use, business travel when used by more than one driver, service/repair calls, route work, job site activities, construction, farming, ranching or hauling.

I understand the purchase of this **Service Contract** is not required to purchase or obtain financing of my vehicle. The **Contract Purchase Price** shall be paid as a one-time fee.

My signature below means that I have reviewed and understand the time and mileage limitations, coverage, and exclusions, and that the repair of non-covered components is excluded from coverage. I have reviewed all the coverage and options available. All of the options I wish to purchase are clearly marked above. I have read and understand "Your Responsibilities" section of the **Service Contract**. I hereby declare that I have received all 12 pages of the **Service Contract** and the above information is correct.

_____     _____     _____
CONTRACT HOLDER'S SIGNATURE          DATE          SELLER'S SIGNATURE

Administrator and Obligor (In Wisconsin, Provider): OwnerGUARD Corporation
1785 Hancock Street • Suite 100 • San Diego, CA 92110 • (800) 900-6229

♦ WHITE – ADMINISTRATOR          ♦ YELLOW – SELLER          ♦ PINK – LENDER          ♦ WHITE – APPLICANT

LZX 9/155                                                                                          426-2021-0514

# EXHIBIT "D"

JAYAMM A LOCKE
1020 BELMONT AVE

NORTH HALEDON          NJ  07508



*Deluxe*

AUTO SALES INC.
731 E. Edgar Road
Linden, NJ 07036
Phone: (908) 474-5222
Fax: (908) 474-5223
www.deluxenj.com

CUSTOMER COPY   PAGE 1

| DATE | YEAR | MAKE | MODEL | VIN | STK/CUS | MILES IN | MILES OUT | TAG |
|------|------|------|-------|-----|---------|----------|-----------|-----|
| 07/01/16 | 09 | MERCEDES-B | ML63 AMG | 4JGBB77E99A447393 | 2848 | 104961 | 104962 | |

| SERVICE DATE | NOTIFIED | SVC ADV | PROMISED DATE/TIME | LICENSE | RATE | PAYMENT | INV. DATE |
|--------------|----------|---------|--------------------|---------|------|---------|-----------|
| 03/02/15 | 07/02/16 | 02 | 00:00 | | 110.00 | 01 | 07/02/16 |

| R.O. NUMBER | TAX ID | HOME PHONE | BUSINESS PHONE | | |
|-------------|--------|------------|----------------|--|--|
| 14000 | | 973-380-4174 | | BLACK | 3 |

============================== REPAIR LINE 001 ==============================
CUSTOMER STATES PERFORM LUBE (IF NEEDED), OIL & FILTER CHANGE
PERFORM LUBE (IF NEEDED), OIL & FILTER CHANGE
CHANGE OIL & FILTER, LUBE IF NEEDED, CHECK TIRE PRESSURES, CHECK AND TOP UP FLUIDS,
CHECK BELTS, HOSES/ AS PER WEO - WE OWE CUSTOMER 3 OIL CHANGES- 2ND OIL CHANGE DONE
CUSTOMER IS OWED 1 MORE OIL CHANGE IN 1 YEAR/10,000 MILES.
Bill Code - UP

| | | | | | |
|--|--|--|--|--|--|
| LOF | LOF | | 20 M A | | 15.00 |
| | | | Total Labor | | 15.00 |
| YY | LF670 | OIL FILTE | 1 | | 14.66 |
| YY | 5W40 | OIL | 10 | | 85.00 |
| | | | Total Parts | | 99.66 |
| | | | Total Line | | 114.66 |

============================== REPAIR LINE 002 ==============================
OIL LEAK
FOUND L &R VALVE COVER GASKETS LEAKING
CALLED CUSTOMERS EXTENDED WARRANTY/ AMERIPLUS CL#17856-2542 P 125 L 3.5 HOURS
CUSTOMER HAS $100 DEDUCTIBLE
Bill Code - S  Deductible - 100.00

| | | | | | |
|--|--|--|--|--|--|
| 99 | GENERAL REPAIRS | | 20 M A | | 437.50 |
| | | | Total Labor | | 437.50 |
| YY | 1560162421 | GASKET | 1 | | 28.50 |
| YY | 1560162521 | GASKET | 1 | | 28.50 |
| | | | Total Parts | | 57.00 |

SUBLET:
1560162121 GASKET
Bill Code - S  PO Number

| | | | | | |
|--|--|--|--|--|--|
| | | | M | | 68.00 |
| | | | Total Sublet | | 68.00 |
| | | | Total Line | | 562.50 |

============================== REPAIR LINE 003 ==============================
NEW JERSEY STATE SAFETY INSPECTION
SERVICE B DUE: SPARK PLUGS, AIR AND CABIN FILTERS, BRAKE FLUID FLUSH, COOLANT FLUSH,
TRANS SERVICE, AND WIPERS FRONT AND REAR $1295 PLUS TAX/ TECH ALSO RECCOMENDS  TIRES
AND ALIGNMENT

*will email the price on tuesday*

I hereby authorize the above repair work to be done along with the necessary material and hereby
grant you and/or your employees permission to operate the car or truck herein described on street,
highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is
hereby acknowledged on above car or truck to secure the amount of repairs thereto. Warranty on
parts and labor is AS SPECIFIED BY THE PART MANUFACTURER. Warranty work has to be
performed in our shop & cannot exceed the original cost of repair.

| | |
|--|--|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| MISC. SALES | |
| MATERIALS | |
| TOTAL CHARGE | |
| DEDUCTIBLE | |
| SALES TAX | |
| OTHER PAY | |
| CUSTOMER PAY | |

Signature X _____     Date _____

# EXHIBIT "E"

JAYAMM A LOCKE
1020 BELMONT AVE

NORTH HALEDON        NJ  07508


*Deluxe*

AUTO SALES INC.
731 E. Edgar Road
Linden, NJ 07036
Phone: (908) 474-5222
Fax: (908) 474-5223
www.deluxenj.com

CUSTOMER COPY   PAGE 2

| DATE | YEAR | MAKE | MODEL | VIN | STK/CUS | MILES IN | MILES OUT | TAG |
|---|---|---|---|---|---|---|---|---|
| 07/01/16 | 09 | MERCEDES-B | ML63 AMG | 4JGBB77E99A447393 | 2848 | 104961 | 104962 | |

| SERVICE DATE | NOTIFIED | SVC ADV | PROMISED DATE/TIME | LICENSE | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 03/02/15 | 07/02/16 | 02 | 00:00 | | 110.00 | 01 | 07/02/16 |

| R.O. NUMBER | TAX ID | HOME PHONE | BUSINESS PHONE | | |
|---|---|---|---|---|---|
| 14000 | | 973-380-4174 | | BLACK | 3 |

Bill Code - C
NJSI        NJ STATE INSP                    M A
Payment Type - 01 CASH           100.00

I hereby authorize the above repair work to be done along with the necessary material and hereby grant you and/or your employees permission to operate the car or truck herein described on street, highways or elsewhere for the purpose to testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car or truck to secure the amount of repairs thereto. Warranty on parts and labor is AS SPECIFIED BY THE PART MANUFACTURER. Warranty work has to be performed in our shop & cannot exceed the original cost of repair.

Signature X _____        Date _____

| | |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| MISC. SALES | |
| MATERIALS | |
| TOTAL CHARGE | |
| DEDUCTIBLE | 100.00 |
| SALES TAX | |
| OTHER PAY | 462.50 |
| CUSTOMER PAY | 100.00 |

EXHIBIT "F"

**K & E Service Center**
573 Clifton ave
Clifton NJ 07011
973-866-6191

kandeservicecenter.com

# Invoice

Date:            05/18/2016
**Invoice No.:**   **10148**
Due Date:        05/19/2016
Salesperson:     ervis

**Bill To:**
**2008 AMG**
2008 MERCEDES BENZ ML63 AMG 6.3

973-380-4174

| Qty | Description | Unit Price | Total |
|---|---|---|---|
| 1 | VEHICLE HAS ROUGH IDLE | | |
| 1 | PERFOMRED COMPLETE DIAGNOSIS AND FOUND NO FAULTS IN THE SYSTME , SMOKE TEST THE COMPETE ENGIEN AND FOUND THE INTAKE GASKET LEAKING | | |
| 1 | REMOVED THE COMPLETE INTAKE ASSEMLBY AND RPELACED ALL GAKSETS | $500.00 | $500.00 |
| 1 | AFTER WORK COMPLETE FOUND THE TANK VENT VALVE STICKING OPEN REPLACED THE FUEL TANK VENT VAVLE | $100.00 | $100.00 |
| 1 | CUST DROVE VEHICLE BACK ROUGH IDLE, RECHECK THE FAULTS, NO FAULTS IN THE SYSTME AND NO LIGHT ON , SMOKE TEST THE ENGINE AGAIN AFTER 30MINS FOUND SMOKE COMING OUT THE CRANKCASE VENT VALVE | | |
| 1 | REPLACED THE COMPLETE CRANKCASE VENT VALVE | $300.00 | $300.00 |
| 1 | TEST VEHICLE VEHILCE AFTER RECHECK AGANIN FOUND FAULTS FOR TEST PARGE VENT VALVE, REPLACE THE VALVE AND CLEAR ALL FAULTS | $50.00 | $50.00 |

| | |
|---|---|
| Subtotal | $950.00 |
| Total Amt | $950.00 |
| Balance Due | $950.00 |

Please contact us for more information about payment options.

Thank you for your business.

EXHIBIT "G"

CUSTOMER #: 31022     220412

**prestige motors, inc.**

PRE-WORKORDER

JAYANNE LOCKE
1020 BELMONT AVE
HALEDON, NJ 07508
JUJUBEANS2007@GMAIL.COM

755 Route 17 South
Paramus, NJ 07652-2984
(201) 265-7804
Fax: (201) 483-2782

Page 1 of 2

Mercedes-Benz

HOME:     CONT: (973) 380-4174

drive**prestige**.com

BUS:     CELL: (973) 380-4174

SERVICE ADVISOR: Andy Mrasz

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|---|---|---|---|---|---|---|
| BLACK | 2009 | Mercedes ML63 | 4JGBB77E99A447393 | C58FDH | 107212 | 9879 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 01/01/2009 | | | | | | | 12/13/2016 |

| R.O. OPENED | READY | OPTIONS: |
|---|---|---|
| 11/08/2016 | | |

| LINE | OP CODE | DESCRIPTION | DURATION | ESTIMATE |
|---|---|---|---|---|
| # A | DIAG | C/S COOLANT LIGHT COMING ON, HAD RADIATOR REPLACED HERE 10/2015. C/S COOLANT IS BUBBLING IN RESERVOIR $299.95 DIAG FEE PLUS TAX, WILL PROVIDE ESTIMATE | | 299.98 |
| # B | LC | LOANER CAR PROVIDED BY PRESTIGE MERCEDES- BENZ DURING VEHICLE SERVICE. PLEASE RETURN CAR WITHIN 24 HOURS OF COMPLETION. | | 0.00 |
| # C | MISC | CUSTOMER STATES CHECK ENGINE LIGHT ON, VEHICLE REVVING HIGH AT IDLE/S VEHICLE HAS BEEN REVVING HIGH AT IDLE SINCE 10/2015 | | 0.00 |
| | | ADDITIONAL SERVICE RECOMMENDATIONS | | |
| # D | MISC | Replace head bolts *35 hrs. @ 149.99 per hour* | | 5580.50 |
| # E | MA10 | Oil and Filter - Change | | 194.58 |
| # F | MISC | Replace Aux. coolant pump | | 541.70 |
| # G | CS10 | Thermostat and Gaskets Replace | | 555.83 |
| # H | ENGWASH | CLEAN EXCESS OIL FROM ENGINE BAY AFTER REPAIR | | 105.00 |
| # I | STAR | Diagnose Air Suspension | | 299.95 |
| # J | BR14 | Brake Pads, Rear - Replace | | 474.63 |
| # K | MISC | Replace left front axle | | 1797.05 |

*MUST BE DONE*

*Optional*

**PAYMENT TERMS:** I agree to pay for the inspection and repairs I authorize, along with the necessary materials, in Cash or approved credit card upon completion of the Repairs unless the Dealership agrees to other payment arrangements in advance. An express mechanic's lien is hereby acknowledged to secure the cost of labor, materials, and any other authorized charges.

**CHARGES FOR DIAGNOSTIC/PARTIALLY COMPLETED WORK** If I authorize commencement of repairs or disassembly of the vehicle for diagnostic purposes and do not authorize completion of a repair or service, I understand that a charge will be imposed for disassembly, diagnosis and reassembly or partially completed work and I agree to pay the same. Such charges will be directly related to the actual amount of labor and parts involved in the inspection, repair or service.

**STORAGE CHARGES** I understand that a storage charge equal to $0.00 will be assessed and shall accrue daily if I fail to pick up the vehicle within 0 working days from the date I am notified that the work on the vehicle has been completed or after the communication of an estimate if I fail to authorize repairs.

**WARRANTY STATEMENT AND DISCLAIMER: PLEASE SEE THE REVERSE SIDE OF THIS REPAIR ORDER FOR THE DEALERSHIP'S LIMITED WARRANTY.**

I understand that the Dealership is not responsible for any delays caused by the unavailability of parts or shipping by the parts manufacturer, distributor or transporter, nor is it responsible for loss or damage to the vehicle or articles left in the vehicle in case of fire, theft, or any other cause beyond its control.

I hereby grant the Dealership permission to operate the vehicle on streets, highways or public roadways for the purpose of testing and/or inspecting the vehicle. I authorize the retrieval of on-board data as needed to facilitate vehicle repair, as well as sharing that data with the vehicle manufacturer for diagnostic and research purposes.

Customer X _____ Date _____

**PARTS:** All parts installed are new unless otherwise indicated. Replaced parts will be returned to you if you request their return before we commence the repairs, provided that they are not impractical to return by virtue of their size, weight or other similar factors. In addition, we are not required to return those parts and components which must be returned to the manufacturer or distributor or are sold on an exchange basis.

Discard Replaced Parts _____ (INITIAL)   Save Replaced Parts _____ (INITIAL)

**SHOP SUPPLY COSTS:** A charge equal to 0% of the total cost of labor and parts, not to exceed $00.00, will be added to the Repair Order for shop supplies used in connection with the repair.

PRELIMINARY ESTIMATE $ 12489.48

**ESTIMATE NOTICE:** YOU HAVE THE RIGHT TO RECEIVE A WRITTEN ESTIMATE. PLEASE SELECT ONE OF THE FOLLOWING AND SIGN BELOW:

_____ I REQUEST A WRITTEN ESTIMATE.

_____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____. THE DEALERSHIP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL AUTHORIZATION.

_____ I HEREBY WAIVE MY RIGHT TO A WRITTEN ESTIMATE.

SIGNATURE _____ DATE _____

| Original Estimate (Parts & Labor) | Authorized/Requested Add'l Repairs | Approved By: | Date & Time | Telephone # Called |
|---|---|---|---|---|
| $ | $ | | | |
| Revised Estimate | | | | |
| $ | $ | | | |

DealerCAR ©2000 ADP (10/10)   SERVICE WORKORDER TYPE 2 - EWOC - "LIMITED WARRANTY" - NEW JERSEY- 06243 17

CUSTOMER #: 31022

220412

PRE-WORKORDER

Page 2 of 2

# prestige motors, inc.

755 Route 17 South
Paramus, NJ 07652-2984
(201) 265-7804
Fax: (201) 483-2782

Mercedes-Benz

drive**prestige**.com

JAYANNE LOCKE
1020 BELMONT AVE
HALEDON, NJ 07508
JUJUBEANS2007@GMAIL.COM

HOME:          CONT: (973) 380-4174

BUS:            CELL: (973) 380-4174

SERVICE ADVISOR: Andy Mrasz

| COLOR: | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN/OUT | TAG |
|--------|------|------------|-----|---------|----------------|-----|
| BLACK | 2009 | Mercedes ML63 | 4JGBB77E99A447393 | C58FDH | 107212 | 9879 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|----------|------------|------------|----------|--------|------|---------|-----------|
| 01/01/2009 | | | | | | | 12/13/2016 |

| R.O. OPENED | READY | OPTIONS: |
|-------------|-------|----------|
| 11/08/2016 | | |

| LINE | OP CODE | DESCRIPTION | DURATION | ESTIMATE |
|------|---------|-------------|----------|----------|
| # L | MB4T | MOUNT AND BALANCE (4) TIRES | | 1604.00 |
| # M | ALIGN | PERFORM 4 WHEEL ALIGNMENT | | 186.86 |

3 optional

*TOTAL AFTER TAX = $7824.46.*
*I will do the job for*
*$7400.00*
*TOTAL*

(RN)

Mercedes-Benz

| | |
|---|---|
| Subtotal | 11640.08 |
| Shop Charges | 34.95 |
| Sales Tax | 814.45 |
| Total | 12489.48 |

Printed On 12/13/2016 7:09 PM

Estimate Expires on 01/12/2017

**PAYMENT TERMS:** I agree to pay for the inspection and repairs I authorize, along with the necessary materials, in Cash or approved credit card upon completion of the Repairs unless the Dealership agrees to other payment arrangements in advance. An express mechanic's lien is hereby acknowledged to secure the cost of labor, materials, and any other authorized charges.

**CHARGES FOR DIAGNOSTIC/PARTIALLY COMPLETED WORK:** If I authorize commencement of repairs or disassembly of the vehicle or a vehicle component for diagnostic purposes and do not authorize completion of a repair or service, I understand that a charge will be imposed for disassembly, diagnosis and reassembly or partially completed work and I agree to pay the same. Such charges will be directly related to the actual amount of labor and parts involved in the inspection, repair or service.

**STORAGE CHARGES** I understand that a storage charge equal to $0.00 will be assessed and shall accrue daily if I fail to pick up the vehicle within 10 working days from the date I am notified that the work on the vehicle has been completed or after the communication of an estimate if I fail to authorize repairs.

**WARRANTY STATEMENT AND DISCLAIMER; PLEASE SEE THE REVERSE SIDE OF THIS REPAIR ORDER FOR THE DEALERSHIP'S LIMITED WARRANTY.**

I understand that the Dealership is not responsible for any delays caused by the unavailability of parts or shipping by the parts manufacturer, distributor or transporter, nor is it responsible for loss or damage to the vehicle or articles left in the vehicle in case of fire, theft, or any other cause beyond its control.

I hereby grant the Dealership permission to operate the vehicle on streets, highways or public roadways for the purpose of testing and/or inspecting the vehicle, as well as sharing that data with the vehicle manufacturer for diagnostic and research purposes.

Customer X _____          Date _____

DealerCAR ©2006 ADP (10/10)   SERVICE/WORKORDER TYPE 2 - SVVC - "LIMITED WARRANTY" - NEW JERSEY- (664133)

**PARTS:** All parts installed are new unless otherwise indicated. Replaced parts will be returned to you if you request their return before we commence the repairs, provided that they are not impractical to return by virtue of their size, weight or other similar factors. In addition, we are not required to return those parts and components which must be returned to the manufacturer or distributor or are sold on an exchange basis.

Discard Replaced Parts _____ (INITIAL)   Save Replaced Parts _____ (INITIAL)

**SHOP SUPPLY COSTS:** A charge equal to 0% of the total cost of labor and parts, not to exceed $00.00, will be added to the Repair Order for shop supplies used in connection with the repair.

PRELIMINARY ESTIMATE $ _____

ESTIMATE NOTICE: YOU HAVE THE RIGHT TO RECEIVE A WRITTEN ESTIMATE. PLEASE SELECT ONE OF THE FOLLOWING AND SIGN BELOW:

_____ I REQUEST A WRITTEN ESTIMATE.

_____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEEDS _____, THE DEALERSHIP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL AUTHORIZATION.

_____ I HEREBY WAIVE MY RIGHT TO A WRITTEN ESTIMATE.

SIGNATURE _____          DATE _____

| Original Estimate (Parts & Labor) | Authorized Requested Add'l Repairs | Approved By. | Date & Time | Telephone # Called |
|-----------------------------------|-----------------------------------|--------------|-------------|---------------------|
| $ | $ | | | |
| Revised Estimate | | | | |
| $ | $ | | | |

# EXHIBIT "H"

*Serafin v. Weisleder, Inc.*                    Docket No.   OCN-L-450-00

## ORDER

Chambers of Honorable Donald F. Campbell, J.S.C.
213 Washington Street
Toms River, NJ 08754
PH (732) 929-2179

Edward Serafin and Gale Serafin on their
own behalf and on behalf of all others
similarly situated

                          Plaintiff(s),

            versus

                          Defendant(s)
Weisleder, Inc., Household Automotive
Finance Corporation, and John Doe.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
OCEAN COUNTY

Docket No.  OCN-L-450-00
Civil Action

Motion to Dismiss Complaint

IT IS ORDERED as follows:

MOTION TO DISMISS COMPLAINT.   Defendant's motion to dismiss plaintiff's complaint
is hereby denied. In deciding a motion to dismiss we must view the facts in a light most
favorable to the non-moving party. Viewing the facts in such a light we believe that a jury may
conclude that defendant's practice of retaining 45% of the stated purchase price for the extended
warranty is unconscionable under the New Jersey Consumer Fraud Protection Act. We therefore
deny defendant's motion to dismiss plaintiff's complaint.

ORDERED that a copy of the within Order shall be served upon all parties within seven (7)
days of the date herein.

SIGNED this 9th day of November, 2000.

*Serafin v. Weisleder, Inc.*                    Docket No.   OCN-L-450-00

DONALD F. CAMPBELL, J.S.C.

CC:

       Ronald L. Lueddeke
       215 Morris Avenue
       Spring Lake, New Jersey 07090

       Robert Billet
       Billet & Connor
       4101 South Route 42
       P.O. Box 1112
       Turnersville, New Jersey 08012-1112

       H. Frank Carpentier
       Carton, Arvanitis, McGreevy, Argeris, Azeger & Aikins, L.L.C.
       4001 Route 66 at Garden State Parkway
       P.O. Box 1229
       Asbury Park, NJ 07712

WDa 55

EXHIBIT "I"

## Introduction

Last year there were approximately 10 million new cars registered nationwide[1]; for the same period, there were nearly 650,000 new passenger vehicles registered in New York State.[2] Nearly half of all new car buyers purchase extended service contracts.[3] Service contracts are purchased as a safety net against expensive repair and maintenance costs not covered by the manufacturer's warranty or that may arise after the warranty has expired.

Under a service contract, the issuer agrees, for a fee, to perform, over a fixed period of time or for a specified mileage, services relating to the maintenance or repair, or both, of a motor vehicle.[4] Service contracts vary according to the duration and type of coverage offered, the deductible per repair, and the model car involved. A service contract differs from a warranty, as already noted, because it pays for repairs or maintenance not covered by a warranty or that occur after the warranty runs out.

Some issuers, including GM, Ford and Chrysler, provide their dealers with a suggested retail price ("MSRP") to be charged to the consumer for their service contracts; others do not.[5] According to the domestic manufacturers, the MSRP is designed to incorporate a generous dealer profit: often the MSRP is set at, or close to, twice the wholesale price.

Unlike the MSRP for a new car, which, by federal law, must be disclosed to consumers,[6] there are no comparable disclosure requirements with respect to the MSRP for extended service contracts, and dealers generally do not disclose it. Also, in contrast to the purchase of a car itself, for which consumers negotiate on the price and frequently pay less than the MSRP or "sticker price", consumers do not regularly bargain over the price of the extended service contract, but rather pay whatever the dealer asks. As a result, many dealers, not legally required to disclose the MSRP, take advantage of this situation and charge as much as six times the MSRP, which can be as high as twelve times

---

[1]   Automotive News, November 20, 1989, p.128

[2]   Statistics furnished by the New York State Department of Motor Vehicles (DMV).

[3]   The Car Book, 1990 by Jack Gillis, p.77;  Consumer Reports, April 1990, p.226

[4]   See, Magnuson-Moss Warranty Act, 15 U.S.C. 2301(8).

[5]   For example, in addition to the three major domestic manufacturers, Volvo, Mazda and Subaru also provide their dealers with MSRP's for their service contracts. Toyota, Nissan and Mitsubishi issue service contracts but do not provide an MSRP.

[6]   The Monroney sticker law, 15 U.S.C. 1231, requires such disclosure on a window sticker.

the dealer cost for the service contract.

Moreover, dealers fail to notify consumers that, following the sale of the car, the manufacturer will frequently offer to the consumer, through direct mail solicitation, the exact same service contract at the MSRP. Thus, many dealers are concealing both the MSRP and the fact that the consumer may purchase the same contract for less than the dealer charges by waiting for and responding to the mail solicitation.

### Summary of Findings

This report reviews pricing data submitted by GM, Ford, Chrysler and Toyota at the request of the Attorney General for dealer sales of service contracts to New York consumers between August and December, 1989. The review of over 1700 transactions shows that in 54% (924) of the contracts sold, consumers paid in excess of the MSRP or, for Toyota, which does not provide an MSRP, in excess of an assumed MSRP of twice the dealer's cost – the highest common MSRP. In cases where consumers were charged above the actual or assumed MSRP, those consumers paid an average of $265 above that amount, giving the dealer an average mark-up of 76% over the actual or assumed MSRP.

In the aggregate, based on the data reviewed in this report, it may be projected that the total amount charged above the MSRP for 1989 by GM, Ford and Chrysler dealers on the sale of manufacturer issued service contracts in New York was $15.5 million. The estimated total amount charged by Toyota dealers above twice the dealer cost was over $2.5 million for 1989. When additional dealer sales of service contracts issued by other manufacturers, independent warranty companies and the dealers themselves are taken into account, for 1989 alone, approximately 175,000 New York consumers annually paid in excess of $25 million over and above the MSRP or, where no MSRP is provided, in excess of twice the dealer cost for service contracts.[7] Since the practices identified are nationwide in scope, it may be estimated that more than two million consumers were overcharged in an amount in excess of $300 million.[8]

To combat these abuses, the Attorney General has proposed state legislation to require dealers selling service contracts to make full disclosure of material information provided by the manufacturer or issuer of the contract, including any MSRP, in order to

---

[7]    The figure of $25 million is computed as follows: since 50% of almost 650,000 new car buyers purchased extended service contracts, and 54% of those were subject to dealer excessive pricing practices, about 175,000 consumers were overcharged. The four manufacturers named above represent approximately 65% of the market; thus, their overcharges of over $15 million can be conservatively extrapolated to an industry total of overcharges well in excess of $25 million.

[8]    16 million x 50% x 54% = number of consumers overcharged. Since New York has 6.5% of the total 1989 new car sales, the corresponding amount for overcharges nationally is over $300 million.

# EXHIBIT "J"

SUPERIOR COURT OF NEW JERSEY

CHAMBERS OF
MATHIAS E. RODRIGUEZ
JUDGE



MIDDLESEX COUNTY COURT HOUSE
P.O. BOX 964
NEW BRUNSWICK, NEW JERSEY 08903 - 0964



May 7, 2001

Ronald L. Lueddeke, Esq.          Donald Maurice, Esq.
215 Morris Ave.                   Marino and Maurice, PC
Spring Lake, NJ 07762             250 Route 28
                                  Bridgewater, NJ 08807

Salvatore Giampiccolo, Esq.
Waters, MM PC
300 Lighting Way
Box 1560
Secaucus, NJ 07096

re: Perry v. Route 22 Nissan, Inc. et al
    Docket No. 11558-99

Dear Counselors:

    Enclosed is the court's decision on the defendant's and plaintiff's motions for summary
judgment.

    Thank you for your kind cooperation.

Yours very sincerely,

MATHIAS E. RODRIGUEZ, J.S.C.

/cr

If you require any accommodations as a result of a disability, please call (732) 981-3211/3210

NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE COMMITTEE ON OPINIONS

| | |
|---|---|
| JOE PERRY,<br><br>    Plaintiff,<br><br>    vs.<br><br>ROUTE 22 NISSAN, INC., UNITED<br>NATIONAL BANK, AND JOHN DOE,<br>corporations and individuals,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MIDDLESEX COUNTY<br><br>Docket No. L-11558-99<br><br>OPINION |

Decided May 7, 2001

Attorney for Plaintiff, Ronald Lueddeke, Esq. (Law Offices of
Ronald L. Lueddeke)

Attorney for Defendant, United National Bank, Donald Maurice,
Esq. (Marino and Maurice, P.C.)

Attorney for Defendant, Route 22 Nissan, Salvatore Giampiccolo,
Esq. (Waters, McPherson, McNeill, P.C.)

MATHIAS E. RODRIGUEZ, J.S.C.

    This case arises out of the purchase of a motor vehicle pursuant to a Retail Installment

Contract. The Plaintiff seeks relief alleging Route 22 Nissan failed to disclose the price paid for

the extended warranty and the price paid for credit insurance. Route 22 Nissan drafted the Retail

Installment Contract which was then assigned to United National Bank. Plaintiff filed a five

count Complaint in the Superior Court, Middlesex County against Route 22 Nissan, Inc.

(hereinafter "Nissan") and United National Bank (hereinafter "United") for alleged violations of

the Federal Truth in Lending Act (hereinafter "TILA") and the New Jersey Consumer Fraud Act

(hereinafter "CFA")[1].  This court must now decide United's motion for summary judgment and Route 22 Nissan's cross-motion for summary judgment, as well as Plaintiff's cross-motion for summary judgment as to Defendant Route 22 Nissan.

## FACTS

On March 16, 1996 the Plaintiff, Joe Perry, entered into Retail Installment Sale contract with Rt. 22 Nissan to purchase a used 1993 Nissan 300 ZX for $24, 897.00.

In addition, Plaintiff purchased a service contract for the amount of $1,200 of which $822 was kept by Nissan; credit life insurance for the amount of $446.61 of which $205.35 was kept by Nissan; and disability insurance for the amount of  $910.41 of which $400.58 was kept by Nissan. Disclosure of the amounts retained by Nissan was not made.

On March 16, 1996 the Retail Installment Contract was assigned to United National Bank.  The loan amount was $32,867.04.

Plaintiff negotiated the purchase price of the vehicle and the amount of his trade-in vehicle, but the Plaintiff does not recall discussing the warranty or insurance agreement or the cost of either.

---

[1]The following is a brief outline of each Count of the Plaintiff's complaint:
Count 1 - II alleges, on behalf of himself and others similarly situated, that the Defendant's violated TILA, 15 U.S.C.A. 1638, et seq.,, 12 C.F.R. 226.1, et seq. (Reg. Z).
Count 2 - II alleges, on behalf of himself and others similarly situated, that Defendant's violated the New Jersey CFA.
Count 3 - II alleges, on behalf of himself and other similarly situated, Breach of the implied covenant of good faith and fair dealing.
Count 4 - II, on behalf of himself and others similarly situated, alleges that the money paid for the extended warranty amounted to money paid by mistake.
Count 5 - II alleges, on behalf of himself only, violations of CFA.  Specifically, Plaintiff alleges that the acts of the Defendants resulted in his paying a higher finance interest rate and that Defendant, United, wrongfully repossessed the Plaintiff's vehicle.

Plaintiff stopped making payments on the loan as of June 30, 1999. However, Plaintiff disputes that he defaulted on his loan, and claims that he made an alternative payment agreement with United (See Cert of Nancy Perry attached to Opp).

On November 7, 1997 Plaintiff's vehicle was repossessed for the first time. Plaintiff retrieved the vehicle. United requested that Plaintiff's credit insurance policy be canceled as of this repossession date and that the price be refunded to the provider. Plaintiff's extended service warranty expired on its own in March 1997. (Plaintiff does not admit or deny this fact. Plaintiff simply states that "the service agreement speaks for itself.")

In January of 1999 Plaintiff's vehicle was repossessed for the second time. Plaintiff once again retrieved the vehicle.

On October 4, 1999 Plaintiff's vehicle was repossessed for the third and final time. Plaintiff's vehicle was sold at public auction, after which United sent to Plaintiff a refund check in the amount of $2,124.80.

On December 2, 1999 Plaintiff brought suit on behalf of himself and others similarly situated against Rt. 22 Nissan and United National Bank for alleged violations of the Federal Truth in Lending Act (TILA), the New Jersey Consumer Fraud Act, and various common law claims

## ANALYSIS

For purposes of clarity this Court will address each Count of Plaintiff's Complaint separately and according to topic.

*Count 1: Truth in Lending Act*

*A. As to United*

Plaintiff concedes that Defendant United is not liable under the Truth in Lending Act.

*B. As to Route 22 Nissan and Plaintiff*

Under TILA, creditors are directed to disclose the total amount financed by a consumer. 15 U.S.C.A. 1638. Creditors are further directed that the amount financed must be itemized and that when itemizing this amount, creditors are to disclose the amount that is or will be paid to third persons on the consumers behalf. Id.

TILA's "safe harbor" provision provides:

"No provision of this section...imposing any liability shall apply to any act done or omitted in good faith conformity with any rule, regulation or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefore, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded or determined by judicial or other authority to be invalid for any reason." 15 U.S.C.A. 1640(f).

In December 1995, the FRB proposed an Official Staff commentary pertaining to Regulation Z. The proposed commentary provided:

"Creditor-imposed charges added to amounts paid to others. A Creditor that offers an item for sale in both case and credit transactions sometimes adds an amount (often referred to as an "upcharge") to a fee charged to a consumer by a third party for a service (such as for a maintenance or service contract) that is payable in an equal amount in both types of transactions, and retains that amount. At its option, the credit[or] may list the total charge (including the portion retained by it) as an amount paid to others, or it may choose to reflect the amounts in the manner in which they were actually paid to or retained by the appropriate parties." 60 Fed. Reg. 62764, 62769 (Dec. 7, 1995).

In April 1996, the Board promulgated a second commentary which was later codified. This more restrictive interpretation of Regulation Z provided:

-4-

"Charges added to amounts paid to others. A sum sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization, the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category 'amount paid to others' language such as '(we may be retaining a portion of this amount).'" 61 Fed. Reg. 14952, 14956 (April 4, 1996)(codified at 12 C.F.R. Pt. 226, Supp. I section 18(c)(1)(iii)(d)).

Defendant Nissan argues that Nissan was acting within TILA's requirements as understood for the time period in question. According to Defendants, the more lenient of the two interpretations, that is, the December 1995 commentary, was applicable when the Plaintiff and Defendant entered into the Retail Install Contract on March 16, 1996. Defendant Nissan relies upon *Green v. Levis Motors, Inc.*, 179 F. 3d 286 (CA 5, 1999).

In *Green*, the 5th Circuit held that the safe harbor provision of the TILA is not available to shield defendants who executed agreements before the Proposed December 1995 commentary on Regulation Z. The court reasoned that because the more lenient December 1995 interpretation did not exist at the time of the challenged disclosure it could not be relied upon.

Plaintiff argues that Nissan cannot claim a good faith defense based upon a proposed FRB commentary (December 1995). Plaintiff cites *Jones v. Bill Heard Chevrolet* 98-6786, 2000 WL 712860 (11th Cir. 6/2/00) in support of this argument. The *Jones* court stated that the defendant could not overcome the "insurmountable obstacle" that the Board's April 1996 commentary did not exist until after the plaintiff's entered into their contract. The court stated that "a party cannot act 'in good faith in conformity with' a regulation or interpretation that does not exist at the time of the disputed act."

-5-

In summary, the court finds that since the safe harbor provision of TILA is applicable to Nissan there is no genuine issue of material fact with regards to Nissan's liability under TILA and summary judgment is appropriate. As a consequence, Plaintiff's cross motion for summary judgment must be denied.

*Count 2, 3, & 4: Affirmative relief pursuant to FTC Holder Rule and NJ Holder Rule as to United.*

The FTC Holder Rule provides that "a holder of a consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto. Recovery by a debtor against a holder is not to exceed the amount paid by the debtor hereunder." See 16 C.F.R. Section 433.2.

The New Jersey Holder Rule provides in pertinent part:

"Any subsequent holder of a consumer note shall be subject to all claims and defenses of the retail buyer against the retail seller arising out of the transaction but no such claim or defense may be asserted against such holder in excess of the time sales price under the retail installment contract for any sale, except that, in the case of the sale of a new motor vehicle , as defined in R.S. 39:10-2, no claim or defense may be asserted against such holder in excess of the time balance under the retail installment contract."

This language was incorporated in the Retail Installment Contract, entered into by the Plaintiff and Defendant Route 22 Nissan and assigned to Defendant United under the section entitled "Notice". The Plaintiff asserts that United is liable under both the FTC Holder Rule and the NJ Holder Rule.

Defendant's contend that no affirmative recovery against United can be awarded under the FTC Holder Rule (and New Jersey Holder Rule) since rescission and restitution are not justified. For this proposition the Defendant relies upon *Daly v. All American Chevrolet*, et. al.,

-7-

an unpublished NJ Superior Ct. Law Div. 9/24/99 (Attached at Exhibit C). The *Daly* court found that to hold an assignee liable pursuant to the mandatory FTC Holder language requires a request for rescission and proof that rescission is warranted. The *Daly* court in part relied upon *Ford Motor Credit Company v. Morgan*, 404 Mass. 537, (Supreme Judicial Court of Mass, Suffolk, 1989); *Field v Chrysler Credit Corp.*, 219 Ill. App. 3rd 530, 580 N.E. 2d 191(App. Ct. 1991); and *Taylor v. Bob O'Connor Ford, Inc.* 198 WL 177689 North Division Illinois.

The *Morgan, supra*, court held that there are a limited number of circumstances where a judgment for damages against the assignee-creditor would be available. One of the circumstances a consumer can maintain an affirmative action against an assignee creditor is if the consumer "commenced payments and received little or nothing of value from the seller." Id. at 542.

The *Field, supra*, court held that a consumer can maintain an action against an assignee creditor for a refund of money paid, but only if the seller's breach was so substantial that rescission and restitution would be justified. *Id.* at 570.

The *Taylor, supra*, court added that a consumer can assert a claim against the assignee creditor only for rescission of the contract.

Plaintiff argues that Defendant is liable under the FTC and NJ Holder Rules. First, Plaintiff argues that this case is distinguishable from *Daly* by pointing out that the Plaintiff is limiting his recovery in this matter to the finders fee or commission received by Nissan (see page 14 of Plaintiff's Opposition). Therefore, Plaintiff asserts there is a question whether he received anything for value when the size of the amount of the commissions are considered.

Secondly, Plaintiff relies upon a letter issued by the FTC on September 25, 1999 which

-8-

stated that the courts are wrong when they limit the affirmative recovery ability under the FTC

Holder rule.  According to the FTC, "the consumer may recover his or her down payment (all

deposits and trade-ins given to the seller), and all installment payments made pursuant to the

contract, but no more."(Attached at Exhibit D of Plaintiff's Opposition Brief).

Plaintiff then turns to *Gonzalez v. North Hudson,* unpublished NJ App. Div. case (1999),

for the proposition that "whatever claim plaintiff, as a retail buyer, had against ... the retail seller,

that claim could be asserted against ... the subsequent holder of the consumer note" under the NJ

Holder Rule.  The App. Div. in *Gonzalez* relied upon N.J.S.A. 17:16C-38-2 which defines a

holders liability under a Consumer Note for said proposition (Attached at Exhibit C of Plaintiff's

Opposition Brief).

This court finds that although the FTC letter, as discussed in the NCLC Reports Volume

18  July/August 1999 edition,  is not binding on this court, it is persuasive evidence that the FTC

did not intend to limit liability under the FTC Holder Rule to only those consumer claims that are

substantial, requiring recission or restitution.  Accordingly, this court finds that the *Daly* court

incorrectly applied the FTC Holder Rule when it limited liability to only recission or restitution.

Therefore,  Defendant United may be held liable under the FTC Holder Rule.

This court further finds that based on the Appellate Divisions decision in *Gonzalez* and

N.J.S.A. 17:16C-38-2, it is clear that whatever claim Plaintiff has against Route 22 Nissan may

be asserted against United as holder of the consumer note or Retail Installment Contract.

Accordingly, Defendant United may be held liable under the NJ Holder Rule as well.

Since a rational fact finder could find United liable as the holder of the consumer note

under both the FTC Holder Rule and the NJ Holder Rule there is a genuine issue of material fact

which precludes summary judgment.

*Count 2: New Jersey Consumer Fraud Act as to United, Route 22 Nissan and Plaintiff*

The CFA prohibits:

"[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby...." N.J.S.A. 56:8-2.

The CFA provides individual consumers with a cause of action to recover refunds, NJSA 56:8-2.11 to 2.12, and treble damages for violations, whether in good faith or otherwise, NJSA 56:8-19.

The "rights, remedies and prohibitions" created by the CFA are cumulative to any other rights, remedies, and prohibitions created by the common law or other statutes. N.J.S.A. 56:8-2.13.

The New Jersey Supreme Court in *Lemelledo v. Beneficial Mgmt*, 150 N.J. 255, 264 (1977), explained that "[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud."

The *Lemelledo* court also explained that "[i]n determining whether the existence of other regulations creates an exemption to the CFA for particular conduct that otherwise would fall within its provisions, it should ordinarily be assumed that the CFA applies to the covered practice. That assumption is appropriate because of the strong and sweeping legislative remedial purpose apparent in the CFA." Id. at 553.

"In order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied,..., that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes." Id. at 554. The *Lemelledo* court explained that the court "must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. We stress that *the conflict must be patent and sharp*, and must not simply constitute a mere possibility of incompatibility." Id. at 554. (Emphasis added.)

In order for the Plaintiff to succeed under the CFA, the Plaintiff must demonstrate that s/he "suffered an ascertainable loss....as a result of the unlawful conduct." *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 NJ 464, 473 (1988); N.J.S.A. 56:8-19. There must be a "causal relationship" between the unlawful practice and the "ascertainable loss" sustained by the plaintiff. *Ramanadham v. NJ Mfrs. Ins. Co.*, 188 N.J. Super. 30, 33 (App. Div. 1982); N.J.S.A. 56:8-19.

According to *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994), the court explained that to violate the [CFA], a person must commit an 'unlawful practice' as defined by the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions and regulation violations. See N.J.S.A. 56:8-2, 8-4.

A. *As to United*

Defendant argues that without a finding that United violated the TILA there can be no finding that United violated the NJ CFA. The Plaintiff has conceded that Defendant United cannot be held liable under TILA which bars assignee liability for undisclosed premiums not

apparent on the face of the disclosure document.

However, Plaintiff contends that if Nissan is found to have violated the CFA based upon an unconscionable commercial practice, this violation may be visited upon United pursuant to the FTC and NJ Holder Rules.

Defendant replies and points out that if we were to follow Plaintiff's reasoning there would be a conflict between the CFA and the TILA. According to Defendants, the Plaintiff is contending that although the TILA does not impose a duty on assignees to investigate if any of the TILA disclosures on the Retail Installment Contract are inaccurate, the CFA does. TILA only requires an assignee-creditor to investigate those disclosures that are incomplete or inaccurate on the face of the disclosure or a disclosure which does not use the terms required under TILA. 15 U.S.C.A. 1641 (a).

Based on *Lemelledo* this court will presume that the CFA does in fact require the defendant to investigate whether disclosures on the Retail Installment Contract are accurate even though TILA does not. When the evidence is viewed in the light most favorable to the non-moving party, this court is convinced that the defendant has not overcome the presumption that the CFA appies. This court does not view requiring Defendant United to investigate above and beyond what TILA requires as imposing a conflicting duty. If any conflict does exist it is not "patent and sharp." *Lemelledo, supra,* at 554. Requiring a higher duty of care under CFA is not a conflict. The legislators intended the CFA to be applied broadly in order to combat consumer fraud. Id. at 264. *Cf. Hinfey v. Matawan Regional Bd. of Educ.*, 77 N.J. 514, 527-28 (1978)(holding that more specific antidiscrimination statute did not preempt broader antidiscrimination statute despite the existence of separate administration bodies charged with

-12-

combating the same form of discrimination); *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 365 N.E. 2d 802, 805 (1977)("the mere existence of one regulatory statute does not affect the applicability of a broader, non-conflicting statute, particularly when both statutes provide for concurrent coverage of their common subject matter.").

Accordingly, a rational fact finder could find that United violated the CFA precluding summary judgment. United's motion for summary judgment on Count 2 is denied.

*B. As to Nissan and Plaintiff*

Plaintiff argues that Nissan made an affirmative misrepresentation when it represented in the contract the amounts charged the plaintiff for the service contract, the life insurance, and the disability insurance because that was not the amounts that were paid for those products. Plaintiff further argues that Nissan made a knowing omission when it failed to reveal the amounts that it was retaining as a finder's fee or commission.

Plaintiff cites *Smith v. Precision Chevrolet*, an unreported Atlantic County Law Division case, and *Abrams v. Bob Ciasulli-Mack Pontiac*, an unreported Ocean County Law Division case, in support of his argument.

In *Abrams* a jury found that when the dealer charged $989 for a service contract that cost it $298, the dealer committed an unconscionable commercial practice, deception, fraud or misrepresentation.

The *Smith* court held that the dealership violated the CFA when it did not disclose the amount it retained under the service and warranty contract. The court categorized this as an affirmative misrepresentation citing *Generi v. Weichert-Realtor*, 148 N.J. 582 (1997) and *Chatton v. Cape May Green*, 243 N.J. Super. 590 (App. Div. 1990), aff'd 124 N.J. 520. The

-13-

court noted that the defendant's failure to disclose could also be characterized as a knowing omission since there was no dispute that the omission was knowingly made with the intent that the consumer rely upon it in direct violation of the CFA.

A rational fact finder could find that Nissan violated the CFA when it misrepresented in the Retail Installment Contract the amounts charged for the service contract and the insurance, and that Nissan knowingly failed to disclose the amount it retained for the service contract and the insurance in direct violation of the CFA. Therefore, there exists a genuine issue of material fact which precludes summary judgment in favor of Defendant Nissan.

Defendant Nissan argues that even if the plaintiff can establish that Nissan's practices were unlawful, the plaintiff cannot establish the elements of ascertainable loss or a "causal relationship" between the ascertainable loss and the unlawful practice.

This court feels that the determination as to whether the plaintiff suffered an ascertainable loss and the extent of such loss is a question of fact for the jury to determine.  Accordingly, plaintiff's cross-motion for summary judgment must be denied.

*Count 3 : Breach of Contract - Implied Covenant of Good Faith and Fair Dealing*

The New Jersey Supreme Court in *Palisades Properties v. Brunetti*, 44 N.J. 117, 130 (1965), has stated that "[i]n every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract...'(citing 5 Williston on Contracts Section 670, at 159-60 (3d ed. 1961))."

The Restatement (Second) of Contracts, Section 203 (1979 Main Vol.), defines the duty of good faith and fair dealing as "a duty of good faith and fair dealing in its performance and its

-14-

enforcement." See also N.J.S.A. 12A:1-203.

Comment C of Section 203 of the Restatement (Second) of Contracts, states that the Duty of Good Faith and Fair Dealing, like UCC Section 1-203, "does not deal with good faith in the formation of a contract." See also N.J.S.A. *Channel Home Ctrs v. Grossman*, 795 F.2d 291, 299 n.8 (3d Cir. 1986)(Good faith in bargaining or formation stages of the contracting process is distinguishable from the common law duty to perform in good faith.); *Henkin v. Skane-Gripen A.B.*, 986 F. 2d 1424 (7th Cir. 1993)(granting summary judgment for Defendants where allegation that Defendants breached duty of good faith and fair dealing were based only on negotiation process.).

Defendant United argues that since the Plaintiff alleges that the contract term of good faith and fair dealing was breached because of the misrepresentations and omissions in the formation of the contract regarding the cost of the extended warranty, there is no breach of good faith and fair dealing in the performance or enforcement of the contract.

Defendant Route 22 Nissan relies upon and joins Defendant United's argument on this issue.

Plaintiff suggests that the retail installment contract can be construed as creating a duty to pay the entire service contract and life and disability insurance premiums to a third party or to disclose that the amount paid for the service contract and insurance was inflated. Therefore "this is an unequivocal representation and stipulation in a binding contract that the monies will be paid without any reservations. This certainly creates a duty to pay the entire monies as agreed and to disclose any finders fee or commission and not to inflate the cost of these products." Plaintiff wants this court to construe the contract as requiring as part of its *performance* a duty to pay the

-15-

monies as represented in the Retail Installment Contract without any reservations and a duty to disclose any finders fee or commissions.

In the case at bar, the plaintiff's complaint is based on the nondisclosure of the amounts retained by Route 22 Nissan for the service contract and life and disability insurance. There is no genuine issue of material of fact that nondisclosure occurred at the formation stage of the contract during the course of negotiations not in the performance or enforcement of the contract. Accordingly there has been no breach of the implied covenant of good faith and fair dealing. Therefore, Defendant United's motion and Defendant Nissan's cross-motion on this issue is granted and Plaintiff's cross-motion is denied.

*Count 4: "Money paid by mistake"*

"[M]oney voluntarily paid with full knowledge of the facts, even if for an unjust claim, or if paid under protest cannot be recovered." *McGregor v. Erie Railroad, Co.*, 35 N.J.L. 89, 112 (Sup. Ct. 1871). However, recovery is permitted for "money paid by mistake, or upon a consideration which happens to fail, or for money got through imposition, express or implied, or extortion, or opposition, or an undue advantage taken of the plaintiff's situation (citation omitted)." Id. at 112.

Defendant argues that the Plaintiff does not allege that he purchased the warranty and credit insurance involuntarily, through extortion or coercion, fraud or duress. Plaintiff knew what Nissan was charging for those items. Accordingly, money was not paid by mistake because Plaintiff paid United understanding what he was being charged for the warranty and insurance.

Defendant Route 22 Nissan relies upon and joins Defendant United's argument on this issue.

-16-

Plaintiff relies upon the same argument presented for Breach of Implied Covenant of Good Faith and Fair Dealing. Plaintiff contends that the Retail Installment Contract created a duty to pay the entire service contract and insurance premiums to a third party. Plaintiff wants us to construe the defendants failure to disclose that Nissan retained a portion of these fees as "money paid by mistake."

On a motion for summary judgment the court must view the evidence in the light most favorable to the Plaintiff. Consequently, there is evidence on the record to support a claim of undue advantage against Route 22 Nissan. Plaintiff does not assert that there was an undue advantage, but one could be implied by Plaintiff's argument that Nissan's failure to disclose that it retained a portion of these fees prevented the plaintiff from negotiating a lower fee for these services. There is evidence on the record that even when armed with such knowledge the Plaintiff might not have attempted to negotiate a lower rate for these services. (Plaintiff recently purchased a new vehicle and did not negotiate the amount paid for the same services). Therefore, there is a genuine issue of material fact as to whether plaintiff was placed in a situation of undue advantage by Route 22 Nissan when Nissan failed to disclose the amounts retained precluding summary judgment in favor of Defendant Nissan and Plaintiff as to Count 4.

However, there is no evidence even viewed in the light most favorable to the Plaintiff to support a claim against Defendant United for money paid by mistake. There was no mistake of fact in the amount paid to United for these services by the Plaintiff. There is also no evidence of coercion, fraud or duress. There is no genuine issue of material fact as to United and therefore summary judgment is appropriate as to Count 4 of Plantiff's complaint.

-17-

*Count 5:  IP's individual claims violation of the NJ Consumer Fraud Act*

A.   Interest Rate

As discussed earlier, for the Plaintiff to succeed under the CFA, the Plaintiff must

demonstrate that s/he "suffered an ascertainable loss....as a result of the unlawful conduct."

*Meshinsky, supra.,* at 473; N.J.S.A. 56:8-19.  In *Cox, supra.,* the court explained that to violate

the [CFA], a person must commit an 'unlawful practice' as defined by the legislation.  Unlawful

practices fall into three general categories: affirmative acts, knowing omissions and regulation

violations.  See N.J.S.A. 56:8-2, 8-4.

TILA requires that the creditor "clearly and conspicuously" disclose certain aspects of a

credit transaction to the borrower.  15 U.S.C.A. 1632(a).  The information that the creditor is

required to disclose in this manner includes the "finance charge".  15 U.S.C.A. 1638(a)(3); 12

C.F.R. 226.18(d).

TILA defines a "finance charge" as "the sum of all charges, payable directly or indirectly

by the person to whom the credit is extended, and imposed directly or indirectly by the creditor

as an incident to the extension of credit....Examples of charges which are included in the finance

charge include any of the following types of charges which are applicable: (1) Interest, time price

differential, and any amount payable under a point, discount, or other system of additional

charges....(3) Loan fee, finder's fee, or similar charge...."  15 U.S.C.A.1605 (a).

Regulation Z defines a "finance charge" as "the cost of consumer credit as a dollar amount.  It

includes any charge payable directly or indirectly by the consumer and imposed directly or

indirectly by the creditor as an incident to or a condition of the extension of credit."  12 C.F.R.

226.4(a).

-18-

According to 15 U.S.C.A. 1605 (a) & 12 C.F.R. 226.4(a), a finance charge includes any cost paid directly or indirectly by the consumer and imposed directly or indirectly by the creditor as a condition on the extension of credit.  Stated another way, "a charge which the consumer does not pay directly and which is only indirectly a condition to the extension of credit is as much a finance charge under TILA as charges paid directly by the borrower and which are direct conditions on the extension of credit." *Noel v. Fleet Finance, Inc.* 971 F. Supp. 1102, 1110 (E.D. M.I., 1997).

The court in *Noel, supra.,* employed a two-step analysis in determining whether the yield spread was a finance charge. First, they looked at whether the consumer paid the finance charge or yield spread directly or indirectly and found that the consumer indirectly paid the yield spread. The court reasoned that "Fleet rewarded Birmingham and Sterling for originating the Plaintiffs' loans at an interest rate higher than the interest rates approved by Fleet by paying them an amount equal to at least 75% of the yield spread multiplied by the amount of each loan." Id. The court further reasoned that "while the yield spread premiums were paid to Birmingham and Sterling directly by Fleet, they were paid indirectly by the Plaintiffs." Id.

Secondly, the court looked at whether the yield spread premium was an indirect condition on the extension of credit by Birmingham and Sterling.  Here they found that "[a]lthough the fact of the yield spread premium was not revealed to the Plaintiffs, they were nevertheless required to agree to it in order to consummate their loan transactions." Id. at 1111.  Thus, the *Noel* court found that the yield spread premium met the definition for finance charge under TILA

Defendant United argues that as a matter of law it was not required to disclose any "spread" between the rate of interest at which Defendant United would take the assignment of a contract

and the rate of interest charged to Plaintiff because it is not a finance charge. Defendant also argues that a dealer and assignee are not required to disclose a dealer discount or the assignment of the loan agreement at less than its face value. The defendant cites *April v. Union Mortgage Co., Inc.*, 709 F. Sup. 809, 813 (N.D. Ill. 1989)(held that the $3,300 retained by Union Mortgage of the $20,000 paid was not a finance charge, discount or additional charge required to be disclosed under TILA); *Balentine v. Union Mortgage Co.*, 1994 WL 34256, 2 (N.D. Ill., Feb. 2, 1994)(held that "chopping" is not required to be disclosed under TILA because it is not a finance charge, but the cost of doing business); and *Baldwin v Laurel Ford Lincoln-Mercury, Inc.*, 32 F. Supp. 2. 894, (S.D. Miss. 1998)(held Ford Credit, as assignee, acted in good faith and was therefore not liable under TILA for not disclosing the amount of the interest being retained by the dealer, Laurel Ford Lincoln-Mercury, Inc.)

Defendant Route 22 Nissan relies upon and joins Defendant United's argument on this issue.

Plaintiff has conceded that Defendant United is not liable under TILA and is therefore not liable for the nondisclosure of the yield spread based on a TILA violation. However, Plaintiff argues that Defendant Nissan has violated the CFA when it did not disclose the exact amount of the annual percentage rate that it was retaining as a commission or finders fee, i.e.; the yield spread. This nondisclosure, argues the plaintiff, is an affirmative misrepresentation in violation of the CFA.

This court finds that, based on the plain language of 15 U.S.C.A. 1605 (a)(1)&(3), the interest rate and the yield spread at issue in this case are included in the definition of a finance charge which requires disclosure under TILA. 15 U.S.C.A. 1638(a)(3); 12 C.F.R. 226.18(d).

Also, when employing the same two-step analysis as used in *Noel*, this court finds that the yield spread is a finance charge requiring disclosure under TILA.  First, Defendant United, in a sense, 'rewarded' Route 22 Nissan for originating the Plaintiffs' loan at an interest rate higher than that approved by United by paying Route 22 Nissan the difference or the yield spread.  Thus, this cost was indirectly paid by the Plaintiffs.  Secondly, this court has little doubt that the Plaintiffs were required to consent to the higher interest rate or the yield spread as a condition to the extension of credit. This court finds, as did the *Noel* court, that Route 22 Nissan was required to disclose the existence of the yield spread to the Plaintiffs under TILA.

Accordingly, a rational fact finder could find Route 22 Nissan violated the CFA based on the violation of TILA. Also, a rational fact finder could find that Route 22 Nissan's nondisclosure was an affirmative misrepresentation or a knowing omission in violation of the CFA.  Therefore, there exists a genuine issue of material fact which precludes summary judgment in favor of Defendant Nissan.

In order for the plaintiff to succeed under the CFA, the plaintiff must demonstrate an ascertainable loss resulting from the unlawful practice. See *Meshinski, supra*, at 473.  Whether the plaintiff suffered an ascertainable loss and the extent of such a loss is a question of fact for the jury to determine. Accordingly, plaintiff's cross-motion for summary judgment must be denied.

There is also the issue of whether a fiduciary duty exists between a borrower and a lender while negotiating the terms of the a loan agreement requiring the lender to disclose to a prospective borrower the rate of interest being offered by the lender.  However this aspect of the Defendant, United's, argument is not addressed by the Plaintiff. Accordingly, the court assume

-21-

that the Plaintiff has conceded this point.

In sum, summary judgment is granted in favor of Defendant United and denied as to Defendant Nissan and Plaintiff.

## B. Repossession of the Vehicle

A creditor may repossess its collateral when (1) there is a default under the credit agreement; (2) there is a valid security agreement concerning the collateral; and (3) the repossession is executed without a breach of the peace. *Slowinski v. Valley National Bank*, 264 N.J. Super. 172, 186 (App. Div. 1993); N.J.S.A. 12A:9-504.

Defendant United argues that the bank has satisfied all the conditions required in repossessing the Plaintiff's vehicle. Plaintiff was in default of the Retail Installment Contract because they had not made the June 30, 1999 payment. Plaintiff Joe Perry admits it has no evidence of making payments in the months of August, September, or October 1999. (Exhibit A - Plaintiff Joe Perry Dep, pg. 87, lines 5-23) Plaintiff Nancy Perry admits that the contract was in default when the vehicle was repossessed in October of 1999. (Exhibit B - Nancy Perry Dep pg. 33, line 22.) There was a valid security agreement which terms provided for the repossession of the vehicle upon default and there was no breach of the peace.

Plaintiff argues that in August 1999, the Plaintiff Joe Perry through is wife, Nancy Perry, entered into an alternative payment agreement with Defendant United. Plaintiff owed $7,400 on the loan at that time. Plaintiff Nancy Perry agreed that by October 1, 1999, the Plaintiff Joe Perry would make a double payment. Plaintiff Nancy Perry confirmed arrangement in September of 1999. Plaintiff Nancy Perry claims to have sent the agreed upon payment on October 1, 1999. The car was repossessed on October 4, 1999. According to Plaintiffs, on October 21, 1999, the

Plaintiffs attempted to wire $7,400 to Defendant United from their PNC bank account in order to prevent the auction of the vehicle from taking place. The Plaintiffs concede that the wire transaction was not completed by PNC and that they have no proof that the wire transfer was in fact suppose to take place. (Exhibit B - Nancy Perry Dep pg. 33, line 22.) The car was sold on October 21, 1999. Plaintiffs received $2,124.80 surplus from the sale of the car.

Plaintiffs argue that Defendant United's conduct in failing to honor the alternate payment agreement and the subsequent repossession of the case was unconscionable conduct in violation of the CFA. According to the Plaintiffs, it clearly was not within the standards of good faith, honesty-in-fact and fair dealing required by the CFA. Plaintiffs cite *Kugler v. Romain,* 58 N.J. 522 (1971) in support of their position.

The Defendant replied and argued that the Certification of Nancy Perry is deficient to defeat summary judgment because there is no proof of any payments being made. Only thing offered is a letter from PNC indicating that a wire transfer in an amount undetermined was suppose to take place on October 21, 1999. (Exhibit C - Perry's Cert) Furthermore, the Plaintiffs had sufficient notice of the sale as evidenced by the notice attached to Nancy Perry's certification as Exhibit A.

This court finds no genuine issue of material fact and, therefore, SJ is appropriate.

<u>SUMMARY</u>

As to United:

GRANTED - Summary Judgment as to Count 1 - TILA

DENIED - Summary Judgment as to Counts 2 on the issue of affirmative relief pursuant to FTC Holder Rule and NJ Holder Rule/GRANTED Summary Judgment as to Counts 3 & 4.

DENIED - Summary Judgment as to Count 2 on the issue of NJ CFA violation.

GRANTED - Summary Judgment as to Count 3 on the issue of Breach of Contract.

GRANTED - Summary Judgment as to Count 4 on the issue of "Money paid by Mistake"

GRANTED - Summary Judgment as to Count 5 in its entirety.

*As to Route 22 Nissan/Plaintiff:*

GRANTED/*denied*- Summary Judgment as to Count 1 - TILA

DENIED/*denied* - Summary Judgment as to Count 2 on the issue of NJ CFA violation.

GRANTED/*denied* - Summary Judgment as to Count 3 on the issue of Breach of Contract.

DENIED/*denied* - Summary Judgment as to Count 4 on the issue of "Money paid by Mistake"

DENIED/*denied* - Summary Judgment as to Count 5 - Interest rate

# EXHIBIT "K"

11:42am   From MCELROY, DEUTSCH & MULVANEY                                    T-767   P.09/24   F-683

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
ATLANTIC COUNTY, NEW JERSEY
DOCKET NO. ATL-L-3156-96
A.D. # _____

BESSIE SMITH,

          Plaintiff,

     -v-

PRECISION CHEVROLET
OLDSMOBILE, et al,

        Defendant.

TRANSCRIPT
OF
CROSS MOTIONS
FOR
SUMMARY JUDGMENT

Place:   Atlantic County Cthse.
        1201 Bacharach Boulevard
        Atlantic City, NJ 08401

Date:   July 29, 1999

BEFORE:

HON. MICHAEL WINKLESTEIN, J.S.C.

TRANSCRIPT ORDERED BY:

JEFFREY C. SOTLAND, ESQ. (Mintzer & Sarowitz)

APPEARANCES:

DONNA SEGAL MAFFA, ESQ. (Tomar, Simonoff, Adourian,
       O'Brien, Kaplan, Jacoby & Graziano)
Attorney for the Plaintiff

MICHAEL C. CORCORAN, ESQ. (Mintzer & Sarowitz)
Attorney for the Defendant

Transcriber, Beatrice A. Creamer
J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, NJ 08619
        (609)586-2311
FAX NO.   (609)587-3599

Audio Recorded
Audio Operator, W. Bordonaro

RECEIVED TIME   AUG. 29.   11:46AM

08-30-00   11:43am   From-McELROY,DEUTSCH & MULVANEY                    T-767   P.10/24   F-683

2

```
 1
 2                              I N D E X
 3
 4                                                        PAGE
 5       RULING
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Colloquy                                                          3

```
 1              THE COURT:  Mr. Corcoran, can you hear me?
 2          MR. CORCORAN:  Yes, Your Honor.
 3              THE COURT:  Good morning.  Ms. Maffa is in the
 4    Courtroom.  I'm going to go on the record at this point.
 5    This is the matter of Smith versus Precision, ATL-L-3156-96.
 6    The matter is before the Court this morning for argument on
 7    cross motions for summary judgment.  May I have counsel's
 8    appearance, please, beginning with plaintiff's counsel?
 9          MS. MAFFA:  Donna Segal Maffa from the Tomar law
10    firm on behalf of Bessie Smith and the class.
11          MR. CORCORAN:  Your Honor, Michael Corcoran from
12    the law firm Mintzer & Sarowitz on behalf of the defendant,
13    Precision Chevrolet.
14              THE COURT:  Good morning.  I have reviewed all of
15    these papers.  I'm thoroughly familiar with the file and the
16    arguments.  If counsel wish to supplement the arguments set
17    forth in the brief, I will hear from you at this time.  I'll
18    begin with you, Mr. Corcoran.
19          MR. CORCORAN:  Your Honor, before the Court, as
20    you aware, is defendant Precision's motion for summary
21    judgment.  The defendant seeks summary judgment as to the
22    five counts in plaintiff's second amanded complaint, all the
23    class action complaint that is.  And as you just stated, the
24    brief accompanying our motion -- spells out our argument and
25    the basis for our request for summary
```

Ruling                                                                    4

1   rely upon the brief in support of our arguments today.
2          THE COURT:   Very well.  Ms. Segal Maffa?
3          MS. MAFFA:   Good morning.  As Your Honor
4   indicated, you've read everything and you're looking just
5   for any supplemental arguments.  In fact, we have nothing to
6   supplement our briefs with.  So unless you have questions, I
7   will also rely on our paper submissions.
8          THE COURT:   Okay.  No, I don't have any questions.
9   I'm all too familiar with this case.  I feel like it's --
10  I've been living with it for the past year and a half, as
11  I'm sure each of you do.
12         This matter is before me on a motion by defendant
13  Precision for summary judgment on counts one, two, three,
14  five and six of plaintiff -- bless you -- Bessie Smith's
15  second amended complaint.  The plaintiff has filed
16  opposition and a cross motion for summary judgment as to
17  counts one, two and six.  The New Jersey Coalition of
18  Automotive Retailers has filed an amicus brief.  And I have
19  also received a reply from Precision to the cross motion.
20         This action stems from an automobile sales
21  transaction between Precision and plaintiff.  On June 6,
22  1996, plaintiff purchased a car from Precision for $11,995.
23  In addition to the automobile itself, Precision purchased an
24  extended warranty costing $995, a insurance policy, credit
25  life disability insurance policy for $523.33.  Specifically

---

Ruling                                                                    5

1   the retail installment contract stated as follows.  "To
2   Credit Insurance Company, $523.33."  And with regard to the
3   service contract, it's stated, "To Service Contract $995."
4   With the exception of a $300 down payment and $5,975 in
5   consideration for your trade in, plaintiff's -- the rest of
6   plaintiff's purchase price was made possible through the
7   extension of credit.
8          Precision charged plaintiff an interest rate of 18
9   percent.  Precision asserts that all of these costs were
10  fully disclosed to the plaintiff in her retail installment
11  contract.  Plaintiff alleges in the second amended complaint
12  that Precision failed to disclose certain material facts,
13  which I will go over in a moment or two, and employed
14  deceptive and unconscionable commercial practices in
15  violation of the Consumer Fraud Act.
16         This is a motion under Brill under Rule 446(2).
17  According to Brill, "A determination whether there exists a
18  general issue of material fact that precludes summary
19  judgment requires the motion judge to consider whether the
20  competent evidential materials presented when viewed in the
21  light most favorable to the non-moving party are sufficient
22  to permit a rational fact finder to resolve the alleged
23  disputed issue in favor of the non-moving party.  The import
24  of our holding is that when the evidence is so one-sided
25  that one party must prevail

Ruling                                        6

1   judgment should not hesitate to grant summary judgment."
2        There really are very few facts that are disputed
3   in this case.  Count one of plaintiff's complaint alleges
4   that Precision made affirmative misrepresentation in its
5   retail installment contracts regarding payments made to
6   third parties.  Precision argues that no affirmative
7   misrepresentation was made as to the retention of a profit
8   or commission from the sale of either the extended warranty
9   or the credit insurance policy.  Precision argues that under
10  the Consumer Fraud Act, the alleged unlawful practice, if
11  anything, amount to a knowing omission.  Precision states
12  that this requires proof that Precision acted knowingly and
13  with the intent that the omission be relied upon.  Precision
14  also states that plaintiff is unable to demonstrate an
15  ascertainable loss as required under NJSA 56:8-19.
16  Precision argues that plaintiff has not specified what
17  damages she has sustained as a result of Precision's alleged
18  failure to represent the amount retained on the sale of the
19  extended warranty and service contract.
20       Plaintiff argues a number of different positions.
21  First, that under the Truth in Lending Act it must be
22  disclosed that the dealer has retained a portion of the
23  service contract and the case of Gibson v. Watson Chevrolet
24  is cited at 112 F3d 283, a 7th Circuit 1997 case which I
25  have referred to in at least one prior decision.  Plaintiff

Ruling                                        7

1   states that strict liability should attach because of
2   Precision's failure to represent what was retained on the
3   service and warranty contract.  Plaintiff states that
4   Precision violated the TILA and New Jersey recognizes that a
5   violation of an other consumer protection law may constitute
6   a per se violation of the Consumer Fraud Act, citing
7   Lamalledo v. Beneficial, 289 NJ Super 489, a 1996 Appellate
8   Division case which was affirmed by the Supreme Court of New
9   Jersey at 150 NJ 255.  Precision -- excuse me -- plaintiff
10  argues that Precision by not disclosing that it retained a
11  portion of the amount charged to plaintiff on sales of
12  credit insurance and service contracts misrepresented
13  amounts paid to third parties on the retail installment
14  contract.
15       The first question I will address is whether
16  Precision's failure to disclose the amount it retained on
17  the service and warranty contracts is an affirmative
18  misrepresentation or a knowing omission.  There is no
19  dispute that Precision did retain an amount on both the
20  service and warranty contracts.  There is no dispute that it
21  did not disclose that fact to the consumer.  Cox v. Sears &
22  Roebuck, 138 NJ 2 (1994) states that, "To violate the
23  Consumer Fraud Act a person must commit an unlawful practice
24  as defined in the legislation.  Unlawful practices is
25  affirmative acts, knowing

Ruling                                                8

1    violations."  So there are really three categories under the
2    Consumer Fraud Act.  And they cite to 56:8-2.
3          According to Genari v. Weichert Realtors, 148 NJ
4    582 (1997), "One who makes an affirmative misrepresentation
5    is liable even without knowledge of the falsity of the
6    misrepresentation, without negligence and without the intent
7    to deceive."  Specifically NJSA 56:8-2 provides that, "The
8    act, use or employment by any person of any unconscionable
9    commercial practice, deception, fraud, false pretense, false
10   promise, misrepresentation or the knowing concealment,
11   suppression or omission of any material fact with the intent
12   that others rely upon such concealment, suppression or
13   omission of any material fact with the intent that others
14   rely upon such concealment, suppression or omission is a
15   violation of the act."
16         Plaintiff asserts that Precision violated this Act
17   by misrepresenting that Precision was keeping certain sums
18   which were stated to be paid to others including payments
19   for credit insurance as well as the service contract.
20         The first category of the two that I will talk about
21   consists of the affirmative acts and then I will deal with the
22   omission of material facts.  Other cases that I will be
23   citing are Chatton v. Cape May Green, 243 NJ Super 590,
24   Appellate Division (1990) affirmed O.B. 124 NJ 520 and
25   Fenwick v. Kay American Jeep, 72 NJ 372 (1977).  Both of

Ruling                                                9

1    these cases stand for a number of different propositions,
2    but specifically the fact that affirmative acts do not
3    require a showing of intent.
4          Our Supreme Court in Chatton has held that certain
5    -- certain representations can either be an affirmative
6    misrepresentation or a knowing omission, and that may create
7    a jury question on that issue.  In Chatton homeowners sued
8    their builder for representing through a brochure as well as
9    orally that the windows to be installed were insulated.  In
10   fact, the double pane of glass had substantial insulation
11   qualities, but the frame had none.  The builder stated that
12   pursuant to industry standard, windows were insulated when
13   there was a double pane and an uninsulated frame.  To the
14   contrary the homeowners believed that the entire window
15   would be insulated based upon the builder's representations.
16   The court concluded that the builder's alleged consumer
17   fraud may be viewed under those circumstances as either an
18   affirmative act or a knowing omission.
19         I find that Precision's failure to disclose the
20   amount retained on the service and warranty contracts do
21   amount to affirmative misrepresentations.  When Precision
22   said in the retail installment contract that $523 was paid
23   to a credit insurance company, that statement was not true.
24   And at the time it was made, the defendant knew it was not
25   true.  There is no dispute about the amount it was

Ruling                                      10

1   opinion, an affirmative misrepresentations.  The same
2   analysis applies to the statement concerning the service
3   contract.  Defendant knew when it said that $995 was paid to
4   the service contract that it was not.  A portion of it was
5   paid to or for the service contract, while a portion was
6   kept by the defendant.  Again, that, in my opinion, is an
7   affirmative misrepresentation.
8        However, even if I were to characterize the
9   language as a knowing omission, again there is no dispute.
10  There is no dispute that defendant knew when it made the
11  statement that it was not true.  The only conclusion that a
12  fact finder could draw is that the omission was knowingly
13  made with the intent that the consumer rely upon it.  This
14  is not a case where there are facts in dispute as to whether
15  or not defendant knew that it was keep -- that is was paying
16  all of the $995 and the $523 to a third party.  It is
17  undisputed that the defendant when it made this
18  representation knew that it was not so.  Defendant says that
19  it's the practice in the industry to do this, that they've
20  always done this, but that doesn't detract from the fact
21  that they knew what they were saying was not true.
22       In the Watson case which I previously mentioned,
23  the 7th Circuit concluded that automobile purchasers would
24  state a claim under the TILA by alleging that dealers fail
25  to disclose that they retain portions of the listed costs of

Ruling                                      11

1   the warranty contract.  That's all fours with what we're
2   talking about.  With regard to the dealer's requirement to
3   disclose such portions, the chief judge, Judge Posner, put
4   it as follows, and I've mentioned this quote before and I
5   believe it's right on point.
6        The defendants contend in interpreting the
7   language of the regulation, which I dealt with in the
8   declaratory judgment action, that the word may or could show
9   that they can if they want to disclose that they are
10  retaining some of the fee, but they are not required to do
11  so.  In other words, they read the commentary to say, "You
12  may conceal the fact that you are pocketing part of the fee
13  that is ostensibly for a third party.  But if you are a
14  commercial saint and would prefer to tell the truth, you may
15  do that too."  That's Gibson at 285 and 286.
16       I agree with Judge Posner's conclusion that such an
17  interpretation would be preposterous.  It would certainly be
18  bad public policy.  I'm in agreement that a sensible reading
19  of the commentary, which I'm not going to go through at
20  length at this time, authorizes the dealer to disclose
21  either the fact that the dealer retained a portion of the
22  charge, or, if the dealer wants to, the exact amount of the
23  charge, but it does not authorize the dealer to fail to
24  disclose that he retained a portion of the amount being
25  listed as an

Ruling

12

1    reasons for such an interpretation.  If a consumer is aware
2    that a dealer is keeping a portion of the amount listed as
3    paid to others, a sin this case with a warranty or even with
4    the amount financed, the consumer would have an opportunity
5    theoretically to go to other dealers to compare prices.
6    Moreover, with the financing the consumer could arrange for
7    its own financing at a cheaper price and not have to go
8    through the dealer if it knew the dealer was keeping a
9    portion of the interest.
10        The protection of the consumer's interest is the
11   cornerstone of the Consumer Fraud Act.  I find that
12   Precision violated the Consumer Fraud Act by not disclosing
13   the amount retained.  There is that third category of
14   unlawful acts under the Consumer Fraud Act which consists of
15   violations of specific regulations promulgated under the Act
16   and as well as other acts which affect consumers.  In those
17   instances intent's not an element of the unlawful practice
18   and the regulations do impose strict liability for those
19   violations.  That's Cox at pages 18 and 19, citing Fenwick
20   at 376.  According to Cox the parties subject to the
21   regulations are assumed to be familiar with them so that any
22   violation of the regulations regardless of intent or moral
23   culpability constitutes a violation of the New Jersey
24   Consumer Fraud Act.  Thus a violation of the Truth in
25   Lending Act itself would be a violation of the Consumer

Ruling

13

1    Fraud Act.
2         Another case, Delaney v. Garden State Auto Parts,
3    318 NJ Super 15 Appellate Division 1998.  The Appellate
4    Division concluded that defendant violated the consumer
5    fraud act when certain predelivery services were not
6    disclosed to the consumer or present in the final sales
7    agreement.  The Court noted that, "In response to observed
8    abuses in automobile sales practices where consumers were
9    frequently induced to expend additional monies for services
10   that were either unnecessary or not being performed the Act
11   was broadened through regulation to protect the automotive
12   consumer."  That's Delaney at page 20.  Those specific
13   regulations, NJAC 13:45A-26(b).2 declare it unlawful under
14   the Act for an automobile dealer to "accept, charge or
15   obtain from a consumer monies or any other thing of value in
16   exchange for the performance of predelivery services without
17   first itemizing the actual predelivery services which is
18   being performed and setting forth in writing on the sales
19   document the price for each specific predelivery service."
20   Predelivery service is defined as "any monies or other thing
21   of value which an automotive dealer accepts from a consumer
22   in exchange for the performance of predelivery services upon
23   a motor vehicle and includes but is not limited to items
24   which are often described or labeled as dealer preparation
25   vehicle preparation, predelivery



Ruling
14

1   delivery or any other term of similar import."  And that's
2   NJAC 13:45A-26(b).1.   The Court in Delaney stated that the
3   service items including rust proofing, undercoating, paint
4   sealer and fabric guard were to be installed in connection
5   with the power train warranty which was covered by the
6   vehicle service contract.   Justice Newman concluded that the
7   absence of this itemization was what consumer fraud
8   legislation was meant to protect.
9       A fair reading of 13:45A-26(b).1 can include
10  monies retained, as in this case, to include the warranties
11  and the credit life insurance as well as the interest rate.
12  Those are all predelivery services under a broad
13  interpretation of the regulation.   As I just indicated, such
14  services are monies or other things of value which a dealer
15  accepts from a consumer in exchange for predelivery
16  services.   In this instance the warranty and service
17  contract were sold to the plaintiff.   Certainly they were
18  predelivery in nature.   It's not disputed that Precision
19  received certain monies for these services, yet Precision
20  did not tell the consumer that they were keeping certain
21  portions of the monies, let alone tell them how much they
22  were keeping.   In furtherance with the intent to protect
23  consumers and giving consumers the opportunity to go to
24  other dealers to compare prices I'm satisfied that the
25  retention of the monies without itemizing and not disclosing

Ruling
15

1   to plaintiffs amounts is a violation of the aforementioned
2   regulation, and thus would constitute a violation of the
3   Consumer Fraud Act.   Therefore under the -- of
4   misrepresentation, the knowing omission or the violation of
5   legislation under one or all three I find that the defendant
6   has violated the Act.
7       The next issue is whether the plaintiff
8   experienced an ascertainable loss.   To bring an action under
9   the Consumer Fraud Act an ascertainable loss must be
10  demonstrated under 56:8-19.   In Miller v. American Family
11  Publishing, 284 NJ Super 67, a 1995 Chancery Division case,
12  the plaintiffs, who were magazine subscribers, relied upon
13  misleading sales material when they purchased magazine
14  subscriptions.   They paid for the subscriptions because
15  "They were told and believed that for their money they would
16  receive two things, first, a magazine subscription, and
17  second, the ability to remain a part of defendant's
18  sweepstakes."   An ascertainable loss was demonstrated as
19  plaintiffs received something less than and different from
20  what they reasonably expected in view of the defendant's
21  misrepresentations.
22      According to Cox even without an ascertainable
23  loss a consumer fraud plaintiff can recover counsel fees and
24  costs if plaintiff can prove that defendant committed an
25  unlawful practice.   That's C

Ruling

16

1  plaintiff asserts that as a result of Precision's violations
2  of the Consumer Fraud Act by specifically failing to
3  disclose that it retained portions of the amounts allegedly
4  paid to others she was caused ascertainable loss by not
5  having the opportunity to compare prices with those of other
6  dealers. As a result plaintiff alleges that the amount
7  retained by Precision is the amount of damage she incurred
8  since it was not disclosed. That's a fair argument.
9      In Delaney the Court found that additional cost
10 for items not disclosed was a reasonable basis to establish
11 an ascertainable loss. And the argument is similar to that
12 made in Delaney. However I do not believe that I can find a
13 specific ascertainable loss as a matter law. I'm satisfied
14 that it will be up to the Jury to determine whether the
15 plaintiffs sustained an ascertainable loss, and if so, what
16 that was.
17     According to Green v. Continental Rentals, 292 NJ
18 Super 241, a 1994 Law Division case, under the Consumer
19 Fraud Act conduct that is not in good faith, honest in fact
20 and observant of fair dealing is unconscionable. I find
21 that the statements made in the retail installment contract
22 as mentioned above were false, known to be false, and this
23 constitute unconscionable commercial practices.
24     Count two of the complaint alleges that Precision
25 violated the Consumer Fraud Act by not disclosing its

Ruling

17

1  retention of monies in connection with the purchase of
2  service contracts and credit insurance on behalf of the
3  plaintiff. Precision concedes that the profit or
4  commissions made for the sale of the extended warranty and
5  credit insurance were not disclosed. The issue is whether
6  this is an unconscionable commercial practice as defined by
7  the Consumer Fraud Act. The analysis under count two is
8  exactly the same as the analysis under count one, and for
9  the same reasons I make the same findings, that the Consumer
10 Fraud Act was in fact violated but the ascertainable loss
11 remains a Jury question.
12     Count three. Plaintiff alleges in count three
13 that Precision violated the Consumer Fraud Act by charging
14 unconscionably high commission rates in connection with its
15 purchase of service and warranty contracts. Precision
16 argues that it realized a $638.50 profit off the sale in
17 question. The cost of the warranty was not $995 and the
18 cost of the credit insurance was $523.33. Precision asserts
19 that the warranty provided to plaintiff was not profitable
20 to the dealership, in particular that the costs associated
21 with the warranty often exceed the profit realized from the
22 sale of the warranty. And as for the credit insurance it is
23 alleged by Precision that plaintiff's expert did not testify
24 that the commission retained was unconscionable.
25     Plaintiff asserts

## Ruling                                                                18

1   overcharged its customers for credit insurance and service
2   contracts and commission rates on the sales were in fact
3   unconscionably excessive.  Specifically it is alleged that
4   Precision made between a 40 and 50 percent commission on the
5   sale of credit insurance and the service contract.
6   Plaintiff maintains that the price charged for products was
7   grossly excessive in relation to the seller's business cost
8   and did not match the value of the products.   Plaintiff's
9   expert, Mr. Stivers, testified, "Question:  When we're
10  talking about the actual profit regardless of where it goes,
11  if that profit margin is approved by the government in your
12  opinion can that be unconscionable?"
13           "Answer:  If it is represented as money going to
14  the insurance company that's not going there, yes."
15           "Question:  You believe putting aside where the
16  money went the amount of profit in this case on the single
17  disability insurance policy was unconscionable?"
18           "Answer:  Yes, based on the false designation of
19  credit insurance premium stated on the installment
20  contract."
21           That's his deposition at pages 78 through 80.
22           This is in dispute.  Precision states that the
23  amount retained, including with the cost, does not return a
24  profit and is not unconscionable.  What we have here is a
25  garden variety jury question.  I cannot as a matter of

## Ruling                                                                19

1   summary judgment find as a matter of law that one side is
2   entitled to prevail.  That creates a jury question and
3   precludes summary judgment on that count.
4           Count five.  Count five of the complaint states
5   that Precision violated the Consumer Fraud Act by routinely
6   packing its form retail installment contracts with
7   unnecessary excessively priced credit insurance and service
8   contracts.  Precision argues that Plaintiff testified that
9   both the credit insurance as well as the extended warranty
10  package were of a benefit to her.  As to the credit
11  insurance, plaintiff stated that it was a perfect package
12  for her and she felt safe knowing that he purchased it.  In
13  fact it's really not disputed that plaintiff did benefit
14  from the insurance.  She became disabled and the insurance
15  company paid her monthly payments for the car.  Plaintiff
16  also testified that the warranty was necessary.  Plaintiff
17  maintains, however that regardless of the fact that she
18  retained a benefit the price charged for the service and
19  warranty contracts were excessive.
20          I'm satisfied that there is no factual dispute
21  that the plaintiff retained a benefit as a result of
22  purchasing these items, but there does exist a jury question
23  as to whether or not the items were excessively priced.  Mr.
24  Stivers that the amounts charged were unconscionable and
25  that the price was

Ruling                                                        20

1   not disclosed to plaintiff.   For these reasons, again, a
2   jury question exists and summary judgment is denied.
3          Count six.   Count six of the complaint alleges that
4   Precision violated the Consumer Fraud Act when arranging
5   financing for its consumers charging unconscionably inflated
6   interest or finance charges and misrepresenting and/or
7   concealing additional profit realized and/or kickbacks given
8   and received for such practices.   My reading of count six
9   presents two issues, one, whether the rate charged was
10  unconscionable, and two, whether the failure to disclose
11  that the dealer was keeping a portion of the interest charge
12  violated the Consumer Fraud Act, kind of a repetition of
13  counts one and two.
14         Let me go over briefly the financing arrangement.
15  Precision entered into an agreement with Callow Hill prior
16  to the plaintiff's final purchase whereby Callow Hill
17  accepted an assignment of financing deals from Precision.
18  This was a general agreement between Precision Callow Hill,
19  which is no longer a party to this case.   In that agreement
20  Precision would receive a two percent commission.   It does
21  not -- Precision does not disclose this two percent
22  commission from Callow Hill in its retail installment
23  contract or any other document that I am aware of.
24  Basically Precision argues that it has no duty to disclose.
25  In particular, Precision maintains that there is no law,

Ruling                                                        21

1   state or federal, that requires an automobile dealer to
2   disclose the yield spread arrangement, that's what this two
3   percent commission is being referred to, that it has with a
4   lending institution.   In fact, Precision argues that several
5   courts have held that the difference between the cash price
6   of the contract and the price at which the contract is sold
7   is not required to be disclosed, citing Ballentine v. Union
8   Mortgage Company, 1994 West Law 34256, Northern District of
9   Illinois.
10         In addition, Precision's expert, Gene March,
11  opined that, "No law requires that a car dealer disclose to
12  a buyer how the dealer's spread, being the difference
13  between wholesale and resale, will be disbursed.   Similarly
14  absent some requirement mandated by state or federal law, no
15  lender or merchant should be required to disclose how the
16  profit or loan interest is to be shared if the retail rate
17  is fully disclosed to the consumer."
18         Precision also relies on the Alabama Supreme Court
19  case in the matter of Ex Parte Ford Motor Credit Co., 717
20  S2d 781, a 1997 Alabama case whereby the court held that,
21  "In the absence of a special confidential relationship, the
22  general creditor beneficiary relationship does not impose a
23  fiduciary duty requiring the disclosure of a prior
24  commission agreement between creditors." Precision

Ruling                                                          22

1    purchase at an interest rate of 18 percent, that never was
2    there an understanding by the parties that a special trust
3    or confidence had been reposed in the creditor. Precision
4    states that the allegations in count six amount to a knowing
5    omission and further argues that under the CFA therefore the
6    plaintiff must prove that defendant acted knowingly with the
7    intent that another rely upon that concealment or
8    suppression.
9            In response to the allegations with regard to the
10   insurance, the plaintiff asserts that Precision
11   misrepresented the nature of its role in financing and
12   misrepresented who imposes and collects the interest
13   charges. Plaintiff maintains that the interest rate of 18
14   percent does not reflect what is actually charged by the
15   lender. It is plaintiff's position that by misrepresenting
16   the destination of the interest Precision prevents the
17   negotiation over the price of the loan. Plaintiff argues
18   that disclosure of the withheld yield spread is consistent
19   with regulations promulgated pursuant to the CFA,
20   specifically pointing to NJAC 13:45A-26B.2.
21           In addition, plaintiff relies upon Atkinson v.
22   Halpern Ford Mercury, Inc., 191 West Law 17177, Tennessee
23   Court of Appeals, where the court affirmed a jury finding
24   that the failure to disclose the yield spread violated the
25   Tennessee Consumer Protection Act.

Ruling                                                          23

1            I am satisfied that I cannot as a matter of law
2    decide whether Precision charged inflated interest rates,
3    but I do find primarily for the some reasons that I just set
4    forth that the failure to disclose that the dealer was
5    keeping a portion of the interest charge was in fact an
6    affirmative misrepresentation and violated the Consumer
7    Fraud Act. Precision's expert, Mr. March, opined that, "No
8    law requires that a dealer disclose to a buyer how the
9    dealer's spread will be disbursed." I'm satisfied that that
10   is his opinion, but that opinion is inconsistent with the
11   opinions of the 7th Circuit in Gibson, the Tennessee Court
12   of Appeals in Atkinson as well as the regulations under NJAC
13   13:45A-26B.2.
14           The facts in Atkinson are quite similar to those
15   in this case. The Court concluded there that it was proper
16   for a jury to base a finding of unfair deceptive acts and
17   practices based upon the dealer keeping 2.5 percent of the
18   16.5 annual percentage rate financing. As in this case, the
19   plaintiff was led to believe in the contract that the
20   financing company required a specific percentage. In this
21   case, the plaintiff was led to believe that the finance
22   company required 18 percent. It was not disclosed that
23   Precision kept two percent. As in the Tennessee case
24   therefore there's a violation of the Act...

# EXHIBIT "L"

*Judge's corrected copy*

Re:   Abrams v Bob Ciasulli-Mack Pontiac
      Docket No. L-812-95

1) Did you find by a preponderance of the evidence that the defendant committed any unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation with respect to any of the following claims of plaintiff:

(a) that the vehicle was repaired prior to its sale and the vehicle was represented as new?

YES ____✓____   NO _____

(b) that the Retail Installment entered into on August 24, 1994 (P-8) was to be exactly the same as the one entered into on August 20, 1994 (P-5) except as to the reduction in the price of the car to $16,000.00?

YES ____✓____   NO _____

(c) that the interest rate on her Retail Installment Contract was 12.5% when the Bank's interest rate to the dealership was 7.50% (P-24)?

YES ____✓____   NO _____

(d) to charge her $989.00 for an extended service contract when the defendant's cost for that contract is $298.00 (P-12)?

YES ____✓____   NO _____

(e) to charge her $1,331.00 for rustproofing, undercoating and exterior treatment (P-9) when the defendant's cost for those products, including application, is $182.00?

YES ____✓____   NO _____

(f) that the hood was switched on her vehicle?

YES ____✓____   NO _____

If you answered yes to any of the foregoing questions proceed to question 2. If you answered no, proceed to question 4.

2) Did plaintiff suffer any ascertainable loss of money as a direct result of the consumer fraud violations?

YES ____✓____   NO _____

If you answered yes, proceed to question 3. If you answered no, proceed to question 4.



JOINT
EXHIBIT
J1-A(11)
5-7-96

3) Please state the amount of ascertainable loss suffered by plaintiff for each claim referred to in question 1.

(a) $ _____ no proofs of ascertainable loss as to this item.

(b) $ _____ no proofs of ascertainable loss as to this item.

(c) $ _6̲7̲9̲.̲2̲0̲_ ($679.20 maximum)

(d) $ _4̲0̲0̲.̲0̲0̲_ ($691.00 maximum)

(e) $ _1̲,̲1̲4̲9̲.̲0̲0̲_ ($1,149.00 maximum)

(f) $ _____ no proofs of ascertainable loss as to this item.

4) Do you find from a preponderance of the evidence that defendant knowingly concealed, suppressed or omitted any material fact with intent that plaintiff rely upon same with respect to any of the following claims by plaintiff:

(a) that the vehicle was repaired by defendant prior to its ale to her and this repair was not disclosed to plaintiff at the time of purchase?

YES___✓___ NO_____

(b) that the vehicle had an "acid rain" defect which defect was not disclosed to plaintiff at the time of purchase?

YES___✓___ NO_____

(c) that the hood on the vehicle was switched?

YES___✓___ NO_____

(d) concerning the failure to disclose to her that the bank's interest rate is 7.50% and her interest rate is 12.5%?

YES___✓___ NO_____

If you answered yes to any of the claims set forth in this question proceed to question 5. If you answered no as to all claims proceed to question 7.

5) Did plaintiff suffer any ascertainable loss of money as a direct result of the consumer fraud violations(s)?

YES___✓___ NO_____

If you answered yes, proceed to question 6. If you answered no, proceed to question 7.

2

6) Please state the amount of ascertainable loss suffered by plaintiff for each claim referred to in question 4:

(a) $_____ no ascertainable loss

(b) $_____ no ascertainable loss

(c) $_____ no ascertainable loss

(d) $ 679.20 (maximum of $679.20)

If you find that plaintiff has proven a claim for "consumer fraud", you should know that the court will treble (3 times) the damages you have found in question 3 and question 6 and will award counsel fees to plaintiff's attorney as well.


<u>LEGAL FRAUD</u>

7) Do you find from clear and convincing evidence that defendant committed legal fraud upon plaintiff?

YES____✓____   NO_____

If you answered yes, proceed to question 8.   If you answered no, proceed to question 10.

8) Did plaintiff suffer damages as a direct result of the fraud?

YES____✓____   NO_____

If you answered yes, proceed to question 9.   If you answered no, proceed to question 10.

9) State the amount of monetary damages suffered by plaintiff.

$ 2228.20

10) Do you find from clear and convincing evidence that defendant committed equitable fraud upon plaintiff? (Barely he is renvation!)

YES____✓____   NO_____

Answer this question only if you have answered yes to question 7 or question 10.   Else proceed to question 12.

11) Do you find this is an "exceptional case" and that defendant should be punished by an award of punitive damages?

YES____✓____   NO_____

3

12) Do you find from a preponderance of the evidence that the vehicle did not conform (that is to say it was defective); that the nonconformity substantially impaired the value of the goods to the plaintiff and that either plaintiff knew of the nonconformity when she accepted the vehicle and she acted on the reasonable assumption that the nonconformity would be cured but it was not seasonably cured or plaintiff did not know of the nonconformity when she accepted and her acceptance was reasonably induced either by the difficulty of discovery the non-conformity before acceptance or by the defendant's assurance that the non-conformity would be cured?

YES_____✓_____   NO_____

If you answered yes to question 12 proceed to question 13. If you answered no please stop here.

13) Do you find that the buyer revoked her acceptance within a reasonable time of discovering the defect?

YES_____   ✓   NO_____

(If you find that plaintiff revoked her "acceptance" of the contract "within a reasonable time", the Court, as a remedy, can cancel the contract, have all money paid by the plaintiff returned to her. The car is given back to the defendant and defendant must assume the balance of the FINANCING.)

# EXHIBIT "M"

recover, Ms. Cannon's "feeling" that the
ranty was too expensive is not based
comparison shopping, or any knowledge
comparative pricing, and there is no
cation in the record that she either
w or (with disclosure of the upcharge)
ld have known that a less expensive
rnative was available.

i sum, plaintiff's own testimony contra-
s any suggestion that she relied to her
iment on Cherry Hill's incomplete dis-
ure. Mere speculation as to what Ms.
non *might* have done does not create a
ble issue that she relied to her detri-
it on the incomplete warranty disclo-
e and suffered quantifiable damages
eby. Plaintiff thus has failed her bur-
of marshaling facts and reasonable
rences from which a jury could find
: (1) she *would* have sought a cheaper
ranty, and (2) that she *would* have
eeded in such a quest. The Court
s that plaintiff has failed to satisfy the
d and fourth prongs of the *Peters* test,
concludes that plaintiff has failed to
ite a triable issue that she suffered
al damages on account of Cherry Hill's
A violation. Accordingly, the Court
enter summary judgment against
itiff's claims for actual damages under
A.

] Although plaintiff is unable to
e actual damages under TILA, she
proved entitlement to statutory dam-
arising from this same TILA violation
nant to 15 U.S.C. § 1640(a)(2)(A)(for
ridual claim) and 1640(a)(2)(B)(for
: claim). Plaintiff in this TILA case
d not prove that [s]he suffered actual
etary damages in order to recover

is to plaintiff's individual claim, statutory
mages of twice the amount of any finance
arge in connection with the transaction are
iilable under 15 U.S.C. § 1640(a)(2)(A)(i),
ira: As noted above, statutory dam-
der TILA for class action suits arising out

statutory damages and attorney's fees,"
*Purtle v. Eldridge Auto Sales, Inc.*, 91
F.3d 797, 800 (6th Cir.1996), *cert. denied*,
520 U.S. 1252, 117 S.Ct. 2411, 138 L.Ed.2d
177 (1997).

Plaintiff's TILA claim will be set for
trial to determine the proper measure of
individual and class-based statutory dam-
ages to be awarded.[3] It will be especially
appropriate to award statutory damages
where, as in plaintiff's case, actual quantifi-
able damages are not susceptible of proof.
*See, e.g., Gambardella v. G. Fox & Co.*, 716
F.2d 104 (2d Cir.1983); *Brown v. Mar-
quette Sav. & Loan Ass'n*, 686 F.2d 608
(7th Cir.1982); *Davis v. Werne*, 673 F.2d
866 (5th Cir.1982); *Dryden v. Lou Budke's
Arrow Finance Co.*, 630 F.2d 641 (8th
Cir.1980); *Postow v. OBA Federal Sav. &
Loan Ass'n*, 627 F.2d 1370(D.C.Cir.1980);
*Hinkle v. Rock. Springs Nat. Bank*, 538
F.2d 295 (10th Cir.1976).

### C. NJCFA Claim

Plaintiff's Count Two alleges that Cher-
ry Hill's conduct violated the New Jersey
Consumer Fraud Act, N.J.S.A. §§ 56:8–1
to 8–97 ("NJCFA"). The parties have
cross-moved for summary judgment on
this Count as well.

NJCFA provides a private cause of ac-
tion in favor of:

Any person who suffers any ascertain-
able loss of moneys or property, real or
personal, as a result of the use or em-
ployment by another person of any
method, act, or practice declared unlaw-
ful under this act.... In any action
under this section the court shall, in
addition to any other appropriate legal

of the same TILA violation have a ceiling of
the lesser of $500,000 or 1% of the defen-
dant's net worth. 15 U.S.C. § 1640(a)(2)(B).
If the parties are unable to agree to the statu-
tory damages for this class, the matter will be
tried shortly.

or equitable relief, award thre
ages sustained by any person
In all actions under this
court shall also award reaso
neys' fees, filing fees and
costs of suit.

N.J.S.A. 56:8–19. The Act pro
*alia*, that it shall be an unlaw
for an automobile dealer to
close, prior to sale, the exi
terms of any written warra
contract, or repair insurance
the dealer in connection with t
used motor vehicle." N.J.S.A.

[5] Cherry Hill's failure
disclose its profits on the MB
indicating the entire amount
Interstate, is a facial violatio
56:8–67. The Court finds that
Toyota is liable to plaintiff
N.J.S.A. 56:8–67(g) by failing
the existence of a material
service contract, namely, tha
cost of the MBP to Cherry
substantially lesser amount th
that the contract stated was
Interstate on plaintiff's beha
difference in price going to Cl
profit upon the sale of the ser
Instead, Cherry Hill falsely di
the entire amount charged for
ed service contract was being
a third party—Interstate—wh
substantial amount was retain
ry Hill as a commission and
undisclosed upcharge. Cherr
ure to disclose the true price
contract—the amount actually
Interstate—is as a matter of
tion of the NJCFA, N.J.S.A.
failure to disclose a material
service contract, namely, its

4. Plaintiff asserts that the prop
damages under this theory is
charge—the amount of the M

_IES_

s and attorney's fees,"
_e Auto Sales, Inc.,_ 91
Cir.1996), _cert. denied,_
S.Ct. 2411, 138 L.Ed.2d

claim will be set for
the proper measure of
s-based statutory dam-
i.? It will be especially
rd statutory damages
T's case, actual quantifi-
ot susceptible of proof.
_Ha v. G. Fox & Co.,_ 716
983); _Brown v. Mar-_
_n Ass'n,_ 686 F.2d 608
_is v. Werne,_ 673 F.2d
_Dryden v. Lou Budke's_
., 630 F.2d 641 (8th
_OBA Federal Sav. &_
.2d 1370(D.C.Cir.1980);
_rings Nat. Bank,_ 638
'76).

wo alleges that Cher-
ated the New Jersey
t, N.J.S.A. §§ 56:8-1
The parties have
mmary judgment on

private cause of ac-

uffers any ascertain-
s or property, real or
lt of the use or em-
her person of any
ctice declared unlaw-
.... In any action
the court shall, in
er appropriate legal

ation have a ceiling of
0 or 1)% of the defen-
U.S.C. § 1640(a)(2)(B).
le to agree to the statu-
lass, the matter will be

or equitable relief, award threefold dam-
ages sustained by any person in interest.
In all actions under this section the
court shall also award reasonable attor-
neys' fees, filing fees and reasonable
costs of suit.

N.J.S.A. 56:8-19. The Act provides, _inter_
_alia,_ that it shall be an unlawful practice
for an automobile dealer to "fail to dis-
close, prior to sale, the existence and
terms of any written warranty, service
contract, or repair insurance offered by
the dealer in connection with the sale of a
used motor vehicle." N.J.S.A. 56:8-67.

[5] Cherry Hill's failure to correctly
disclose its profits on the MBP, by instead
indicating the entire amount was paid to
Interstate, is a facial violation of section
56:8-67. The Court finds that Cherry Hill
Toyota is liable to plaintiff for violating
N.J.S.A. 56:8-67(g) by failing to disclose
the existence of a material term of the
service contract, namely, that the actual
cost of the MBP to Cherry Hill was a
substantially lesser amount than the figure
that the contract stated was being paid to
Interstate on plaintiff's behalf, with the
difference in price going to Cherry Hill as
profit upon the sale of the service contract.
Instead, Cherry Hill falsely disclosed that
the entire amount charged for the extend-
ed service contract was being paid over to
a third party—Interstate—when in fact a
substantial amount was retained by Cher-
ry Hill as a commission and profit in the
undisclosed upcharge. Cherry Hill's fail-
ure to disclose the true price of the service
contract—the amount actually remitted to
Interstate—is as a matter of law a viola-
tion of the NJCFA, N.J.S.A. 56:8-67, for
failure to disclose a material term of the
service contract, namely, its actual price.

4. Plaintiff asserts that the proper measure of
damages under this theory is the entire up-
charge—the amount of the MBP price re-

However, simply showing a violation of
NJCFA is not enough to entitle a plaintiff
to damages under that Act. It is important
to note that the NJCFA does not provide
for recovery of statutory damages where a
plaintiff cannot show actual harm. In
TILA, the statutory damages provision al-
lows damages even without a showing of
loss caused by the illegal conduct. _See_ 15
U.S.C. § 1640(a)(2)(A). Unlike TILA,
however, NJCFA requires that, in order to
recover _any_ damages, a plaintiff must
show that she has suffered an ascertain-
able loss _as a result_ of the defendant's
unlawful commercial practice. _See_
N.J.S.A. 56:8-19.

The Court has already determined that
plaintiff has failed to create a triable issue
that she relied to her detriment on Cherry
Hill's incomplete warranty disclosure. Be-
cause this determination applies with equal
force to plaintiff's NJCFA claim, the ques-
tion becomes whether plaintiff may estab-
lish that she suffered an "ascertainable
loss" despite having failed to show detri-
mental reliance.

Plaintiff argues that "ascertainable loss"
under NJCFA is a broader concept that
"actual damages" under TILA. (_See_ Pl.
Opp'n Br. at 11–12.) Whereas the statuto-
ry damages provision allows TILA to deter
wrongful conduct even without a showing
detrimental reliance, plaintiff argues that
the NJCFA would lose its deterrent effect
if merchants had no risk of liability unless
the consumer could establish actual harm.
As the Court understands plaintiff's argu-
ment, all plaintiff must do in order to
recover damages under the NJCFA is
show that there was an offensive commer-
cial practice, that the plaintiff suffered a
loss, and that there is a nexus between the
two.[4]

tained by defendant. Plaintiff argues that she
and each class member agreed to pay the
third-party's price for the MBP, and in fact





CERTIFIED MAIL

7017 0660 0000 4150 6689

LUEDDEKE LAW FIRM
215 MORRIS AVENUE
SPRING LAKE, NJ 07762

UNITED STATES POSTAGE
PITNEY BOWES

02 1P $ 012.75⁰
0001854155    AUG 18 2017
MAILED FROM ZIP CODE 07762

# FIRST  CLASS  MAIL

Subpoena

Capital One Auto Finance, Inc.
15000 Capital One Drive
Richmond, VA 23238

COAF Records Management
PCD 31065-0120

AUG 2 4 2017

Received
B.Bell